LOVELLS LLP
590 Madison Avenue
New York, NY 10022
(212) 909-0600

Attorneys for Defendant
Sinochem Jiangsu Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZIM INTEGRATED SHIPPING SERVICES, LTD.,

                              Plaintiff,

          – v. –

BELCO RESOURCES, INC., SINOCHEM JIANGSU
CORPORATION (FORMERLY KNOWN AS SINOCHEM
JIANGSU IMPORT & EXPORT CORPORATION),
NANJING HUABIN FOREIGN TRADE & ECONOMICS
CO., LTD., DRAGONTRANS SHIPPING LTD. d/b/a
HUABANG INTERNATIONAL, INC., SINOTRANS
NINGBO INTERNATIONAL FORWARDING AGENCY
CO., LTD., JOHN DOE 1-10,

                              Defendants.

07 CIV 5861 (RMB)

**(Electronically Filed)**

**JOINT MEMORANDUM OF LAW IN SUPPORT OF:**

**THE MOTION OF DEFENDANTS SINOCHEM JIANGSU
CORPORATION AND NANJING HUABIN FOREIGN TRADE & ECONOMICS CO.,
LTD. TO DISMISS WITH PREJUDICE COUNTS II THROUGH IX OF THE
SECOND AMENDED COMPLAINT AND TO VACATE THE RULE B ATTACHMENT**

**AND**

**THE MOTION OF DEFENDANT BELCO RESOURCES, INC.
PURSUANT TO RULE (E)(4)(f) OF THE SUPPLEMENTAL ADMIRALTY
RULES OF THE FED. R. CIV. P. TO VACATE THE RULE B ATTACHMENT**

# TABLE OF CONTENTS

**MOTION OF DEFENDANTS SINOCHEM JIANGSU CORPORATION AND NANJING HUABIN FOREIGN TRADE & ECONOMICS CO., LTD. TO DISMISS WITH PREJUDICE COUNTS II THROUGH IX OF THE SECOND AMENDED COMPLAINT AND TO VACATE THE RULE B ATTACHMENT**

**Page**

PRELIMINARY STATEMENT ................................................................................2

PROCEDURAL HISTORY.....................................................................................3

STATEMENT OF FACTS .....................................................................................4

ARGUMENT ......................................................................................................6

   I.     ALL CLAIMS WITHIN CAUSES OF ACTION TWO THROUGH NINE SHOULD BE DISMISSED ................................................................................6

      **A.**  The Incorporated Documents Undermine Zim's Claims........................7

      **B.**  Plaintiff's Vague and Conclusory Allegations Are Insufficient to Withstand Dismissal..................................................................................9

      **C.**  Plaintiff Has Not Stated a Claim for Fraud ........................................11

      **D.**  Plaintiff Fails to State a Cause of Action for Negligent Misrepresentation ..........14

      **E.**  Plaintiff Fails to State Claims for Strict Product Liability, Strict Liability for Failure to Warn, or Negligent Failure to Warn......................................15

      **F.**  Plaintiff's Claim for Breach of Warranty of Particulars Fails Because COGSA Does Not Apply Where the Cargo Was Not Destined for a US Port......16

      **G.**  Plaintiff Fails to State a Claim for Strict Liability under COGSA § 30701(4)(6) ............17

  II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS* ............................................18

      **A.**  Zim's Choice of this District Should Be Afforded Little Deference....................18

      **B.**  The Courts of China Provide an Adequate and More Convenient Venue for the Adjudication of This Dispute..........................................................20

      **C.**  Private Interest Factors Strongly Favor Dismissal .................................20

      **D.**  Public Interest Factors Strongly Favor Dismissal .................................23

CONCLUSION....................................................................................................25

**MOTION OF DEFENDANT BELCO RESOURCES, INC. PURSUANT TO RULE (E)(4)(f) OF THE SUPPLEMENTAL ADMIRALTY RULES OF THE FED. R. CIV. P. TO VACATE THE RULE B ATTACHMENT TO VACATE THE RULE B ATTACHMENT**

FACTS ..............................................................................................................26

THE LAW..........................................................................................................26

CONCLUSION.................................................................................................................29

TABLE OF AUTHORITIES

**Page**

**Cases**

*Advani Enters., Inc. v. Underwriters at Lloyds*,
  140 F.3d 157 (2d Cir. 1998) .......................................................................... 11

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005) ................................................................... 13, 14

*Aguinda v. Texaco, Inc.*,
  303 F.3d 470 (2d Cir. 2002) .......................................................................... 18

*Akofin v. Jumbo Nav., N.V.*,
  481 F. Supp. 2d 310 (S.D.N.Y. 2007) ........................................................... 19

*Alfadda v. Fenn*,
  159 F.3d 41 (2d Cir. 1998) ............................................................................ 21

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
  994 F.2d 996 (2d Cir. 1993) .......................................................................... 22

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
  605 F.2d 648 (2d Cir. 1979) .......................................................................... 28

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty, Ltd.*,
  460 F.3d 434 (2d Cir. 2006) ............................................................. 26, 28, 29

*Atalanta Corp. v. Polskie Linie Oceaniczne*,
  683 F. Supp. 347 (S.D.N.Y. 1988) ................................................................ 21

*Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*,
  85 F.3d 44 (2d Cir. 1996) .............................................................................. 27

*Cal. Distrib. Inc. v. Cadbury Schweppes Americas Beverages, Inc.*,
  No. 06-0496, 2007 WL 54534 (S.D.N.Y. Jan. 5, 2007) .............................. 4, 7, 8, 13

*Calavo Growers v. Generali Belgium*,
  632 F.2d 963 (2d Cir. 1980) .......................................................................... 24

*Campbell v. Goodyear Tire & Rubber Co.*,
  No. 83-6282 (CSH), 1985 WL 1514 (S.D.N.Y. June 3, 1985) ..................... 15

*Carbotrade v. Bureau Veritas*,
  99 F.3d 86 (2d Cir. 1996) ................................................................... 11, 14, 15

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004) .......................................................................... 21

*Chubb Ins. Co. of Europe S.A. v. M/V Humboldt Express*,
  No. 02 CV 1294 (GBD), 2003 WL 22434092 (S.D.N.Y. Oct. 24, 2003) ....... 18

*Compl. of Am. Exp. Lines, Inc.*
  620 F. Supp. 490 (S.D.N.Y. 1985) ................................................................ 15

*Compl. of Damodar Bulk Carriers, Ltd.*,
  903 F.2d 675 (9th Cir. 1990) ................................................................. 16

*Connolly v. Havens*,
  763 F. Supp. 6 (S.D.N.Y. 1991) ........................................................... 12

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
  918 F.2d 1446 (9th Cir. 1990) .............................................................. 19

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003) ................................................................. 14

*David J. Joseph Co. v. M/V Baltic*,
  64 Fed. Appx. 259 (2d Cir. 2003) ........................................................ 21

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  191 F.3d 198 (2d Cir. 1999) ................................................................... 4

*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
  341 F.2d 50 (2d Cir. 1965) ................................................................... 28

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ............................................................... 13

*Dover Ltd. v. A.B. Watley, Inc.*,
  423 F. Supp. 2d 303 (S.D.N.Y. 2006) ................................................. 14

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
  375 F.3d 168 (2d Cir.2004) .................................................................. 13

*First Union Nat'l Bank v. Paribas*,
  135 F. Supp. 2d 443 (S.D.N.Y. 2001) ................................................. 23

*FUNB v. Arab African Int'l Bank*,
  48 Fed. Appx. 801 (2d Cir. 2002) ........................................................ 23

*Furlong v. Long Island Coll. Hosp.*,
  710 F.2d 922 (2d Cir. 1983) ................................................................. 10

*Fustok v. Banque Populaire Swisse*,
  546 F. Supp. 506 (S.D.N.Y. 1982) ...................................................... 22

*GJR Invs., Inc. v. County of Escambia, Fla.*,
  132 F.3d 1359 (11th Cir. 1998) ........................................................... 10

*Guilbert v. Gardner*,
  480 F.3d 140 (2d Cir. 2007) ................................................................. 12

*Hadar v. Concordia Yacht Builders, Inc.*,
  886 F. Supp. 1082 (S.D.N.Y. 1995) ................................................... 15

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) ............................................................ 6-7, 9

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984) ................................................................................. 7

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................... 7

*In re Louisville Underwriters*,
   134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991 (1890) ................................................. 28

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1992) .......................................................................................... 7

*Joe Boxer Corp. v. Fritz Transp. Int'l*,
   33 F. Supp. 2d 851 (C.D. Cal. 1998) ..................................................................... 16

*Lu v. Air China Int'l Corp.*,
   No. CV 92-1254 (RR), 1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) ..................... 20

*M'Baye v. World Boxing Ass'n*,
   No. 05 Civ. 9581, 2006 WL 2090081 (S.D.N.Y. July 28, 2006) ............................ 13

*Martinez v. Dixie Carriers, Inc.*,
   529 F.2d 457 (5th Cir. 1976) .................................................................................. 16

*Moore v. Guesno*,
   485 F. Supp. 2d 300 (W.D.N.Y. 2007) .................................................................. 10

*Morrison Law Firm v. Clarion Co., Ltd.*,
   158 F.R.D. 285 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 811 (2d Cir. 1995) ..................... 19

*O'Brien v. Nat'l Prop.Anlysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989) .......................................................................... 8

*Osher v. JNI Corp.*,
   302 F. Supp. 2d 1145 (S.D. Cal. 2003) ................................................................... 7

*Papason v. Allain*,
   478 U.S. 265 (1986) ................................................................................................. 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .......................................................................................... 20, 24

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003) ............................................................................... 19, 24

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998) ..................................................................................... 20

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*,
   426 F.3d 580 (2d Cir. 2005) ............................................................................ 11, 24

*Schertenleib v. Traum*,
   589 F.2d 1156 (2d Cir. 1978) ................................................................................ 22

*Scottish Air Int'l Inc. v. British Caledonian Group, PLC*,
   81 F.3d 1224 (2d Cir. 1996) ................................................................................... 22

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co*,
   79 N.Y.2d 695 (Ct. App. 1992) .............................................................................. 14

*Senator Linie GmbH & Co. v. Sunway Line, Inc.*,
   291 F.3d 145 (2d Cir. 2002) ................................................................................... 17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   127 S. Ct. 1184, __ U.S. __ (2007) ................................................................. 18, 19

*Skibs A/S Gylfe v. Hyman-Michaels Co.*,
304 F. Supp. 1204 (E.D. Mich. 1969), *aff'd*, 438 F.2d 803 (6th Cir.1971) ............................. 17

*SMT Ship Mgmt & Transp., Ltd. v. Maritime Ordez C.A.*,
No. 00 Civ. 5789 (GEL), 2001 WL 930837 (S.D.N.Y. Aug. 15, 2001) ............................ 21, 23

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
421 F. Supp. 2d 741 (S.D.N.Y. 2006) ...................................................... 21

*U2 Home Entm't, Inc. v. Kylin TV, Inc.*,
06-CV-02770, 2007 WL 2028108 (E.D.N.Y. July 11, 2007) ................................... 9

*Zweig v. Nat'l Mortg. Bank of Greece*,
No. 91 Civ. 5482 (CSN), 1993 WL 227663 (S.D.N.Y. Jun. 21, 1993) .................................... 22

**Statutes**

Carriage of Goods at Sea Act, 46 U.S.C. § 30701 (2006) ............................................. 16

Carriage of Goods at Sea Act, 46 U.S.C. § 30701(3)(5) ............................................. 16

Carriage of Goods at Sea Act, 46 U.S.C. § 30701(4)(6) ...................................... 16, 17

**Other Authorities**

Restatement (Second) of Torts § 402A (1965) ........................................... 15

**Rules**

Fed. R. Civ. P. 9(b) ................................................................... 12, 13, 14

Fed. R. Civ. P. Supp. Admiralty R. B .................................................... passim

Fed. R. Civ. P. Supp. Admiralty R. E(4)(f) ............................................ 3, 26, 27, 28

Fed. R. Civ. P. Supp. Admiralty R. E(8) ..................................................... 1

In accordance with this Court's order of October 18, 2007, Defendants Sinochem Jiangsu Corporation ("Sinochem Jiangsu"), Nanjing Huabin Foreign Trade and Economics Co., Ltd. ("Huabin") and Belco Resources, Inc. ("Belco") submit this Joint Memorandum of Law in support of two separate motions.

Sinochem Jiangsu, making a limited appearance in this action pursuant to Fed. R. Civ. P. Supp. Admiralty R. E(8), by its attorneys, Lovells LLP, respectfully submits its memorandum of law in support of Sinochem Jiangsu's motion to dismiss with prejudice counts Two through Nine of the Second Amended Complaint (the "Complaint" or "Compl.") filed by Zim Integrated Shipping Services, Ltd. (the "Plaintiff") and to vacate the Attachment issued under Fed. R. Civ. P. Supp. Admiralty R. B.  Huabin, also making a limited appearance in this action, by its attorneys, Tisdale Law Offices, LLC, joins this memorandum of law in support of Sinochem Jiangsu's motion to dismiss with prejudice counts Two through Nine of the Complaint and to vacate the Attachment.  Sinochem Jiangsu also adopts and incorporates certain of the arguments and documents set forth on behalf of Huabin in the Declaration of Huang Dagang (the "Dagang Decl."), dated this day, as if fully set forth herein.

Belco, also making a limited appearance in this action, by its attorneys, Bennett, Giuliano, McDonnell & Perrone, LLP, respectfully submits its separate memorandum of law in support of Belco's motion to vacate the Attachment.

§      §      §

**MOTION OF DEFENDANTS SINOCHEM JIANGSU CORPORATION
AND NANJING HUABIN FOREIGN TRADE & ECONOMICS CO., LTD. TO DISMISS
WITH PREJUDICE COUNTS II THROUGH IX OF THE SECOND AMENDED
COMPLAINT AND TO VACATE THE RULE B ATTACHMENT**

## PRELIMINARY STATEMENT

Plaintiff's Complaint presents a simple story that falls apart under scrutiny. According to Plaintiff, some unascertained party lied to it about the contents of a shipping container and, in reliance on this lie, Plaintiff loaded the container aboard its vessel, the MV Zim Haifa (the "Zim Haifa"). Plaintiff says further that the contents of the container ignited when the Zim Haifa was at sea, damaging the Zim Haifa and its cargo. But the documentation about the container that Plaintiff incorporates in its Complaint – the same documents Plaintiff says it relied upon when deciding to accept the container for shipment – disprove Plaintiff's account of what happened. These documents demonstrate not only that Plaintiff had explicit notice of the contents of the container but also that Plaintiff confirmed in writing that the container in question was "VALIDATED ON BOARD" the M/V Zim Savannah (the "Zim Savannah"), a different ship than the Zim Haifa. Plaintiff's factual allegations in the Complaint cannot be reconciled with these documents, and, for these reasons alone, Plaintiff's claims against Sinochem Jiangsu and Huabin should be dismissed.

Even if one could overlook the internal contradictions in the Complaint, including those between the incorporated documents and Plaintiff's allegations, the Complaint is beyond saving for multiple additional reasons: (i) Plaintiff does not assert any wrongdoing on the part of Sinochem Jiangsu or Huabin that would give rise to liability under any theory, let alone with the specificity required for the negligent misrepresentation and fraud counts; (ii) Plaintiff's breach of warranty and strict liability claims under the Carriage of Goods By Sea Act ("COGSA") must be

2

dismissed because the goods did not originate in, nor were they destined for, the United States; and (iii) Plaintiff has not otherwise pled sustainable claims under applicable law for strict product liability or liability for failure to warn.

To the extent that any of Plaintiff's claims survive dismissal for the foregoing reasons, they should nevertheless be dismissed under the doctrine of *forum non conveniens*, as China presents a more convenient, adequate, and efficient alternative forum, in that it is the locus of the alleged wrongdoing, it is the location of virtually all relevant evidence and witnesses, and Chinese law applies to all of Plaintiff's claims in this action.

## PROCEDURAL HISTORY

Plaintiff filed its initial complaint in this matter on June 20, 2007 in the Southern District of New York. Pursuant to Supplemental Admiralty Rule B, it moved to attach funds in the amount of $3.1 million belonging to each defendant, including Sinochem Jiangsu and Huabin. Plaintiff has garnished $3.1 million belonging to Sinochem Jiangsu at banks in New York, to the detriment of Sinochem Jiangsu's business and operations, since August 15, 2007. Funds in the amount of $121,933.38 have similarly been garnished from Huabin, and funds of approximately $65,000 have been garnished from Belco.

On September 12, 2007, Plaintiff filed its first Amended Complaint, and, on October 18, 2007, the Court granted Plaintiff one final opportunity to amend with prejudice, which Plaintiff did on or about October 25, 2007. Defendant Sinochem Jiangsu, along with Defendant Huabin, now hereby moves to dismiss with prejudice claims two through nine of the Second Amended Complaint and to vacate the attachments pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules. Alternatively, they move to dismiss the case based on *forum non conveniens.*

## STATEMENT OF FACTS[1]

Plaintiff claims that it was deceived into shipping 444 drums of Calcium Hypochlorite ("CHC"), a dangerous chemical that Plaintiff says it has refused to carry since 2002. (Compl. ¶ 17). Plaintiff says the CHC contained in these drums allegedly caused a fire aboard its ship, the Zim Haifa, on or about June 3, 2007, while the Zim Haifa was en route from China to Belize. (*Id.* at ¶ 10). The fire, in turn, allegedly caused the damage upon which all of Plaintiff's claims are based. (*Id.* at ¶ 18).

Plaintiff's narrative begins with a purchase order (the "Purchase Order") from Belco to Sinochem Jiangsu for the shipment of 444 drums CHC[2] The Purchase Order indicates that the shipment was bound for Prosser Fertilizer Company, Belize City, Belize. (Compl. Ex. D). Plaintiff does not allege any wrongdoing by Sinochem Jiangsu regarding the Purchase Order. (Compl. *passim*).

Every relevant act that followed occurred in China or en route to Belize. According to the Complaint, Sinochem Jiangsu hired Huabin, starting a series of transactions involving four additional defendants, all Chinese corporations, before any container was allegedly placed upon any vessel owned or operated by Plaintiff. (*Id.* at ¶¶ 25-28). Ultimately, "Sinotrans Ningbo [International Forwarding Agency Co. Ltd. ("Sinotrans")], which placed the booking of the contents of sealed container, ZIMU1037636, described it as 'calcium chloride'." (*Id.* at ¶ 28).

---

[1] For purposes of this motion, the allegations of the complaint are generally assumed to be true. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999). As explained below, an important exception to this rule is where (as here) Plaintiff's allegations are contradicted by the documents upon which it purports to rely, in which case those allegations are not assumed to be true or even accorded favorable inferences. *See Cal. Distrib. Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06-0496, 2007 WL 54534, at *5-6 (S.D.N.Y. Jan. 5, 2007) (citation omitted).

[2] The Purchase Order was allegedly placed with Sinochem Jiangsu on January 4, 2007 (Compl. ¶ 24) but is dated January 4, 2006, (Compl. Ex. D).

Despite Plaintiff's explicit claim that Sinotrans alone misrepresented the cargo (*Id.*), Plaintiff reaches the incongruent conclusion that "one or more or all of the Defendants, individually or jointly, misdescribed the cargo as Calcium Chloride ('CC') in the process of booking the cargo for shipment with Zim." (*Id.* at ¶ 29). This complex account of the affair is based primarily on information contained on three documents annexed and incorporated into the Complaint. (*Id.* at ¶¶ 19, 30, 31). Plaintiff attaches to the Complaint a Certification for Safe Transport of Chemical Goods dated July 17, 2006 (the "Certificate"), and alleges that "Sinochem Jiangsu, through its agents Huabin, Huabang and Sinotrans, provided Plaintiff with [the Certificate] prepared by the Shanghai Research Institute of Chemical Industry Testing Center" describing the CHC. (*Id.* at ¶ 30, Ex. B). Plaintiff further attaches an undated dock receipt (the "Dock Receipt") claiming that prior to loading the cargo in Ningbo, China, the Chinese Defendants "provided [Plaintiff] with the Dock Receipt in which the cargo sealed in container ZIMU1037636 is erroneously declared on the document to be 'Calcium Chloride'." (*Id.* at ¶ 31). CC, unlike CHC, is considered a harmless material. (*Id.* at 20). The third key document is Plaintiff's own bill of lading, number ZIMUNGB670904 (the "Bill of Lading"), dated May 4, 2007 (Compl. Ex. A), naming Belco as the shipper (Compl. ¶ 22), which similarly describes the cargo in container ZIMU1037636 as CC. (*Id.*, Ex. A).

The foregoing allegations, however, are entirely undermined by the very same three documents, which Plaintiff expressly made part of the Complaint. The Bill of Lading – prepared by Plaintiff – states that container ZIMU1037636 was "VALIDATED ON BOARD 04-MAY-2007" on the Zim Savannah – not the Zim Haifa. (Compl. Ex. A). The Dock Receipt, which lists the Bill of Lading number, further confirms that 444 drums of CC (which Plaintiff alleges was actually CHC) were loaded onto the Zim Savannah – not the Zim Haifa. (Compl. Ex. C). With

container ZIMU1037636 aboard the Zim Savannah, Plaintiff's allegations that the container caused a fire aboard the Zim Haifa are nonsensical. (Compl. ¶ 10).  Likewise, the allegation that that "Zim had no knowledge, or could not have had knowledge, that the goods shipped in a sealed container under Bill of Lading number ZIMUNGB670904 were of a dangerous or hazardous nature" (*Id.* at ¶ 73), falls away as irrelevant.

Virtually all of the events described in the Complaint occurred in China.  (*Id.* at ¶¶ 28-32).  Plaintiff's conduct in this matter directly resulted from servicing Chinese ports. (*Id.* at ¶ 10).  Four out of five named defendants in this matter are Chinese corporations.  (*Id.* at ¶¶ 4-8).  Plaintiff further avers that the principal place of business of those defendants is China (*Id.* at ¶¶ 4-8) and no defendant can be found within the Southern District of New York (*Id.* at ¶ 139).

## **ARGUMENT**

The Complaint should be dismissed with prejudice because Zim has failed to state a claim with regard to causes of action numbered two through nine.  To the extent that any of these claims are found to withstand dismissal under Rule 12(b)(6), they should nevertheless be dismissed on grounds of *forum non conveniens*, as China represents an adequate, if not superior, alternative forum for resolution of this dispute.

## I.    ALL CLAIMS WITHIN CAUSES OF ACTION TWO THROUGH NINE SHOULD BE DISMISSED

Taking all of Plaintiff's allegations as true, claims two through nine of the Complaint must be dismissed for failure to make out any sustainable causes of action.  Indeed, it is in large part because of Plaintiff's allegations – which include documents Plaintiff expressly incorporated – that these claims must be dismissed.  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995) (dismissing complaint where plaintiff's attenuated allegations of control were

contradicted both by more specific allegations in the complaint and by facts of which the court took judicial notice).

### A.    The Incorporated Documents Undermine Zim's Claims

Courts regularly grant motions under Rule 12(b)(6) when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1992) (citation omitted).  Where there is a clear contradiction between plaintiff's allegations and the documentary evidence, the documents control, and the proper course of action is to ignore those contradictory statements that would otherwise support Plaintiff's position, for they are not "well-pled."  *See Cal. Distrib. Inc.*, 2007 WL 54534, at *5 (according favorable inference to documents that contradicted plaintiffs' contract claim); *see Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1159 (S.D. Cal. 2003) (where plaintiffs alleged that all defendants attended all meetings, but also alleged that certain defendants were traveling at the time of the meetings, the court ignored the former allegation); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-07, 427, 441 (S.D.N.Y. 2001) (dismissing claims directly contradicted by admissions, contracts and public filings relied upon by the plaintiffs).

The Complaint presents just such a situation.  Among the documents Plaintiff incorporates into the Complaint are the Bill of Lading (Compl. Ex. A) and the Dock Receipt (Compl. Ex. C).  Plaintiff strongly and unequivocally asserts that the container listed on the Bill of Lading – ZIMU1037636 – contained CHC (Compl. ¶¶ 14, 21); that container ZIMU1037636 was mislabeled as containing CC (*Id.* at ¶¶ 14, 19); that Plaintiff was deceived into shipping container ZIMU1037636 aboard the Zim Haifa (*Id.* at ¶¶ 10, 38); and that container

7

ZIMU1037636 caused the fire aboard the Zim Haifa (*Id.* at ¶ 14).  With equal vigor, Plaintiff contends that but for the Bill of Lading, the Dock Receipt and the Certificate (*Id.* at ¶¶ 19-21, 30-31) it would not have shipped container ZIMU1037636 aboard the Zim Haifa, and the Zim Haifa would not have had a fire.  (*Id.* at ¶¶ 14, 17).

But container ZIMU1037636 was not on the Zim Haifa; it was on the Zim Savannah. The Bill of Lading and the Dock Receipt show that container ZIMU1037636 was on the Zim Savannah – a different ship, which is not alleged to have suffered a fire.  In fact, the Bill of Lading, prepared by Plaintiff, specifically states that the container was "VALIDATED ON BOARD" the Zim Savannah (Compl. Exs. A & C).  We can expect to hear from the Plaintiff that containers are sometimes transferred between ships and sometimes placed aboard different ships at port, and that it is theoretically <u>possible</u> that an undocumented transfer of a container from one ship to another can take place.  But Plaintiff does even not allege in the Complaint that that is what happened, and mere conjecture and speculation in Plaintiff's anticipated opposition brief cannot overcome this fatal flaw.  *See Cal. Distrib. Inc.*, 2007 WL 54534, at *6 ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citing *O'Brien v. Nat'l Prop.Anlysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (disregarding specific allegations about fraudulent scheme introduced in an opposition to a motion to dismiss)).  In short, Plaintiff's documents show that the container was loaded on the Zim Savannah, and there is no allegation that it was transferred to the Zim Haifa.

Plaintiff's allegations are also countermanded by the Certificate, which Plaintiff purports was used to deceive Plaintiff, and upon which Plaintiff expressly relied.  (Compl. ¶ 30). Contrary to Plaintiff's allegations, the Certificate states on its face that the tested chemical was

"CALCIUM (OXY) CHLORIDE," which is synonymous with CHC, not CC.[3]  (Compl. Ex. B).

Plaintiff further alleges that it was well aware of the hazardous nature of CHC.  (Compl. ¶ 17).

Not only must Plaintiff's contrary allegations be rejected, but the Complaint should be read to

say that Plaintiff <u>knew</u> that the container held a dangerous chemical, CHC, but chose to ship it

anyway.

Because the Complaint is left without allegations linking any alleged wrongful action by

Sinochem Jiangsu to the fire aboard the Zim Haifa, and because it is properly read to say that

Plaintiff <u>knew</u> what it was shipping, the Complaint must be dismissed.  Indeed, dismissal would

be warranted even if only one of these deficiencies existed.  *See Hirsch*, 72 F.3d at 1096

(affirming dismissal of claim without leave to amend where conclusory allegations that

defendant had control over partnership were contradicted by allegation that defendant possessed

only a one-third interest).

### B.    Plaintiff's Vague and Conclusory Allegations Are Insufficient to Withstand Dismissal

Setting aside for the moment the critical flaws outlined in the previous section, the

Complaint should also be dismissed for Plaintiff's failure to allege wrongdoing on the part of

Sinochem Jiangsu or Huabin.  Plaintiff explicitly claims that Sinotrans Ningbo both placed the

booking of the CHC and described the cargo as CC (*Id.* at ¶ 28).  Nevertheless, Plaintiff cobbles

---

[3] *See* the Declaration of Hillel Parness (the "Parness Decl."), ¶ 3 & Ex. A (citing U.S. Environmental Protection Agency, Substance Registry System (the "EPA Registry"), *available at* http://iaspub.epa.gov/srs/srs_proc_qry.navigate? P_SUB_ID=153932#7) (stating that the terms Calcium Oxychloride and Calcium Hypochlorite are synonyms, describing the identical compound with molecular formula Ca.2C1HO and CAS Number 7778-54-3).  This court may take judicial notice of the online records of the EPA because they are part of the public record. *See Papason v. Allain*, 478 U.S. 265, 268 n.1 (1986) (the Court took notice of publicly available historical documents in reviewing a motion to dismiss); *see also U2 Home Entm't, Inc. v. Kylin TV, Inc.*, 06-CV-02770, 2007 WL 2028108, at *4 (E.D.N.Y. July 11, 2007) (taking notice of online records of the United States Copyright Office).

together a series of unrelated, innocuous acts, allegedly committed by unspecified entities, first to surmise that "one or more or all of the Defendants, individually or jointly, misdescribed the cargo as CC in the process of booking the cargo for shipment" (*Id.* at ¶ 29) and then to jump to the far-flung conclusion that Sinochem Jiangsu and Huabin were not only somehow involved in the shipment of CHC aboard the Zim Haifa, but also lied to Plaintiff about it.    (*Id.* at ¶ 38). Tellingly, Plaintiff retreats to use of the passive voice when stating the gravamen of the Complaint, "the true nature of the cargo <u>was concealed</u> from Zim and misrepresented in the Bill of Lading."  (*Id.* ¶ 21) (emphasis added).

Plaintiff repeatedly relies on a blunderbuss and often nonsensical strategy of collectively attributing culpability to the four Chinese defendants simultaneously, including Sinochem Jiangsu, for example when alleging that "Sinochem Jiangsu, through its agents Huabin, Huabang, and Sinotrans" provided Plaintiff with the Certificate and Dock Receipt.  (*Id.* ¶¶ 30, 31).  These conclusory allegations are insufficient to save from dismissal the claim made against Sinochem Jiangsu.  *See Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007) (dismissing RICO claim based on conclusory allegations made against multiple defendants based on a series of unrelated acts); *see also GJR Invs., Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1368-69 (11th Cir. 1998) (ordering dismissal of "shotgun" style complaint where plaintiff failed to match specific acts of defendants with the alleged violations of plaintiff's rights); *see generally Furlong v. Long Island Coll. Hosp.,* 710 F.2d 922, 927 (2d Cir. 1983) (affirming dismissal of conclusory allegations of price fixing claim where complaint failed to allege any underlying agreement among defendants).

The only acts directly attributed to Sinochem Jiangsu in the entirety of the Complaint are that Sinochem Jiangsu agreed to sell CHC to Belco and hired Huabin to export it.  (Compl. ¶¶ 25,

26).[4]  Similarly, the only acts attributed to Huabin in the Complaint are that Huabin contacted

Huabang in the port of Ningbo, China, to book the ocean transportation of the cargo.  (Compl. ¶

27).  As noted in the Declaration of Huang Dagang, submitted this day by Huabin in support of

its motion to dismiss, each of the documents prepared by Huabin, <u>after</u> the point in time that

Sinochem Jiangsu allegedly hired Huabin, correctly identified the chemical as CHC.   See

Dagang Dec. ¶ 5 & Ex. A.  The Complaint, on its face, fails to state a claim against Sinochem

Jiangsu and Huabin and must be dismissed with prejudice.

### C.    Plaintiff Has Not Stated a Claim for Fraud

It is clear that Plaintiff has not stated a claim for fraud against Sinochem Jiangsu.  As a

threshold matter, Chinese law governs the fraud claim.  The case before the court is a maritime

one, and thus the court should apply general maritime law, including federal choice-of-law rules.

*See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998) (applying

federal choice-of-law rules to maritime contract).  Under those rules, the appropriate law should

be determined by weighing the significance of one or more connecting factors between the

shipping transaction regulated and the national interest served by the assertion of authority.  *See*

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 586-88 (2d Cir.

2005) (listing factors to be considered by court when analyzing conflicts of law issues in

maritime cases and holding law of Korea, as place of alleged tortious acts, governed tort

litigation against Korean shipyard that performed structural modifications to container ship that

split in two during a storm).  The alleged misrepresentation at the core of the claim for fraud

occurred in China, so Chinese law applies.  *See Carbotrade v. Bureau Veritas*, 99 F.3d 86, 92

---

[4]  In fact, as described above, one of the acts attributed indirectly to Sinochem Jiangsu, the
provision of the Certificate, serves to exonerate Sinochem Jiangsu because the Certificate
correctly stated that the chemical was CHC.  (Compl. Ex. B).

(2d Cir. 1996) (holding that Greek law applied based on issuance of defective classification certificates in Greece).

To state a claim for fraud under Chinese law, a plaintiff must plead: (a) fault; (b) damages; and (c) causation between the fault and damages. (Declaration of Chen Huanzhong, (the "Chen Decl."), ¶ 12-13; *compare Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citation omitted) (stating elements of fraud under New York law are misrepresentation or omission of a material fact, which was false and known to be false, to induce a plaintiff's reliance, justifiable reliance by the plaintiff on the misrepresentation or omission, and resulting injury). Plaintiff, however, fails adequately to plead the elements of causation and fault. Plaintiff does not (and cannot) assert that the alleged misrepresentations in the Bill of Lading and Dock Receipt, which describe cargo placed aboard the Zim Savannah, had anything to do with the fire on the Zim Haifa. (Compl. Exs. A & C.)

Furthermore, although Plaintiff contends that Sinochem Jiangsu hired Huabin to ship CHC, it does not allege that Sinochem Jiangsu misrepresented the nature of the CHC or instructed anyone else to make such a misrepresentation. (Compl. *passim*.) Nor does Plaintiff allege that Huabin misrepresented the nature of the CHC. *Id.* To the contrary, Plaintiff incorporates and pleads its reliance on the Certificate, which shows that Plaintiff knew that it was shipping CHC. (Compl. Ex. B.) Plaintiff's recitation of facts contradicts its conclusory allegations of fraud, and its fraud claim against Sinochem Jiangsu and Huabin should be dismissed. *See, e.g., Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (dismissing conclusory RICO conspiracy claims lacking specific factual allegations).

Plaintiff's fraud claim likewise fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). Rule 9(b) requires plaintiffs to identify the time, place, and speaker of each

allegedly fraudulent statement. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 579-80 (2d Cir. 2005). Plaintiff may not base a fraud claim on "speculation and conclusory allegations." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir.2004) (citations omitted). Rather, Plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Id.*; *M'Baye v. World Boxing Ass'n*, No. 05 Civ. 9581, 2006 WL 2090081, *3 (S.D.N.Y. July 28, 2006).

Plaintiff's sweeping allegations of fraud do not identify any specific wrongdoer but Sinotrans (Compl. ¶ 38), and they attribute the concealment of the cargo's identity to "one or more or all of the [five] defendants, individually or jointly." (Compl. ¶¶ 29, 103-105). Such pleading is improper. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (where multiple defendants must respond to allegations of fraud, complaint must inform each defendant of the specific nature of his alleged participation in the fraud). Plaintiff also fails to plead when the alleged fraud took place. *See Cal. Distrib. Inc.*, 2007 WL 54534, at *9 (allegations that failed to state when and by whom statements were made failed under Rule 9(b)). Plaintiff produces the Purchase Order, dated January 4, 2006 but allegedly transmitted on January 4, 2007, without any indication that the Purchase Order was accepted or even received by Sinochem Jiangsu. Plaintiff then baldly asserts that the Purchase Order supports a complaint against Sinochem Jiangsu and four other defendants for something that went wrong with a shipment made by someone else on May 4, 2007, a full seventeen months after the date of the document. (Compl. Ex. D). *See Aetna*, 404 F.3d at 583 n.13 (holding that mere assertion that defendants provided allegedly fraudulently created documents that defendants played no role in

preparing did not support a claim of fraud).  This allegation makes no sense and is vague.[5]
Because no allegations in the complaint give rise to a "strong inference" (or even a reasonable
inference) that Sinochem Jiangsu or Huabin made any false representations to the Plaintiff,
Plaintiff's fraud claim must be dismissed.

### D.     Plaintiff Fails to State a Cause of Action for Negligent Misrepresentation

Plaintiff's cause of action for negligent misrepresentation also fails.  As described in the
previous section, Chinese law applies.  *See Carbotrade*, 99 F.3d at 92.  As with the claim for
fraud, to state a tort claim, Plaintiff must establish: (a) fault; (b) damages; and (c) causation
between the fault and the damages.  (Chen Decl. ¶¶12-13).[6]  The Bill of Lading and Dock Receipt
undermine Plaintiff's allegation that the misrepresentation caused any damage to the Zim Haifa.
Moreover, Plaintiff does not allege that Sinochem Jiangsu made any claims regarding the nature
of the CHC, and thus fails to demonstrate fault.[7]  (Compl. ¶ 26).  Consequently, Plaintiff's claim
of negligent misrepresentation must be dismissed.

---

[5] Plaintiff's chronology problem is compounded by the date on the Certificate, which is July 17,
2006, five months before the alleged order took place.  (Compl. Ex. C).

[6] A claim of negligent misrepresentation under New York law requires Plaintiff to show: "(a)
carelessness in imparting words, (b) upon which others were expected to rely, (c) upon which
they did act or failed to act, (d) to their detriment, and (e) the author must express the words
directly, with knowledge they will be acted upon, to one whom the author is bound by some
relation or duty of care."  *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 330 (S.D.N.Y.
2006).

[7] Under New York law, Plaintiff has failed to plead that Sinochem Jiangsu was "careless in
imparting words."  *Compare Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788-89
(2d Cir. 2003) (noting that the declaration must express the words directly to the one who
allegedly relied on them).  Moreover, Plaintiff does not allege that Sinochem Jiangsu ever
communicated with Plaintiff, much less that a special relationship existed between Sinochem
and Plaintiff.  *See, e.g. Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co*, 79 N.Y.2d 695,
705 (Ct. App. 1992) (holding that a single unsolicited communication did not support a finding
of the requisite privity).  In fact, Plaintiff's own allegation that three distinct actors intervened
between Sinochem Jiangsu and Plaintiff in the transaction undermines its claim that a
relationship was formed between the two parties.  (Compl. *passim*).

This claim is also defective under Rule 9(b), the specificity requirements of which apply equally to claims of negligent misrepresentation. *See Aetna*, 404 F.3d at 583. As explained above, because Plaintiff fails to state adequately the time, place or maker of any alleged misrepresentation, except perhaps the one made by Sinotrans (Compl. ¶ 28), Plaintiff's claim for negligent misrepresentation should be dismissed.

### E.    Plaintiff Fails to State Claims for Strict Product Liability, Strict Liability for Failure to Warn, or Negligent Failure to Warn

As with Plaintiff's claims for fraud and negligent misrepresentation, Chinese law applies to Plaintiff's claims for strict product liability and failure to warn. *See Carbotrade*, 99 F.3d at 92; *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1093 (S.D.N.Y. 1995) (applying law of place where products were unsuitably combined because such law regulated conduct that caused injury). This is true even though Plaintiff alleges injuries that occurred outside of Chinese territorial waters. *See Campbell v. Goodyear Tire & Rubber Co.*, No. 83-6282 (CSH), 1985 WL 1514, *1 (S.D.N.Y. June 3, 1985) (noting that location of injury in multistate product liability action was mere fortuity) (citations omitted). Under Chinese law, in order to sustain a claim for strict product liability, a plaintiff must establish: (a) the existence of defect of the product in distribution; (b) the defective product caused damage to people or property; and (c) causation between the defect and the damage. (Chen Decl. ¶ 14).[8] Plaintiff has not pled such a claim. As described above, Plaintiff has failed to allege that the purported misrepresentations on the Bill of Lading and the Dock Receipt describing cargo aboard the Zim Savannah had anything

---

[8] Plaintiff's claim is equally unavailing under the applicable substantive law of products liability in admiralty. Under such law, Plaintiff must establish that the defect resulted in injury to the plaintiff. *See* Restatement (Second) of Torts § 402A (1965); *see also Compl. of Am. Exp. Lines, Inc.* 620 F. Supp. 490, 517 (S.D.N.Y. 1985) (applying Section 402A to strict products liability claim in admiralty proceeding). As described above, Plaintiff fails to meet this causation requirement.

to do with, much less caused the fire on the Zim Haifa. (Compl. Exs. A & C). Consequently, Plaintiff has failed to make a sustainable claim under Chinese law for strict product liability.

Plaintiff's claims for strict liability for failure to warn and negligent failure to warn also fail under Chinese law, which does not support claims for either cause of action. (Chen Decl. ¶ 15). Even if Plaintiff could make out such a claim under applicable law, Plaintiff shipped the container despite having actual knowledge that the container held CHC (Compl. Ex.B) and that CHC was dangerous (Compl. ¶ 17).[9] For these reasons, Plaintiff's claims for strict product liability, strict liability for failure to warn, and negligent failure to warn should be dismissed.

### F. Plaintiff's Claim for Breach of Warranty of Particulars Fails Because COGSA Does Not Apply Where the Cargo Was Not Destined for a US Port.

COGSA only applies to bills of lading or similar documents of title which are evidence of a contract for the carriage of goods in foreign trade by sea to or from ports of the United States. 46 U.S.C. § 30701 (2006). The Bill of Lading states that the cargo was being shipped between two foreign ports: it was loaded at Ningbo, China and destined for Belize City, Belize. (Compl. Ex. D). Consequently, COGSA does not apply here and Plaintiff states no claim for Breach of Warranty under 46 U.S.C. §§ 30701(3)(5) and 30701(4)(6). *See Joe Boxer Corp. v. Fritz Transp. Int'l*, 33 F. Supp. 2d 851, 855-56 (C.D. Cal. 1998) (COGSA did not apply to Bill of Lading for carriage of goods from China to Guatamala, despite scheduled stop in California); *see also Compl. of Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 680 (9th Cir. 1990) (COGSA did not apply *ex proprio vigore* where bill of lading stated that carriage was between China and Chile).

---

[9] Even if maritime law applied, a claim for failure to warn may not be sustained where Plaintiff has plead that it had actual knowledge of the danger. *See Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 464-65 (5th Cir. 1976) (exonerating manufacturer from liability of worker's death where notice of hazardous nature of chemical had been given and hazards associated with the chemical were within the crew's knowledge).

For this reason, as well as for Plaintiffs' overall failure to allege causation and wrongdoing by Sinochem Jiangsu or Huabin, Plaintiff's claim of Breach of Warranty under 46 U.S.C. §§ 30701(3)(5) and 30701(4)(6) should be dismissed.

### G.    Plaintiff Fails to State a Claim for Strict Liability under COGSA § 30701(4)(6)

As a threshold matter, as described in the previous section, Plaintiff's claim for strict liability under COGSA § 30701(4)(6) fails because COGSA does not apply.  *See Damodar*, 903 F.2d at 680.  Furthermore, even if COGSA did apply, Plaintiff misstates the law under COGSA. It claims that a shipper of hazardous or dangerous goods is strictly liable for damages resulting directly or indirectly from such shipments.  (Compl. ¶ 52).  But under COGSA, a shipper is only liable where the carrier did not have actual or constructive knowledge of the inherently dangerous nature of the goods.  *Senator Linie GmbH & Co. v. Sunway Line, Inc.*, 291 F.3d 145, 154 (2d Cir. 2002) (noting that a plain-meaning approach would suggest that it is the carrier's knowledge of the goods' dangerous nature, not the shipper's, that conditions shipper liability) (citation omitted).  Strict liability cannot attach because Plaintiff <u>knew</u>, by virtue of the Certificate, that it was shipping CHC (Comp. ¶ 20, Ex. B) and Plaintiff, by its own admission, knew CHC to be hazardous.  (*Id.* at ¶ 17)*.  See Skibs A/S Gylfe v. Hyman-Michaels Co.,* 304 F. Supp. 1204, 1221 (E.D. Mich. 1969) (finding no liability under § 30701(4)(6) because the carrier was aware of the hazard posed by a cargo of steel turnings prior to loading them), *aff'd*, 438 F.2d 803 (6th Cir.1971).  Consequently, for this additional reason, Plaintiff's claim for strict liability fails.

For all of the foregoing reasons, claims II through IX of the Complaint should be dismissed and the attachments against Defendants Sinochem Jiangsu and Huabin vacated accordingly.

## II.  THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

Even if any of Plaintiff's severely flawed claims were somehow able to survive dismissal on the grounds set forth above, they should nevertheless be dismissed because China "is the more appropriate and convenient forum for adjudicating the controversy...." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188, 1194, __ U.S. __ (2007) (concluding that dispute involving "alleged misrepresentations made by a Chinese corporation to a Chinese admiralty court resulting in the arrest of a Malaysian vessel in China" was a "textbook case" for *forum non conveniens* dismissal).  Dismissal on grounds of *forum non conveniens* is appropriate where, as here, (1) plaintiff's choice of venue deserves limited deference; (2) there is an adequate, alternative forum for resolving the dispute; and (3) the balance of private and public interest factors favors dismissal.  *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002).

This case has many connections to China but none to New York.  Four of the five defendants in the case are Chinese (the fifth – Belco – is based in North Carolina).  All of the wrongs alleged by Plaintiff took place in China: the alleged mislabeling of the container, the alleged creation of false documents, the alleged deception of Plaintiff, and the alleged improper loading of the Zim Haifa.  The incident aboard the Zim Haifa took place "two days out of Panama" while that vessel was on its way from China to Belize.  (Comp. ¶ 10).  Consequently, the material evidence and witnesses are not located in New York.

### A.  Zim's Choice of this District Should Be Afforded Little Deference

Plaintiff is an Israeli corporation that maintains its principal place of business in Haifa, Israel.  (*Id*. ¶ 3).  Plaintiff's choice of a United States forum is, therefore, entitled to little, if any, deference.  *See Sinochem Int'l Co.*, 127 S. Ct. at 1191; *Chubb Ins. Co. of Europe S.A. v. M/V Humboldt Express,* No. 02 CV 1294 (GBD), 2003 WL 22434092, *2 (S.D.N.Y. Oct. 24, 2003)

("A foreign plaintiff's choice of forum … is entitled to a lesser degree of deference[,]" which "is further diminished where the operative facts underlying the action have no material connection with the chosen forum.").

Because Plaintiff declined to bring this suit in the obvious forum of China, one is left to conclude that Plaintiff chose this district for purely tactical reasons. Forum shopping by a plaintiff, however, does not translate into "convenience." *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) ("[W]hen a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient[,]" and "it is more likely that forum-shopping … was the motivation …."); *Akofin v. Jumbo Nav., N.V.*, 481 F. Supp. 2d 310, 316 (S.D.N.Y. 2007) (finding "it plain that the plaintiffs, Russian citizens with no contacts with the United States, chose this District for 'tactical advantage' rather than for 'genuine convenience'" and, for that reason, their choice of forum was entitled to little deference).

As a foreign corporation engaged in the worldwide business of ocean transport, Plaintiff can and should expect to litigate in foreign courts. In fact, <u>Plaintiff has agents operating in nearly twenty locations throughout China</u>. (Parness Decl. ¶ 4); *see Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990) (affirming *forum non conveniens* dismissal of action brought against Indonesian ocean carrier by American purchasers of negotiable bills of lading pertaining to Philippine mahogany lumber damaged at sea); *Morrison Law Firm v. Clarion Co., Ltd.*, 158 F.R.D. 285, 287 (S.D.N.Y. 1994) ("The private interest of plaintiff in suing in its home location is diluted because it chose to do business with Japanese firms and to seek their custom, making it logical that they be required to litigate there, a result which should not expose plaintiff to surprise."), *aff'd*, 60 F.3d 811 (2d Cir. 1995).

19

**B.    The Courts of China Provide an Adequate and More Convenient Venue for the Adjudication of This Dispute**

If the courts in a foreign forum permit litigation of the subject matter of a dispute, and a defendant is amenable to service of process there, it is an adequate alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 & n.22 (1981); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). A forum is inadequate only if the remedies available there are so unsatisfactory that they provide no remedies at all. *Piper Aircraft*, 454 U.S. at 254. Considerations of international comity influence this test, and "preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can*, 138 F.3d at 73. A finding of inadequacy is rare. *Id.*

Not only does China provide an adequate, available forum, but it is in many ways an obvious and superior location for the adjudication of this case. Chinese courts have jurisdiction over maritime claims, torts, and contractual breaches that occur in or arise out of conduct occurring in China, and they would have jurisdiction over all of the defendants in connection with Zim's claims (four of the defendants are Chinese and the fifth defendant is alleged to have contracted with a company in China). Chinese courts offer sufficient remedies for the alleged torts and contractual breaches. (Chen Decl. ¶¶ 17-18). China has a developed legal system that United States courts have held to be adequate in other, similar cases. *See Sinochem Int'l Co.*, 127 S. Ct. at 1194; *Lu v. Air China Int'l Corp.*, No. CV 92-1254 (RR), 1992 WL 453646, *1 (E.D.N.Y. Dec. 16, 1992).

**C.    Private Interest Factors Strongly Favor Dismissal**

The private interest factors that must be weighed in a *forum non conveniens* analysis include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing

witnesses; (4) issues concerning the enforceability of a judgment; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive – or the opposite." *SMT Ship Mgmt & Transp., Ltd. v. Maritime Ordez C.A.*, No. 00 Civ. 5789 (GEL), 2001 WL 930837, *7 (S.D.N.Y. Aug. 15, 2001) (citations and internal quotation marks omitted), *aff'd sub nom.*, *David J. Joseph Co. v. M/V Baltic*, 64 Fed. Appx. 259 (2d Cir. 2003) (unpublished). Consideration of these factors also compels the conclusion that China is the logical, most convenient, and most appropriate venue for litigating Plaintiff's surviving claims, if any.

The private interest factors support dismissal where, as here, alleged misconduct is centered in a foreign forum and the majority of evidence is located there. *See Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238-39 (2d Cir. 2004) (dismissal was proper due to difficulty of German defendant to secure presence of its witnesses in the United States and reasonableness of requiring plaintiff to litigate business dispute in the country where it occurred); *Alfadda v. Fenn*, 159 F.3d 41, 47-48 (2d Cir. 1998) (affirming dismissal because all defendants and nearly all witnesses and documentary evidence were located in France); *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006) (granting motion to dismiss where defendant identified nine nonparty witnesses residing in England that it desired to call to testify and majority of documentary evidence was located in England). With all of the alleged wrongs purportedly taking place in China, and none in New York (Compl. ¶¶ 20-32), this consideration weighs strongly in favor of moving this case to China.

It is likely that key prospective witnesses in this case would not be subject to this Court's jurisdiction and could not be compelled to testify here. *See Atalanta Corp. v. Polskie Linie Oceaniczne*, 683 F. Supp. 347, 352 (S.D.N.Y. 1988) (dismissing shippers' action for damages to cargo, pointing out that "important sources of proof [were] not readily accessible [in the

Southern District of New York] "and the defendants [would] not have the benefit of compulsory process to obtain them"). (Chen Decl. ¶17). Obtaining evidence by means of letters rogatory pursuant to the Hague Convention would be a poor substitute for live trial testimony. *See Scottish Air Int'l Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996) (noting that "the live testimony of key witnesses" was necessary "for the jury to assess [their] credibility" in connection with fraud claims); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993) (affirming *forum non conveniens* dismissal of securities fraud action in favor of Australia where plaintiffs alleged fraud and noting that "live testimony of key witnesses is necessary" in such cases).

It would be much easier and cost-efficient to build a complete factual record for this case in China than anywhere else, as the bulk of relevant witnesses and other evidence is located there. By contrast, the costs of bringing the numerous anticipated party and nonparty witnesses to New York from China would be extremely high and unnecessarily burdensome. (Chen Decl. ¶ 10).

Furthermore, if this case proceeds in this district, many witnesses will likely need to testify through an interpreter. This circumstance, too, weighs in favor of dismissal. *See Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (indicating "serious problem of translation" of live testimony and documents in Switzerland was factor favoring dismissal); *Zweig v. Nat'l Mortg. Bank of Greece*, No. 91 Civ. 5482 (CSN), 1993 WL 227663, *8 (S.D.N.Y. Jun. 21, 1993) (significant need for translation of Greek documents and testimony of Greek witnesses weighed in favor of dismissal); *Fustok v. Banque Populaire Swisse*, 546 F. Supp. 506, 510 (S.D.N.Y. 1982) ("In addition to the expense and inconvenience of travel for these [foreign] witnesses, if that were contemplated, many of them do not speak English as a primary language which would present an added obstacle to a smooth flowing trial in this District.").

In sum, the private interest factors strongly favor dismissal of this case for *forum non conveniens*.

**D.     Public Interest Factors Strongly Favor Dismissal**

The public interest factors also militate dismissal.  "There is little sense to allowing a U.S. citizen" – let alone a foreign, international shipping company like Plaintiff – "to haul a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation in a prompt, efficient and effective manner." *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (dismissing fraud claims against French bank in favor of London, where fraudulent activity was centered), *aff'd sub nom.*, *FUNB v. Arab African Int'l Bank*, 48 Fed. Appx. 801 (2d Cir. 2002).   The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *SMT*, 2001 WL 930837, at *9 (citations and internal quotation marks omitted).

China has a significant national interest in resolving Plaintiff's claims, whereas New York has none.  The Complaint challenges the conduct of Chinese and foreign corporations in connection with their operations within China's borders.   It involves contracts allegedly negotiated and executed in China and allegedly tortious acts committed in China.  It involves issues of products liability and allegations of industrial fraud that Chinese authorities regard to be of critical importance to China's national interest and reputation. (Chen Decl. ¶ 9).

Likewise, this Court has a substantial interest in keeping this case off its docket. Significant judicial resources would be wasted on a case that bears absolutely no relationship to

this jurisdiction, diverting resources from other cases that have much greater ties to this district. Dismissal here would also further the important interest of judicial economy, because "localized controversies" should be "decided at home," and issues of foreign law should be decided by foreign tribunals to the extent practicable. *Pollux Holding*, 329 F.3d at 76.

As a final matter, the applicability of Chinese law "point[s] towards dismissal." *Piper Aircraft*, 454 U.S. at 260; *see also Calavo Growers v. Generali Belgium*, 632 F.2d 963, 967 (2d Cir. 1980) ("[T]he likelihood that Belgian law would govern in turn lends weight to the conclusion that the suit should be prosecuted in that jurisdiction."); *Paribas*, 135 F. Supp. 2d at 453 (likelihood that court would have to apply English law to part or entirety of case "cuts to some degree in defendants' favor"). Here, as described above, Plaintiff's allegations that the Defendants committed tortious acts in China and entered into a shipping contract in China point towards the applicability of Chinese law. *See Rationis*, 426 F.3d at 586-88.

Plaintiff's purely tactical selection of this district is entitled to little deference, especially when weighed against the obviously adequate and more convenient alternative forum of China, from which four of the five defendants hail, and where all of the wrongdoing is alleged to have taken place. Consideration of the private and public interests reinforce this conclusion, and, thus, to the extent any of Plaintiff's claims survive dismissal on other grounds, they should be dismissed on the basis of *forum non conveniens*.

## **CONCLUSION**

For the reasons laid out above, Defendants Sinochem Jiangsu and Huabin respectfully request that this Court grant their Motion to Dismiss with Prejudice Counts II through IX of the Second Amended Complaint and to Vacate the Rule B maritime Attachment.


Respectfully submitted,


LOVELLS LLP

November 28, 2007                    /s/ Edward T. Schorr
                                     Edward T. Schorr (ES-0290)
                                     Hillel I. Parness (HP-1638)
                                     Matthew J. Galvin (MG-0701)
                                     590 Madison Avenue
                                     New York, New York 10022
                                     Telephone: (212) 909-0600
                                     Facsimile: (212) 909-0660

                                     *Attorneys for Defendant*
                                     *Sinochem Jiangsu Corporation*

                                     TISDALE LAW OFFICES, LLC

November 28, 2007                    /s/ Thomas L. Tisdale
                                     Thomas L. Tisdale (TT 5263)
                                     Lauren C. Davies  (LD 1980)
                                     11 West 42nd Street, Suite 900
                                     New York, NY 10036
                                     Telephone: (212) 354-0025
                                     Facsimile: (212) 869-0067

                                     *Attorneys for Defendant Nanjing Huabin*
                                     *Foreign Trade & Economics Co., Ltd.*

§    §    §

## MOTION OF DEFENDANT BELCO RESOURCES, INC. PURSUANT TO RULE (E)(4)(f) OF THE SUPPLEMENTAL ADMIRALTY RULES OF THE FED. R. CIV. P. TO VACATE THE RULE B ATTACHMENT

Defendant, Belco Resources, Inc., submits this memorandum of law in support of its motion to vacate the Rule B maritime attachment by plaintiff pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claim of the Federal Rules of Civil Procedure.

Plaintiff's attachment should be vacated on the grounds that Belco can establish that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to plaintiff.  See *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434, 444 (2d Cir. 2006).

### FACTS

Plaintiff Zim Integrated Shipping Services ("Zim") alleges that Belco Resources purchased a shipment of Calcium Hypochlorite from defendant Sinochem Jiangsu Corp on CIF Belize terms.  Zim also alleges the shipment was then shipped via ocean by Zim from China to Belize.  Zim further alleges that during the ocean voyage the cargo caught fire and damaged the vessel and surrounding cargo.

Zim commenced a Rule B  proceeding in the Southern District of New York seeking to obtain security for its claim.  Belco believes the Rule B attachment should be vacated under the standards set forth in *Aqua Stoli*.

### THE LAW

Maritime attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty,*

*Ltd.*, 460 F.3d 434, 435 (2d Cir. 2006) citing *Aurora Mar. Co. v. Abdullah Mohamed Fahem &
Co.*, 85 F.3d 44, 47 (2d Cir. 1996).

Rule B governs the process by which a party may attach another party's assets.  Rule B
provides in relevant part:

> If a defendant is not found within the district, . . . a verified
> complaint may contain a prayer for process to attach the
> defendant's tangible or intangible personal property0up to the
> amount sued for-in the hands of garnishees named in the process….
> The court must review the complaint and affidavit and, if the
> conditions of this Rule B appear to exist, enter an order so stating
> and authorizing process of attachment and garnishment.  The clerk
> may issue supplemental process enforcing the court's order upon
> application without further court order.

Fed.R.Civ.P. Supp. Rule B(1).

To begin the process, a plaintiff must file a verified complaint praying for an attachment
and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be
found within the judicial district.  *Id.*  If the plaintiff's filings comply with these conditions, the
court must enter an order authorizing the attachment, which the plaintiff may then serve on any
persons in possession of the defendant's property located within the district.  The order of
attachment may be requested and granted *ex parte*, though notice of the attachment to the
defendant via appropriate service is required.  *Id.*  Supp. Rules B(2), E(3).

Thereafter, the defendant has an opportunity under Rule E(4)(f) to appear before the
district court to contest the attachment once its property has been restrained.  Rule E(4)(f)
provides, in relevant part:

> Whenever property is arrested or attached, any person claiming an
> interest in it shall be entitled to a prompt hearing at which the
> plaintiff shall be required to show why the arrest or attachment
> should not be vacated or other relief granted consistent with these
> rules….

*Id.* Supp. Rule E(4)(f).

The Rule E(4)(f) hearing provides the defendant with an opportunity to establish that the requirements of Rule B were not met.  *Id*. Supp. Rule B(1)(a).  *Aqua Stoli,* 460 F.3d at 439.  The text of Rule E(4)(f) does not, however, explain under what circumstances the district court should vacate the attachment.  *Aqua Stoli,* 460 F.3d at 439.

The question presented in *Aqua Stoli* was to what extent the district court may require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met.

Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action.  Maritime parties are peripatetic, and their assets are often transitory.  *Aqua Stoli*, 460 F.3d at 443 citing *In re Louisville Underwriters*, 134 U.S. 488, 493, 10 S.Ct. 587, 33 L.Ed. 991 (1890).  Thus, the traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.  *Aqua Stoli*, 460 F.3d at 443 citing *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 655 (2d Cir. 1979).  Here, Belco is a U.S. company and plaintiff will not have to scour the globe to find them.  The traditional policy behind the Rule B attachment is not present here and the attachment is not warranted.

District Courts are not without any equitable discretion to vacate maritime attachments that comply with Rule B.  Vacatur is warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff.  *Aqua Stoli*, 460 F.3d at 444, citing *Integrated*, 476 F.Supp. at 124; cf. *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp*., 341 F.2d 50, 52-53 (2d Cir. 1965).  A maritime attachment is properly

28

vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets. *Aqua Stoli*, 460 F.3d at 445.

Here, both Zim and Belco are present in North Carolina. Zim has offices and affiliates in 120 locations throughout the world, including an office in North Carolina where it operates a liner service, and is subject to *in personam* jurisdiction in North Carolina. Belco's office is located in North Carolina. Because Belco and Zim are subject to *in personam* jurisdiction in North Carolina, the attachment of Belco's funds in New York is unwarranted and should be vacated. See *Aqua Stoli*.

## CONCLUSION

For all the reasons stated herein above, defendant Belco's motion to vacate the Rule B attachment should be granted.

Respectfully submitted,

BENNETT, GIULIANO, MCDONNELL & PERRONE, LLP

November 28, 2007

/s/ William R. Bennett
William R. Bennett, III (WB 1383)
494 Eighth Avenue
Seventh Floor
New York, NY 10001
Telephone: (646) 328-0120
Facsimile: (646) 328-0121

*Attorneys for Defendant Belco Resources, Inc.*

29