# EXHIBIT A

Tracing > B/L Terms & conditions



TRACING

# TERMS AND CONDITIONS OF BILL OF LADING

HEAD OFFICE ZIM INTEGRATED SHIPPING SERVICES LTD.;9 ANDREI SAKHAROV ST., MATAM
P.O.B.1723, HAIFA 31016 ISRAEL
PHONE: (972) 4-8652111; FAX: (972) 4-8652956,

HTTP://WWW.ZIM.COM

view ZIM B/L (front) - PDF format

view ZIM B/L Terms & conditions

1. CONTAINER CARRIAGE:

The Carrier is entitled to carry goods in containers under this Bill of Lading by Zim or any other Zim Lines or otherwise in accordance with Zim's container relay system which system is comprised of container terminals main container vessels, and feeder vessels and to relay the goods between them. Such relay and/or transshipment from one vessel to another and/or to any other means of transportation shall in no way constitute a deviation from the contracted voyage and the Carrier continues to be responsible for the transportation of the goods from the port of loading and/or the place of receipt of goods, whichever is the case, until the port of destination or final destination as contracted for. The contract of carriage evidenced by this Bill of Lading, the route, the carrying vessels, the means of transportation, the ports of call as well as the ports of loading, discharge and transshipment are always subject to, and in accordance with, the relay system as published from time to time in Carrier's sailing schedules and tariffs. The Carrier reserves the right to make changes and alterations in the service, line and the relay system and to change and/or replace and/or substitute any of the vessels and/or ports and/or terminals as it may deem fit from time to time before or after the commencement of this contract of carriage without notice to the Merchant.

2. DEFINITIONS: in this Bill of Lading:

"Zim" – means Zim Integrated Shipping Services Ltd.

"Merchant" – means jointly and severally the shipper, the consignee, the holder and any assignee of this Bill of Lading.

The words "Vessel" and/or "Ship" shall include the loading vessel and any substitute ship and any craft, lighter or other means of marine conveyance, owned, chartered, operated or employed by the Carrier used in the performance of the contract of carriage.

"Carrier" – is the issuer of this Bill of Lading.

"Goods" – means the cargo accepted from the shipper and includes any container, transportable tank, flat or pallet not supplied by or on behalf of the Carrier.

"Place of Receipt of Goods" – the place at which the goods are received by the Carrier for carriage, when such place is other than the port at which the goods are loaded on the loading vessel.

"Port of Loading" – the port at which the goods are loaded on the loading vessel.

"Port of Destination" – the final port to which the goods are destined.

"Final Destination" – the place to which the Carrier has contracted to deliver the goods, when such place is other that the port of destination, as defined herein.

"Loading Vessel" – the vessel on which the goods are to be first loaded. In this respect see also Clause 1 above.

"HOUSE TO HOUSE" (H/H or CY/CY) Container Carriage – means that the container has been inspected, stuffed and sealed by Merchant, or his Agents, and the unsealing and unstuffing of such container shall also be performed by Merchant or his Agents, all at Merchant's sole responsibility. Carrier's responsibility with regard to such goods shall commence and terminate only in accordance with combined transshipment terms, see Clause 4 below and the asterisk marked boxes on the face of this B/L.

3. CONTRACTING PARTIES:

The contract evidenced by this Bill of Lading is between the Carrier and the Merchant. The shipper, the consignee, the holder and any assignee of this Bill of Lading are jointly and severally liable towards the Carrier for all the various undertakings, responsibilities and liabilities of the Merchant hereunder or in connection herewith.

4. RESPONSIBILITY:

I. The Carrier shall be liable for the goods from the time they are received in the Carrier's sole custody until delivered from the Carrier's sole custody, as follows:

(a) Port to Port Carriage – from the time of receipt at Port of Lading (but in no event prior to discharge from Merchant's means of transportation or the disconnection of merchant's truck from the Carrier's supplied chassis, whichever is relevant) until such time as discharge of goods from the vessel is completed (but in no event after commencement of lifting onto Merchant's means of transportation or the connection of Carrier's chassis to Merchant's truck, whichever is relevant).

(b) Combined Transport of Containers – from the time of receipt at the Place of Receipt of the goods to the Port of Destination or Final Destination, or from the time of receipt of the goods at the Port of Loading to the Final Destination.

II.

(a) During the period of carriage, the Carrier's liability and responsibility shall be in accordance with the terms of this Bill of Lading and the Carrier's tariffs, and except for shipments carried to or from the U.S.A., shall be subject to the rules contained in the International Convention for Unification of Certain Rules Relating to Bills of Lading dated 25th August 1924 as amended in the Protocol to Amend the International Convention of the Unification of Certain Rules of Law Relating to Bills of Lading, Brussels, February 23, 1968 and in the Brussels Protocol, 1979 (hereinafter referred to as "the Hague Rules") which are hereby fully incorporated in this Bill of Lading, along with any legislation making the Hague Rules or any amendment thereto compulsorily applicable to this Bill of Lading.

(b) For shipments to or from the U.S.A., this bill of lading shall be only subject to the U.S. Carriage of Goods By Sea Act, 46 U.S.C. 1300 et seq. (U.S. COGSA) which Act shall by this contract also apply before loading and after discharging as long as the goods remain in the Carrier's custody or control.

III. When the place of receipt of goods or final destination set forth herein, if contracted by the Carrier, is an inland point, the liability and responsibility of the Carrier with respect to transportation to and from the sea terminals or ports will be as follows:

(a) Between points in Europe – to transport the goods:

(1) If by road – in accordance with the Convention on the Contract for the International Carriage of Goods by Road, dated 19th May 1956 as amended (hereinafter called "CMR").

(2) If by rail – in accordance with the International Agreement on Railway Transport dated 25th February 1951 as amended (hereinafter called "CIM").

(3) If by air – in accordance with the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed Warsaw 12th October 1929, as amended (hereinafter the "Warsaw Convention").

(b) Between points in the U.S.A. – to procure transportation by carriers (one or more) authorized by competent authority to engage in transportation between such points and such transportation shall be subject to the inland carriers' contracts of carriage and tariffs even though the terms may be less favourable than the terms of this Bill of Lading. The Carrier guarantees the fulfillment of such inland carriers' obligations under their contracts and tariffs. Copies of inland carriers contracts will be made available to the Merchant by the Carrier upon written request.

(c) Between points in countries other than the U.S. and other than Europe – in accordance with the prevailing compulsory regulations or legislation applicable to carriage by road, carriage by rail and carriage by air (accordingly) and in the absence of any local applicable compulsory regulations or legislation applicable or evidence thereof, in accordance with the Hague Rules referred to above.

However, the Carrier's liability for loss of or damage to the goods shall in any event not exceed 666.67 SDR units per package or unit or 2 SDR units per kilogram of gross weight of the goods lost or damaged, whichever is the higher, or where, by the consent of the Carrier, the value of the goods has been declared in the Bill of Lading, the amount so declared. SDR units shall be defined and determined according to the Brussels Protocol – 1979 (SDR Protocol).

IV. It is hereby expressly agreed that no servant or agent of the Carrier (including any stevedore, terminal operator, sub-carrier or independent contractor employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment. Without prejudice to the generality of the foregoing provisions of this Clause, every right, including the right to litigate in the agreed jurisdiction as mentioned in Clause 24 hereof, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to every such servant or agent of the Carrier (including any stevedore, terminal operator, sub-carrier or independent contractor) acting as aforesaid and for the purpose of all the foregoing provisions of this Clause the carrier, if necessary, is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons as aforesaid, and all such persons shall to this extent be or deemed

to be parties to this contract. In any event whatsoever the aggregate of the amounts recoverable from the Carrier and his servants or agents, sub-carriers or independent contractors, including any stevedore or terminal operator, shall in no case exceed the limits provided for in this Bill of Lading.

V. The defences, limits of liability, rights, including the right to litigate in the agreed jurisdiction as mentioned in Clause 24 hereof, exemptions, limitations, conditions and liberties as provided in this Bill of Lading shall apply in any action against the Carrier and his servants, agents or independent contractors, sub-carriers terminal operators or stevedores for loss or damage to the goods or for delay in their delivery, whether the action be founded in contract or in tort or in whatever other manner.

VI. Limit of responsibility – In no event, including in carriage effected or performed under H/H or CY/CY carriage terms, will the Carrier be responsible after discharge of goods in port of destination or, if contracted for, after the commencement of lifting of the goods at final destination onto the Merchant's means of transportation. Whenever any details are entered on the face of this Bill of Lading on the space marked "Further Routing" such details are inserted for information only, at the Merchant's request, and have no contractual or any other legal significance whatsoever.

VII. In the event that it is proved that the goods were lost or damaged whilst in the actual and legal custody and care of the Carrier and in circumstances which impose responsibility on the Carrier, then, in the absence of evidence to the contrary, the damage or loss shall be deemed to have occurred during the sea voyage and the Hague Rules shall apply.

5. DELAY AND CONSEQUENTIAL DAMAGES:

Arrival times are not guaranteed by the Carrier. The Carrier shall not be liable for any direct or indirect loss or damage sustained by the Merchant through delay. However if it shall be adjudged that the Carrier is liable then subject to the terms and conditions of this Bill of Lading, it shall be liable only for actual physical loss or damage, but not for any consequential damages due to delay or any other cause.

6. NOTIFY CLAUSE:

It shall be the responsibility of the Merchant to contact the Carrier regarding time of arrival of the goods. The Carrier is not obliged to give notice of the arrival of the goods and no responsibility whatsoever shall attach to the Carrier or his agents for not giving such notice of the arrival of the goods.

7. ROUTE:

During the voyage to Port of Destination, the vessel shall call usual, customary, or advertised ports of call whether named in this contract or not.

8. SUBSTITUTION OF VESSEL AND TRANSHIPMENT:

Whether expressly arranged beforehand or otherwise the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels whether belonging to the Carrier or others, or by other means of transport by land/or water and/or air proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination and to transship and store the goods either on shore or afloat and reship and forward the same. Any discharge, transshipment, landing, delivery forwarding or otherwise dealing with the goods, under the

provisions of this Clause, shall constitute due performance by the Carrier of all its obligations hereunder, and in any such event, the Carrier shall be entitled to full freight.

9. ON-DECK CARRIAGE:

The Carrier or his agents or servants are entitled to stow the goods in containers, and to carry any containers on deck and if they are so carried, the Hague Rules or U.S. COGSA as incorporated herein shall be applicable notwithstanding carriage on deck, and all goods and/or containers shall contribute to General Average whether carried on or under deck. If the Bill of Lading is stamped "ON DECK", carriage on deck shall be solely at Merchant's risk.

10. CARRIAGE AND DELIVERY OF CONTAINERISED GOODS:

Unless otherwise specifically endorsed on the face of this Bill of Lading, container(s) is (are) and shall remain the sole property of the Carrier, without the Merchant having any rights or interest therein. Containers will be put at the disposal of Merchant subject to appropriate Interchange Form being entered into in respect of such containers. Container demurrage and pier/quay rent to be based on charges published by the Carrier and/or any Conference of which the Carrier is a member, whichever is applicable, and are payable by the Merchant. If the goods are not taken by the Merchant within a reasonable time but in any event not exceeding thirty (30) days, or even seven (7) days in the case of special containers as described in Clause 11 hereunder, after the Carrier or his agent has called upon him to take delivery, the Carrier or his agent shall be at liberty to break the seal, strip the container and stow the cargo contents at the sole risk, expense and responsibility of the Merchant. Where containers owned or leased by the Carrier are stripped by the Merchant, the Merchant is responsible for returning at his risk and expense the empty containers in sound conditions with interiors brushed and clean to the port of destination, or final destination, if contracted for, or to any other point or place designated by the Carrier, his servants or agents, within the time prescribed to him. Should a container not be returned within the prescribed time and/or in sound condition and/or with the interior brushed and clean, the Merchant shall be liable for all losses and/or damage resulting therefrom.

11. SPECIAL CONTAINERS:

(a) The Carrier shall not undertake to carry the goods in refrigerated, heated, insulated, ventilated or any other special container(s), nor to carry special container(s) packed by or on behalf of the Merchant as such, but the Carrier will treat such goods or container(s) only as ordinary goods or dry container(s) respectively, unless special arrangements for the carriage of such goods or containers(s) have been agreed to in writing between the Carrier and the Merchant and are noted on the face of this Bill of Lading and unless special freight as required has been paid as agreed upon. The Carrier shall not accept responsibility for the function of special container(s) supplied by or on behalf of the Merchant.

(b) As regards the goods which have been agreed to be carried in special containers the Carrier shall exercise due diligence to maintain the facilities of the special container(s) while they are in his actual custody and control and shall not be liable for any kind of loss of or damage to the goods caused by latent defects, derangement or mechanical breakdown occurring without the fault of the Carrier.

(c) If the cargo is received by the Carrier in refrigerated container(s) into which the contents have been packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly as required. The Carrier shall not be liable for any loss of or damage to the goods arising out of or resulting from the Merchant's failure in such obligation and further does not guarantee the maintenance of the intended temperature inside the container(s).

(d) The Merchant is fully aware that a refrigerated container does not have the capacity to freeze the contents or otherwise to significantly alter the temperature of the contents, but only to maintain the temperature set. The Carrier will exercise reasonable care to maintain temperature level at plus or minus 5-C of the temperature noted herein.

(e) In the event of any claim in which the temperature of goods in a refrigerated container is a relevant fact, it is hereby agreed and stipulated that the temperature reflected in Carrier's records, to wit: the temperature recording device and/or log book reports maintained by the Carrier, shall be prima facie evidence of the temperature at which the goods are maintained at all time while under Carrier's responsibility.

## 12. CONTAINERS STUFFED BY MERCHANT:

The Carrier shall not be responsible for the safe and proper packing and stowing of goods in containers if such containers are not stowed or packed by the Carrier. Containers packed with goods by the Merchant shall be properly sealed and the seal identification reference, as well as the container reference, shall be shown herein. The Merchant shall carefully inspect containers for soundness and suitability before packing them with goods and such packing of the containers shall be prima facie evidence that the containers were sound and suitable for use. The Carrier will not be liable in any event for the particulars furnished by the Merchant as shown on the face of this Bill of Lading. The Merchant by accepting this Bill of Lading confirms that he is fully acquainted with the containers and the operation and use thereof and that the containers are completely suitable for his purposes. The Merchant further guarantees that he has secured and stuffed the goods in a safe and adequate manner having regard to the requirements of and for the containers. The Merchant assumes all and any responsibility for damage to the goods, the containers, any other goods or containers carried by the vessel and the vessel in which the containers shall be carried, if such damage or any personal injury is caused by improper stowage in and stuffing of the containers. Without prejudice to any of Carrier's rights and/or defences and/or exceptions from liability herein, in no event will Carrier be responsible for any shortage and/or damage to the containerized goods stuffed by the Merchant unless such shortage and/or damage was caused by unseaworthiness of the containers if supplied by the Carrier and/or by damage to the container itself whilst in the custody of the Carrier. The Merchant further warrants that whilst stuffing the containers he had complied with all the regulations, requirements and conventions of the Customs and other Authorities under whose control the containers will be from the time of their stuffing until the time they are delivered at their final destination(s). The Merchant agrees to be liable and shall indemnify the Carrier for any injury, loss or damage, including fines, and any kind of damage or expenses caused to the Carrier or any third party from the Merchant's failure to execute or fulfill any of his obligations under this Clause.

## 13. LOADING AND DISCHARGING:

(a) If goods contracted for carriage are not tendered when the vessel is ready to load, the Carrier is relieved of any obligation to load such cargo and vessel may leave port without further notice and deadfreight is to be paid;

(b) Notwithstanding any custom of the port to the contrary, the Merchant shall take delivery of the goods immediately upon discharge from the vessel and shall continue to receive the goods as tendered by day and night whatever the weather, including Saturdays, Sundays and Holidays, failing which the Carrier is at liberty to discharge the goods and put them into lighters, warehouses or the like, all at the risk and expense of the Merchant, such discharge to constitute a true fulfillment of the contract.

14. DANGEROUS OR HAZARDOUS GOODS:

(a) When the Merchant delivers goods of a dangerous or hazardous nature to the Carrier, he shall inform him in writing of the exact nature of the danger and indicate, if necessary, the precautions to be taken. Such goods shall be distinctly marked on the outside so as to indicate the nature thereof and so as to comply with any requirements of any applicable regulations, including regulations contained in any relevant applicable international treaty or convention.

(b) The Merchant only shall be liable and shall indemnify the Carrier and any other party or legal body for all expenses, loss or damage caused to the vessel, to a cargo, whether on board or ashore, to the Carrier and to any other(s) as a result of his failure to comply with the terms set for the in paragraph (a) of this Clause.

(c) When the expressions "dangerous goods" or "goods of dangerous nature" appear in this Bill of Lading these expressions shall include explosives or other dangerous articles or substances and combustible liquids as defined in the INTERNATIONAL MARITIME DANGEROUS GOODS CODE by the INTERNATIONAL MARITIME ORGANIZATION (IMO) and in Title 46 of the USA Code of FEDERAL REGULATIONS both as amended from time to time. In the event that IMO permits the Carrier to stow dangerous goods or goods of a dangerous nature either on or under deck, and the Carrier stows such goods on deck, such on-deck stowage will be at the Merchant's risk and liability. The Carrier shall have the right to jettison and destroy any such goods if their condition presents risk or peril to life or property at any time.

15. GOVERNMENT CLASS/UNDERWRITERS DIRECTIONS:

The Carrier, the Master and any contractor, subcontractor or agent of the Carrier (including but not limited to any land-carrier or sub-carrier), shall have liberty to comply with any orders, directors or recommendations as to loading, departure, routes in transit (including inland routes) ports of call, roads, stoppages, destination, arrival, discharge, delivery or in any other way whatsoever given by any Government or Authority or any other person or body acting or purporting to act with the authority of such Government or Authority or by any committee or person having, under the terms of the insurance of the vessel or land transport vehicle, the right to give any orders, directions or recommendations.

16. OPTIONS OF THE CARRIER:

Should it appear at any time that the performance or continued performance of the transport would or is likely to expose the vessel, her crew or any goods on board to the risk of capture, seizure, detention, damage, delay, hindrance, difficulty or disadvantage of whatever kind, or that the vessel is or is likely to be prevented from reaching or entering the port of loading or there loading in the usual manner and leaving again or reaching or entering the port of destination or there discharging in the usual manner and leaving again, all of which safely and without delay, or should the Master, in his absolute discretion, consider impossible, unsafe or inconvenient to discharge the cargo, the subject of this Bill of Lading, or any part thereof at port of destination, all of which resulting from any cause whatsoever and in particular, but not exclusively, from any war, warlike operations, blockade, riots, civil commotion or piracy, insufficient depth of water, conditions of tide, weather conditions, epidemic, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts, any of which on board or on shore, congestion in the port or at quays or berths, insufficiency of lighters, actual or threatened blockade, interdict, impracticability of entering into the said port, and unfavourable conditions at the said port, prior to or upon or subsequent to the vessel's arrival, the Carrier shall be entitled, whether or not the events or state of affairs in question existed or were anticipated at the time of entering into this contract, if the carriage has not already commenced, to cancel this contract or, in any event, to wait at or near the said port for such time as the Master, in his absolute discretion, may deem reasonable until the discharge of the said cargo can be effected there, or to discharge transship, land or deliver the goods at any convenient port or place, including the port of loading, or to forward them at the sole risk and expense

of the Merchant or otherwise to deal with the goods as the Carrier or the Master may think advisable under the particular circumstances. The discharge of any cargo under the provisions of this Clause shall be deemed due fulfillment of the contract and if in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight together with return freight, if any, and reasonable compensation for any extra service rendered to the goods.

17. SHIPPERS DECLARATIONS:

(a) The Merchant warrants the correctness of the declaration of contents, quantity, nature, definition, weight, measurement or value of the goods, whether containerized or not, but the Carrier reserves the right but is not obliged to have the contents inspected in order to ascertain same, and freight shall be paid on the proper classification or the excess weight or measurement or value (if any), as the case may be, so ascertained. The expenses of and incidental to the aforesaid inspection shall be borne by the Carrier if the Merchant's declarations are found to be correct, but otherwise such expenses shall be added to the freight, shall be borne and paid by the Merchant and shall not be considered as "double freight". The Merchant shall, if required by the Carrier so to do, furnish forthwith on demand to the Carrier the invoice or a true copy relating to the goods. The Merchant shall be responsible for all consequences of incorrect declarations as aforesaid including fines that may be imposed as a result thereof, irrespective of whether or not inspection as aforesaid has taken place. Merchant warrants that the subject cargo is being shipped in compliance with every applicable law, regulation or directive. In the event any Government or authority whatsoever shall claim that the contents of the cargo are illegal, illicit, etc., Merchant alone shall bear each and every consequence of such claim and shall, further indemnify Carrier, its agents and employees from any and all consequences of such claim, including but not limited to legal fees.

(b) If, en route to final destination, the cargo must pass through any port or cross any border, either as part of the anticipated routing or as the result of the exercise of any option or right granted to the Carrier by this contract or by law, shipper shall bear all related costs, including but not limited to port fees, customs, fines or taxes. Further, Merchant hereby undertakes to furnish Carrier with all permits and any other documentation required by the applicable government or authority in order to complete the carriage to final destination, including but not limited to evidence of payment of any fees, customs, fine and taxes. Merchant hereby agrees that in the event of any failure to supply all such documentation and pay all such sums to the complete satisfaction of any Government or authority as aforesaid, Carrier shall take any steps deemed as necessary at Carrier's sole discretion and Merchant shall bear all consequences thereof.

18. FREIGHT AND CHARGES:

The Merchant is obliged to pay freight.
Freight to be paid in cash without discount and whether prepayable or payable at destination to be considered as earned and due on receipt of the goods by the Carrier and non-returnable in any event, ship and/or goods lost or not lost. Freight and all other amounts mentioned in this Bill of Lading are, at the option of the Carrier, to be paid in the currency named in this Bill of Lading or in the currency of the country of the port of loading or in the currency of the country of the port of destination, as contracted for, at the highest selling rate of exchange for banker's sight drafts current on the date of this Bill of Lading or, for prepayable freight, on the day of loading or date of payment whichever higher or for freight payable at destination, on the day of payment.

All dues, taxes or charges or other expenses in connection with the goods shall be paid by the Merchant on demand. The Merchant shall be liable for all fines, damages, losses, expenses which the Carrier, vessel or cargo may incur or suffer through non-observance of or a non-compliance with or non-fulfillment of formalities, wrong declarations, etc., required by any regulations, including import, export or transit regulations of any Government or authority, including customs or port authorities.

19. CARRIER'S FREIGHT TARIFF RULES & REGULATIONS:

Any bookings, freight engagements, dock receipts, boat notes, interchanges or other agreements relating to the shipment previously made are superseded by this Bill of Lading and by the Carrier's Freight Tariff Rules and Regulations, which shall be deemed incorporated herein as if set forth at length. The Carrier's relevant Freight Tariff Rules and Regulations are filed with the Maritime Commission, Washington, D.C. and are also available at any of the Carrier's offices. No term of this contract shall be changed without the written consent of the Carrier.

20. LIEN:

The Carrier, his servants or agents, shall have a lien on the goods or any part thereof and right to sell such goods whether privately or by public auction for all freight (including additional freight payable as is herein stipulated) primage, deadfreight, demurrage, detention, container demurrage, charges, salvage, average of any kind whatsoever, stamps, duties, fines or penalties, C.O.D. charges to be collected as per Merchant's request prior to delivery of the goods, and for all other charges and expenses whatsoever which are for the account of the goods, or of the Merchant, and for the costs and expenses of exercising such lien, and of such sale and also for all previously unsatisfied debts whatsoever due to the Carrier, his servants or agents, by the Merchant. The lien hereby accorded may be exercised by the Carrier, his servants or agents notwithstanding that he or they may have parted with possession of the goods; and the Carrier, his servants or agents, shall at all times stand authorized by the Merchant to give all such notices to any person or persons for the time being in possession of the goods as may be required for the purpose of giving effect to the provisions of this Clause. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the difference between the amount due from them or any of them to him and the amount realized by the exercise of the rights given to the Carrier under this Clause.

21. GENERAL AVERAGE:

General Average to be adjusted at any port or place at the Carrier's or the vessel's owner's option, and to be settled according to the York-Antwerp Rules 1994 and any amendments thereof or any substitute internationally recognized rules. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier or vessel's owner in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier or vessel's owner, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers. Such deposit as the Carrier or vessel's owner, or its agents without prejudice may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be paid to the Carrier or vessel's owner or its agents in cash prior to the delivery into a special account in accordance with the provisions of the said Rules. The Merchant hereby waives his right, if any, to declare General Average and to a general average adjustment, unless the General Average sacrifices and expenditure made or incurred by the Merchant exceed US$250,000.-.

22. BOTH-TO-BLAME COLLISION CLAUSE:

If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier or vessel's owner in the navigation or in the management of the vessel, the owner of the goods carried hereunder will indemnify the Carrier or vessel's owner against all loss or liability to the other or non-carrying vessel or her owners insofar as such loss or liability represents a loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying vessel or her owners to the owners of the said goods and setoff, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the vessel or Carrier. The foregoing provisions shall

also apply where the owners, operators or those in charge of any ship or ships or object other than, or in addition to, the colliding vessel or objects are at fault in respect of a collision, contact or other accident.

### 23. PACKAGE LIMITATION AND DECLARATION OF VALUE:

The Carrier shall in no event be or become liable for any loss or damage to the goods or in connection therewith in an amount exceeding the per package limitation contained in any legislation making the Hague Rules or U.S. COGSA, as the case may be, compulsorily applicable to this Bill of Lading or, where no such legislation is applicable, in an amount not exceeding US$500.- lawful money of the United States per package or unit. In the event of bulk cargo each ton of 1,000 kilos shall, as a rule, be deemed to be the customary freight unit, and the Carrier's liability for this unit shall not exceed the said per package limitation. If according to the custom of the trade, or according to special agreement the freight charged for any bulk cargo should be based upon a higher weight-unit, the limitation of liability to US$500.- shall apply to the weight-unit in question. Furthermore, Carrier's liability if he is responsible at all, shall not exceed the market value of the goods at the time and place of shipment. Should, however, the invoice value of the goods be lower than the market value at the time and place of delivery, the Carrier will only pay the invoice value. The limitation of liability mentioned above shall not apply in the event that the nature of the goods and valuation higher than the applicable limitation, shall have been declared in writing by the Merchant upon delivery to the Carrier and inserted in this Bill of Lading and extra freight paid if required, and in such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

### 24. LAW AND JURISDICTION:

All and any claims and/or disputes arising under this Bill of Lading or in connection therewith shall be brought before and determined by the courts and in accordance with the law at:
(a) the place where the Carrier has its Head Office, namely Haifa, Israel
OR
(b) if the cargo originates in or is destined for the U.S.A., by the United States District Court for the Southern District of New York, N.Y., U.S.A.
Each of the above courts, respectively, shall have exclusive jurisdiction and, therefore, no proceedings shall be brought before any other court.

