UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZIM INTEGRATED SHIPPING SERVICES, LTD.,

                        Plaintiff,            Case No. 07-civ-5861 (RMB)

- against -

BELCO RESOURCES, INC., SINOCHEM JIANGSU
CORPORATION (FORMERLY KNOWN AS
SINOCHEM JIANGSU IMPORT & EXPORT
CORPORATION), NANJING HUABIN FOREIGN
TRADE & ECONOMICS CO., LTD.,
DRAGONTRANS SHIPPING LTD. d/b/a HUABANG
INTERNATIONAL, INC., SINOTRANS NINGBO
INTERNATIONAL FORWARDING AGENCY CO.,
LTD.,
JOHN DOE 1-10,

                        Defendants.
------------------------------------------------------------X

DECLARATION BY BRIAN JONES
IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO THE JOINT
MOTIONS TO DISMISS THE
SECOND VERIFIED AMENDED
COMPLAINT AND TO VACATE THE
RULE B ATTACHMENT OF
DEFENDANTS SINOCHEM
JIANGSU CORPORATION,
NANJING HUABIN FOREIGN
TRADE & ECONOMICS CO., LTD.
AND BELCO RESOURCES, INC.

I, **BRIAN JONES**, declare as follows:

1. I am the Vice President of Claims and Insurance for Zim American Integrated Services Limited (hereinafter "Zim American").

2. I make this declaration in support of Plaintiff Zim Integrated Shipping Services, Ltd.'s ("Zim") opposition to the joint motions of the Defendants Sinochem Jiangsu Corporation, Nanjing Huabin Foreign Trade & Economics Co., Ltd. and Belco Resources, Inc. to dismiss the second verified complaint and to vacate the Rule B attachment in the above captioned matter.

3. Zim American is a subsidiary and agent of Plaintiff Zim in the United States.

4. I have been employed by Zim American for two (2) years, having management duties involving the handling of all claims and insurance matters on behalf of ZIM within the United States, Mexico, Central America and the Caribbean. I am a graduate of Maine Maritime Academy, and hold a B.S. degree in Nautical Science. I am licensed by the U.S. Coast Guard as a Third Mate,

5. I am assigned to the head offices of Zim American which are located at 5801 Lake Wright Drive, Norfolk, Virginia. The company has occupied these offices since September 2001.

6. Zim owns and operates over 200 vessels which call at ports all around the world. Zim is recognized as a common carrier by the U.S. Federal Maritime Commission, and has its tariff for common carrier services on file with that Federal administrative agency.

7. Zim American is a company incorporated under the laws of the State of New York.

8. Zim American came into existence 60 years ago and performs its services at the instruction and request of its principal, Zim, located in Haifa.

9. Zim American has authority and the responsibility of Zim's activity in the Americas which comprises all the ports in North America and South America.

10. Zim American exercises its authority over local agents at various ports of the Americas.

11. Zim American assists vessels operated or cargoes transported by Zim calling at all ports in the Americas regardless of their port of origin.

12. Zim American books cargo aboard Zim's vessels for clients located in the Americas in any vessel sailing from a port anywhere in the world, including China.

13. Zim American negotiated a service contract and rates in the United States with Carribean Retail Ventures Inc. which cargo was stowed in hold no. 5 of the M/V ZIM HAIFA under bill of lading no. ZIMUNGB731060 and was damaged as a result of the fire.

14. Carribean Retail Ventures Inc. is a defendant in the second related action that Zim commenced before the District Court for the Southern District of New York (07-civ-6500).

15. Zim American arranges cargoes to be loaded and unloaded from Zim's vessels in the Americas.

16. Zim American is responsible for stowage planning aboard Zim's vessels in the Americas.

17. Zim American collects freight monies for cargoes discharged at ports in the Americas, or for vessels calling at ports outside of the Americas if our customers located in the Americas booked cargo freight prepaid.

18. Zim American negotiates service contracts in the United States, which includes carriage of cargos from China to the United States.

19. Zim American has authority to arrange for tugs, pilots, wharfs and terminal services, including stevedores for Zim's vessels, and to arrange for land carriage and other intermodal services for Zim's shipments.

20. In short, Zim American assists in all of the operations related to the Americas necessary to import or export cargoes on Zim's vessels.

21. In my capacity as Vice President of Claims and Insurance, I deal on a daily basis with cargoes which sail from ports in China to ports in the Americas.

22. The port rotation for the M/V ZIM HAIFA and M/V ZIM SAVANNAH is known as the Zim Container Service (ZCS).

23. At the time of the accident, the M/V ZIM HAIFA was going on the standard and customary Eastbound leg of the ZCS, sailing from the port of Ningbo (China) and to Shekou (China), Yantian (Hong Kong), Keelung (Taiwan), Balboa (Panama), Kingston (Jamaica), Savannah (Georgia, United States), New York (New York, United States), Halifax (Canada), Barcelona (Spain) and Haifa (Israel). That port rotation is published in local maritime trade bulletins, and is available on Zim's website.

24. Zim American is responsible for all Zim vessels arriving or departing from the ports of Balboa (Panama), Kingston (Jamaica), Savannah (Georgia, United States), New York (New York, United States), Halifax (Canada).

25. Zim American supervises all cargo manifests received from China within 24 hours of departure of a vessel from a Chinese port towards the United States as required under U.S. Customs' laws.

26. I was notified on or about Sunday evening June 2, 2007 by the Operations Department in Norfolk, that a fire had erupted aboard the M/V ZIM Haifa en route towards Panama, within Zim American's zone of authority.

27. The Master of the M/V ZIM HAIFA communicated regularly with the Operations department of Zim American to keep it abreast of the evolution of the fire aboard the vessel and of his needs.

28. As per the Master of the M/V ZIM HAIFA's request, I assisted in directing our local agent in Balboa to source additional supplies of CO2 to ressuply the vessel at its arrival in order to help the crew stop the fire.

29. I was kept advised of the arrangements for tug boats and fire companies to assist the M/V ZIM HAIFA at his arrival at the port of Balboa and fight the fire.

30. I arranged for a representative of the P&I Club, local surveyors and fire experts to be present at the time of the arrival of the M/V ZIM HAIFA in Balboa to assess the damages caused by the fire and determine, if possible, the cause of the fire.

31. Each day, Zim American monitored on an hourly basis the evolution of the fire and was authorized to respond to the Master of the M/V ZIM HAIFA's requests.

32. I personally notified the shippers and receivers of cargo stowed in hold no.5 of the M/V ZIM HAIFA of the occurrence of the fire and the possibility that their cargo was damaged. Many of the receivers of the cargo in hold no. 5 were located in the United States.

33. I personally hired surveyors for discharge surveys from the M/V ZIM HAIFA at the port of Kingston (Jamaica) and the port of New York.

34. I personally hired surveyors and arranged damage surveys of Zim's equipment in Brooklyn, New York

35. I personally hired surveyors and arranged damage surveys to the cargos in Pennsylvania, Florida and San Juan, Puerto Rico.

36. I was informed by one of our appointed surveyors that the fire was likely caused by the explosion of a container no. ZIMU1037636, and that the material inside the container was most likely Calcium Hypochlorite, a hazardous product. I checked the description of the cargo appearing on the corresponding bill of lading no. ZIMUNGB70904 which identified the cargo as "Calcium Chloride".

37. The IMDG code, which is an International convention that governs the carriage of hazardous cargos in maritime transportation, does not list calcium chloride as a hazardous cargo. Although I am not a chemist, as far as I am aware, calcium chloride is neither explosive nor flammable.

38. I contacted the shipper, Defendant Belco Resources, Inc. ("Belco"), located in the United States and requested confirmation of the identity of the material inside container ZIMUNGB70904 aboard the M/V ZIM HAIFA.

39. Defendant Belco confirmed that the subject container carried a cargo of Calcium Hypochlorite which they had purchased from a manufacturer and exporter of chemicals located in China, Defendant Sinochem Jiangsu Corporation ("Sinochem"). As proof of the contents of the

container, the president of Belco forwarded to me by fax a copy of the purchase order of Calcium Hypochlorite with the manufacturer, Defendant Sinochem. A true and accurate copy of the "purchase order" faxed to me by Belco is attached hereto as Exhibit "A".

40. I also researched about the Defendant Sinochem on the internet and learned that they were exporting chemicals throughout the world and were doing business in the United States, and had a subsidiary or related entity in Houston, Texas.

41. I contacted Zim's agent in the Far East which informed me that Defendant Nanjing Huabin, an export agent, had shipped the goods via two freight forwarders.

42. All the evidence related to the damages and the causation of the damages is centralized in Norfolk, Virginia and is drafted in English.

43. All the witnesses which will testify about the fire, the damages, the causation of the damages are all English speakers and reside either in the United States, or will be made available to testify in New York.

44. The documents issued in China and received by Zim's agent in the Far East in connection to the booking of the cargo are either drafted English, or are bilingual English-Chinese.

45. Evidence of the nature of the substance found in container ZIMU1037636 is notably secured in the United States.

46. Zim commenced a second related action in this Court, docketed 07-civ-6500, against more than one hundred alleged owners of containers likely to have suffered damages as a result of the fire. The purpose of this second action was to declare that Plaintiff Zim is not liable for the fire which erupted aboard the M/V ZIM HAIFA. Plaintiff Zim's intent in filing this second action was to have one forum to adjudicate all the claims resulting from the strict liability case instead of facing multiple actions in separate jurisdiction by various cargo interests.

47. In light of all the evidence and points of contacts accumulated by Zim American in the United States and within its zone of authority, I advised Zim to commence a litigation in the United States against all the Defendants in the above captioned action.

48. Zim has no presence in North Carolina.

49. Zim has not had any vessels calling at the port of Wilmington, North Carolina since 21 April 2007.

50. It has no property in North Carolina.

51. It has no phone listing or employees located in North Carolina.

52. Zim does not advertise in North Carolina.

53. It has no office in North Carolina.

54. Prior to 21 April 2007, Zim had only a contract with an independent contractor named Wilmington Shipping Co., who performed some services for Zim in Wilmington.

55. Wilmington Shipping Co. is not authorized to accept service of process for Zim, or even Zim American.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: 11 January, 2008
Norfolk, VA

_____
BRIAN JONES