# EXHIBIT I



# The Hague-Visby Rules
## The Hague Rules as Amended by the Brussels Protocol 1968

copy @ Lex Mercatoria

Lex Mercatoria | Quick Ref.: | Manifest | Sea Carriage | SiSU electronic documents | www.jus.uio.no/sisu

# The Hague-Visby Rules
## The Hague Rules as Amended by the Brussels Protocol 1968

- Article I
- Article II
- Article III
- Article IV
- Article IV bis
- Article V
- Article VI
- Article VII
- Article VIII
- Article IX
- Article X

Document Information (metadata)

---

# The Hague-Visby Rules
## The Hague Rules as Amended by the Brussels Protocol 1968

### Article I

In these Rules the following words are employed, with the meanings set out below:

**(a)** 'Carrier' includes the owner or the charterer who enters into a contract of carriage with a shipper.

**(b)** 'Contract of carriage' applies only to contracts of carriage covered by a bill of lading or any similar document of title, in so far as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or similar document of title regulates the relations between a carrier and a holder of the same.

**(c)** 'Goods' includes goods, wares, merchandise, and articles of every kind whatsoever except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried.

(d) 'Ship' means any vessel used for the carriage of goods by sea.

(e) 'Carriage of goods' covers the period from the time when the goods are loaded on to the time they are discharged from the ship.

**Article II**

Subject to the provisions of Article VI, under every contract of carriage of goods by sea the carrier, in relation to the loading, handling, stowage, carriage, custody, care and discharge of such goods, shall be subject to the responsibilities and liabilities and entitled to the rights and immunities hereinafter set forth.

**Article III**

**1.** The carrier shall be bound before and at the beginning of the voyage to exercise due diligence to:

(a) Make the ship seaworthy;

(b) Properly man, equip and supply the ship;

(c) Make the holds, refrigerating and cool chambers, and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage and preservation.

**2.** Subject to the provisions of Article IV, the carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

**3.** After receiving the goods into his charge the carrier or the master or agent of the carrier shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things:

(a) The leading marks necessary for identification of the goods as the same are furnished in writing by the shipper before the loading of such goods starts, provided such marks are stamped or otherwise shown clearly upon the goods if uncovered, or on the cases or coverings in which such goods are contained, in such a manner as should ordinarily remain legible until the end of the voyage.

(b) Either the number of packages or pieces, or the quantity, or weight, as the case may be, as furnished in writing by the shipper.

(c) The apparent order and condition of the goods.

Provided that no carrier, master or agent of the carrier shall be bound to state or show in the bill of lading any marks, number, quantity or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

**4.** Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraph 3 (a), (b) and (c).

However, proof to the contrary shall not be admissible when the bill of lading has been transferred to a third party acting in good faith.

**5.** The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity and weight, as furnished by him, and the shipper shall indemnify the carrier against all loss, damages and expenses arising or resulting from inaccuracies in such particulars. The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper.

**6.** Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, or, if the loss or damage be not apparent, within three days, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading.

The notice in writing need not be given if the state of the goods has, at the time of their receipt, been the subject of joint survey or inspection.

Subject to paragraph 6bis the carrier and the ship shall in any event be discharged from all liability whatsoever in respect of the goods, unless suit is brought within one year of their delivery or of the date when they should have been delivered. This period, may however, be extended if the parties so agree after the cause of action has arisen.

In the case of any actual or apprehended loss or damage the carrier and the receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.

6 bis. An action for indemnity against a third person may be brought even after the expiration of the year provided for in the preceding paragraph if brought within the time allowed by the law of the Court seized of the case. However, the time allowed shall be not less than three months, commencing from the day when the person bringing such action for indemnity has settled the claim or has been served with process in the action against himself.

7, After the goods are loaded the bill of lading to be issued by the carrier, master, or agent of the carrier, to the shipper shall, if the shipper so demands be a 'shipped' bill of lading, provided that if the shipper shall have previously taken up any document of title to such goods, he shall surrender the same as against the issue of the 'shipped' bill of lading, but at the option of the carrier such document of title may be noted at the port of shipment by the carrier, master, or agent with the name or names of the ship or ships upon which the goods have been shipped and the date or dates of shipment, and when so noted, if it shows the particulars mentioned in paragraph 3 of Article III, shall for the purpose of this article be

deemed to constitute a 'shipped' bill of lading.

**8.** Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to, or in connection with, goods arising from negligence, fault, or failure in the duties and obligations provided in this article or lessening such liability otherwise than as provided in these Rules, shall be null and void and of no effect. A benefit of insurance in favour of the carrier or similar clause shall be deemed to be a clause relieving the carrier from liability.

**Article IV**

**1.** Neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness unless caused by want of due diligence on the part of the carrier to make the ship seaworthy, and to secure that the ship is properly manned, equipped and supplied, and to make the holds, refrigerating and cool chambers and all other parts of the ship in which goods are carried fit and safe for their reception, carriage and preservation in accordance with the provisions of paragraph 1 of Article III. Whenever loss or damage has resulted from unseaworthiness the burden of proving the exercise of due diligence shall be on the carrier or other person claiming exemption under this article.

**2.** Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from:

**(a)** Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship.

**(b)** Fire, unless caused by the actual fault or privity of the carrier.

**(c)** Perils, dangers and accidents of the sea or other navigable waters.

**(d)** Act of God.

**(e)** Act of war.

**(f)** Act of public enemies.

**(g)** Arrest or restraint of princes, rulers or people, or seizure under legal process.

**(h)** Quarantine restrictions.

**(i)** Act or omission of the shipper or owner of the goods, his agent or representative.

**(j)** Strikes or lockouts or stoppage or restraint of labour from whatever cause, whether partial or general.

**(k)** Riots and civil commotions.

**(l)** Saving or attempting to save life or property at sea.

(m) Wastage in bulk of weight or any other loss or damage arising from inherent defect, quality or vice of the goods.

(n) Insufficiency of packing.

(o) Insufficiency or inadequacy of marks.

(p) Latent defects not discoverable by due diligence.

(q) Any other cause arising without the actual fault or privity of the carrier, or without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.

3. The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault or neglect of the shipper, his agents or his servants.

4. Any deviation in saving or attempting to save life or property at sea or any reasonable deviation shall not be deemed to be an infringement or breach of these Rules or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom.

5 (a) Unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading, neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the goods in an amount exceeding the equivalent of 666.67 units of account per package or unit or units of account per kilo of gross weight of the goods lost or damaged, whichever is the higher.

(b) The total amount recoverable shall be calculated by reference to the value of such goods at the place and time at which the goods are discharged from the ship in accordance with the contract or should have been so discharged.

The value of the goods shall be fixed according to the commodity exchange price, or, if there be no such price, according to the current market price, or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.

(c) Where a container, pallet or similar article of transport is used to consolidate goods, the number of packages or units enumerated in the bill of lading as packed in such article of transport shall be deemed the number of packages or units for the purpose of this paragraph as far as these packages or units are concerned. Except as aforesaid such article of transport shall be considered the package or unit.

(d) The unit of account mentioned in this Article is the special drawing right as defined by the International Monetary Fund. The amounts mentioned in

h_visby/art/art04_5asub-paragraph (a) of this paragraph shall be converted into national currency on the basis of the value of that currency on a date to be determined by the law of the Court seized of the case.

(e) Neither the carrier nor the ship shall be entitled to the benefit of the limitation of liability provided for in this paragraph if it is proved that the damage resulted from an act or omission of the carrier done with intent to cause damage, or recklessly and with knowledge that damage would probably result.

(f) The declaration mentioned in sub-paragraph (a) of this paragraph, if embodied in the bill of lading, shall be prima facie evidence, but shall not be binding or conclusive on the carrier.

(g) By agreement between the carrier, master or agent of the carrier and the shipper other maximum amounts than those mentioned in sub-paragraph (a) of this paragraph may be fixed, provided that no maximum amount so fixed shall be less than the appropriate maximum mentioned in that sub-paragraph.

(h) Neither the carrier nor the ship shall be responsible in any event for loss or damage to, or in connection with, goods if the nature or value thereof has been knowingly mis-stated by the shipper in the bill of lading.

**6.** Goods of an inflammable, explosive or dangerous nature to the shipment whereof the carrier, master or agent of the carrier has not consented with knowledge of their nature and character, may at any time before discharge be landed at any place, or destroyed or rendered innocuous by the carrier without compensation and the shipper of such goods shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment. If any such goods shipped with such knowledge and consent shall become a danger to the ship or cargo, they may in like manner be landed at any place, or destroyed or rendered innocuous by the carrier without liability on the part of the carrier except to general average, if any.

**Article IV bis**

**1.** The defences and limits of liability provided for in these Rules shall apply in any action against the carrier in respect of loss or damage to goods covered by a contract of carriage whether the action be founded in contract or in tort.

**2.** If such an action is brought against a servant or agent of the carrier (such servant or agent not being an independent contractor), such servant or agent shall be entitled to avail himself of the defences and limits of liability which the carrier is entitled to invoke under these Rules.

**3.** The aggregate of the amounts recoverable from the carrier, and such servants and agents, shall in no case exceed the limit provided for in these Rules.

**4.** Nevertheless, a servant or agent of the carrier shall not be entitled to avail

himself of the provisions of this article, if it is proved that the damage resulted from an act or omission of the servant or agent done with intent to cause damage or recklessly and with knowledge that damage would probably result.

**Article V**

A carrier shall be at liberty to surrender in whole or in part all or any of his rights and immunities or to increase any of his responsibilities and obligations under these Rules, provided such surrender or increase shall be embodied in the bill of lading issued to the shipper. The provisions of these Rules shall not be applicable to charter parties, but if bills of lading are issued in the case of a ship under a charter party they shall comply with the terms of these Rules. Nothing in these Rules shall be held to prevent the insertion in a bill of lading of any lawful provision regarding general average.

**Article VI**

Notwithstanding the provisions of the preceding articles, a carrier, master or agent of the carrier and a shipper shall in regard to any particular goods be at liberty to enter into any agreement in any terms as to the responsibility and liability of the carrier for such goods, and as to the rights and immunities of the carrier in respect of such goods, or his obligation as to seaworthiness, so far as this stipulation is not contrary to public policy, or the care or diligence of his servants or agents in regard to the loading, handling, stowage, carriage, custody, care and discharge of the goods carried by sea, provided that in this case no bill of lading has been or shall be issued and that the terms agreed shall be embodied in a receipt which shall be a non-negotiable document and shall be marked as such.

An agreement so entered into shall have full legal effect.

Provided that this article shall not apply to ordinary commercial shipments made in the ordinary course of trade, but only to other shipments where the character or condition of the property to be carried or the circumstances, terms and conditions under which the carriage is to be performed are such as reasonably to justify a special agreement.

**Article VII**

Nothing herein contained shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to, or in connection with, the custody and care and handling of goods prior to the loading on, and subsequent to the discharge from, the ship on which the goods are carried by sea.

**Article VIII**

The provisions of these Rules shall not affect the rights and obligations of the

carrier under any statute for the time being in force relating to the limitation of the liability of owners of sea-going vessels.

### Article IX

These Rules shall not affect the provisions of any international Convention or national law governing liability for nuclear damage.

### Article X

The provisions of these Rules shall apply to every bill of lading relating to the carriage of goods between ports in two different States if

**(a)** the bill of lading is issued in a contracting State, or

**(b)** the carriage is from a port in a contracting State, or

**(c)** the contract contained in or evidenced by the bill of lading provides that these Rules or legislation of any State giving effect to them are to govern the contract;

whatever may be the nationality of the ship, the carrier, the shipper, the consignee, or any other interested person.

(The last two paragraphs of this Article are not reproduced. They require contracting States to apply the Rules to bills of lading mentioned in the Article and authorise them to apply the Rules to other bills of lading).

(Article 11 to 16 of the International Convention for the unification of certain rules of law relating to bills of lading signed at Brussels on August 25, 1974 are not reproduced. They deal with the coming into force of the Convention, procedure for ratification, accession and denunciation and the right to call for a fresh conference to consider amendments to the Rules contained in the Convention).

## Document Information (metadata)
### Metadata

<http://www.jus.uio.no/lm/sea.carriage.hague.visby.rules.1968/sisu_manifest.html>

### Dublin Core (DC)

DC tags included with this document are provided here.

DC Title: The Hague-Visby Rules
The Hague Rules as Amended by the Brussels Protocol 1968

DC Date: 1968

**Version Information**

Sourcefile: sea.carriage.hague.visby.rules.1968.lm3

Filetype: SiSU text 0.38

Sourcefile Digest, MD5(sea.carriage.hague.visby.rules.1968.sst)= c4a6f2a1e2bf09cbcc64759216d7e468

Skin_Digest: MD5(skin_lm.rb)= 1f1edf73fb20daaec0dbde62b1035bd3

**Generated**

Document (metaverse) last generated: Tue Nov 27 04:36:13 +0000 2007

Generated by: SiSU 0.62.3 of 2007w48/2 (2007-11-27)

Ruby version: ruby 1.8.6 (2007-09-24 patchlevel 111) [i486-linux]



scroll   toc   pdf   pdf   odt   A-Z
idx   txt   search

**LexMercatoria**
www.lexmercatoria.org

( International Trade/Commercial Law & e-Commerce Monitor )

*W3 since October 3 1993*

*1993 -*

started @The **University of Tromsø**, Norway

hosted by The **University of Oslo**, Norway

in fellowship with The Institute of International Commercial Law,

**Pace University**, White Plains, New York, U.S.A.

These pages are licensed to **Cameron May**.

Disclaimer!

Books and Journals

Conferences

CM Catalogue, 2007 (pdf)

CAMERON MAY

Cameron May Ltd.

International Law Publishers

7 Cornwall Crescent

Notting Hill

London W11 1PH

United Kingdom
Phone: 44 (0)20 7792 0075
Phone: 44 (0)20 7792 1055
Fax: 44 (0)20 7222 8517
info@cameronmay.com

&

© Ralph Amissah



Output generated by **SiSU** 0.62.3 2007-11-27 (2007w48/2)
**SiSU** Copyright © Ralph Amissah 1997, current 2007. All Rights Reserved.
**SiSU** is software for document structuring, publishing and search, www.jus.uio.no/sisu and www.sisudoc.org
*w3 since October 3 1993*
ralph@amissah.com

SiSU using:
Standard SiSU markup syntax,
Standard SiSU meta-markup syntax, and the
Standard SiSU object citation numbering and system, (object/text positioning system)
Copyright © Ralph Amissah 1997, current 2007. All Rights Reserved.



SiSU is released under **GPLv3** or later, <http://www.gnu.org/licenses/gpl.html>

SiSU, developed using **Ruby** on **Debian/Gnu/Linux** software infrastructure, with the usual GPL (or OSS) suspects.
Better - "performance, reliability, scalability, security & total cost of ownership" [not to mention flexibility & choice] use of and adherence to open standards (where practical and fair) and it is software libre.
Get With the Future **Way Better!**