UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ZIM INTEGRATED SHIPPING SERVICES, LTD.,

                              Plaintiff,              Case No. 07-civ-5861 (RMB)

     - against -

BELCO RESOURCES, INC., SINOCHEM
JIANGSU CORPORATION (FORMERLY KNOWN
AS SINOCHEM JIANGSU IMPORT & EXPORT
CORPORATION), NANJING HUABIN FOREIGN
TRADE & ECONOMICS CO., LTD.,
DRAGONTRANS SHIPPING LTD. d/b/a
HUABANG INTERNATIONAL, INC.,
SINOTRANS NINGBO INTERNATIONAL
FORWARDING AGENCY CO., LTD.,
JOHN DOE 1-10,

                            Defendants.
----------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS SINOCHEM JIANGSU CORPORATION AND**
**NANJING HUABIN FOREIGN TRADE & ECONOMICS CO., LTD.'S**
**MOTION TO DISMISS WITH PREJUDICE COUNTS II THROUGH IX OF THE**
**SECOND AMENDED COMPLAINT AND TO VACATE THE RULE B ATTACHMENT**
**AND IN OPPOSITION TO DEFENDANT BELCO RESOURCES, INC.'S**
**MOTION TO VACATE THE RULE B ATTACHMENT**


**DeOrchis & Partners, LLP**
*Attorneys for Plaintiff*
61 Broadway, 26th Floor
New York, New York  10006-2802
(212) 344-4700

Vincent M. De Orchis
John A. Orzel
William E. Lakis
Olivier D. L. DuPont
*-of Counsel-*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT……………………………………………………………………….................4

POINT I    PLAINTIFF'S COMPLAINT IS WELL PLED
           AND SHOULD NOT BE DISMISSED ................................................. 4

           A.    The Incorporated Documents Support the Pleadings...................4

           B.    Plaintiff's Allegations Are Sufficient To Withstand
                 a Motion To Dismiss.................................................................6

           C.    Plaintiff Has Stated a Claim For Fraud......................................7

           D.    Plaintiff Has Stated a Claim for Negligent Misrepresentation ................12

           E.    Plaintiff Has Properly Stated Claims for Strict Product Liability,
                 Strict Liability for Failure to Warn, or Negligent Failure to Warn...........13

           F.    Zim's Claim For Breach of Warranty of Particulars Is Proper.................14

           G.    Zim's Claim For Strict Liability Under COGSA Does Not Fail ..............15

POINT II   ZIM IS ENTITLED TO ITS CHOICE OF FORUM ABSENT A STRONG
           SHOWING OF INCONVENIENCE BY DEFENDANTS ................................. 17

           A.    A Case-by-Case Analysis .......................................................18

                 1.    Zim's choice of forum should be given deference........................18

                 2.    China is not an adequate alternative forum...................................20

                 3.    The Gilbert factors do not support dismissal ................................22

                 4.    The Gilbert public interests favor retention of this matter............23

POINT III  OPPOSITION TO DEFENDANT BELCO'S MOTION TO VACATE THE
           RULE B ATTACHMENT PURSUANT TO RULE (E)(4)(f) ............................24

CONCLUSION................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aniero Concrete Co. v. New York City Construction Authority*,
   1997 U.S. Dist. LEXIS 22, at *37 (S.D.N.Y. 1997) ............................................................... 11

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434, 443 (2d Cir. 2006) ........................................................... 23, 24, 25, 26

*Atlantic Overseas Corp. v. Feder*,
   452 F. Supp. 347 (S.D.N.Y. 1978) ........................................................................... 15

*Bigio v. The Coca Cola Co.*,
   448 F.3d 176, 179 (2d. Cir. 2006) ............................................................................19

*Cal. Dist. Inc. v. Cadburry Schweppes Americas Beverages, Inc.*,
   2007 WL 54534 (S.D.N.Y. 2007) ............................................................................ 5

*Carbotrade v. Bureau Veritas*,
   99 F.3d 86 (2d Cir. 1996) ...................................................................................... 8

*Compania Sudamericana de Vapores S.A., v. Sinochem Tianjin Co.*,
   2007 U.S. Dist. LEXIS 24737, *7 (S.D.N.Y. 2007) .......................................16, 20

*Concorde Funds, Inc. v. Value Line, Inc.*,
   2006 U.S. Dist. LEXIS 18759, at *16, n.8 (S.D.N.Y. 2006) ..................................12

*Contship Containerlines, Ltd. v. PPG Industries, Inc.*,
   443 F.3d 74 (2d Cir. 2006) ...................................................................................17

*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
   341 F.2d 50, 52-53 (2d Cir. 1965) ........................................................................ 24

*Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers Gmbh &Co. Kg*,
   409 F, Supp. 2d 427 (S.D.N.Y., 2006) ................................................................. 25

*Eternity Global Master Fund Limited v. Morgan Guaranty Trust Co.*,
   375 F. 3d 168, 187 (2d Cir. 2004) ....................................................................... 11

*Furlong v. The Long Island College Hospital*
   710 F.2d 922 (2d Cir. 1983) ..................................................................................7

*GJR Invs., Inc. v. County of Escambia, Fla.*,
   132 F.3d 1359 (11th Cir. 1998) .........................................................................7

*Gulf Oil Corp. v. Gilbert*,
    330 US. 501 (1974) ................................................................................18, 22, 23

*Hellenic Lines, Ltd. v. Rhoditis*,
    398 U.S. 306, 308-09, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970) ............................. 7

*Hoidas v. Orion & Global Chartering Co.*,
    440 F. Supp. 53, 55 n.2 & n.3 (S.D.N.Y. 1977) ......................................9

*Hydro Investors, Inc. v. Trafalgar Power, Inc.,*
    227 F.3d 8, 20 (2d Cir. 2000)...............................................................12

*In re M/V DG Harmony*,
    394 F. Supp. 2d 649 (S.D.N.Y. 2005).......................................... 5, 16, 17

*In re. Ta Chi Navigation (Panama) Corp.,*
    462 F. Supp. 260, 267 (S.D.N.Y. 1978) .................................................9

*International Audiotext Network, Inc. v. American Telephone and Telegraph Company,*
    F.3d 69 (2d Cir. 1995) .........................................................................4

*International Motor Sports Group, Inc. v. Gordon*,
    1999 U.S. Dist. LEXIS 12610 (S.D.N.Y. 1999)............................... 11, 12

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65, 72 (2d Cir. 2001) ...................................................17, 18, 19

*Koster v. Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) ...........................................................................19

*Lasala v. UBS, AG*,
    510 F. Supp. 2d 213, 222 ...............................................................21, 22

*Lauritzen v. Larsen*,
    345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953)................................ 7

*Leather's Best, Inc. v. S.S. Mormaclynx*,
    451 F.2d 800 (2d Cir. 1971) ...............................................................15

*Lora v.Perez*,
    2007 U.S. Dist. LEXIS 85887, *4 (S.D.N.Y., 2007)................................5

*Macleod v Cohen-Erichs Corp.*,
    28 F Supp 103 (D.C.N.Y. 1939) ..........................................................6

*Mattes v. Nat'l Hellenic American Line, S.A.,*
    427 F. Supp. 619, 623-24 (S.D.N.Y. 1977) ......................................... 9

*Moncada v. Lemuria Shipping Corp.*,
  491 F.2d 470, 472 (2d Cir. 1974) ....................................................................9

*Moore v. Guesno*,
  485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007) ....................................................7

*Morris Zweig v. National Mortgage Bank of Greece*,
  1993 US Dist. LEXIS 8460, *28 (S.D. N.Y. 1993) .......................................21

*Norex Petro v. Access Industries*,
  416 F.3d 146, 153 (2d Cir. 2005) .................................................................18

*O'Brien v. Nat'l Prop. Anlysts Partners*,
  719 F. Supp. 222 (S.D.N.Y 1989) ..................................................................5

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 845 (U.S. 1985) .....................................................................13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235, 255 n.22 (1981) .................................................................18, 19

*Polo Ralph Lauren L.P. v. Tropical Shipping & Construction Co.*,
  215 F.3d 1217 (11th Cir. 2000) ...................................................................15

*Pollux Holding Ltd. v. The Chase Manhattan Bank*,
  329 F. 3d 64, 73 (2d Cir. 2003) ...................................................................10

*PT United Can Co. v. Crown Cork & Seal Co.*,
  138 F.3d 65, 74 (2d Cir. 1998) .................................................................... 21

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*,
  426 F.3d 580 (2d Cir. 2005) ..........................................................................8

*Reisman v. Medafrica Lines, USA*,
  592 F.Supp. 50 (S.D.N.Y. 1984) ...................................................................12

*Seawind Compania, S.A. v. Crescent Line, Inc.*,
  320 F.2d 580, 582 (2d Cir. 1963) ................................................................235

*Senator Linie GMBH & Co. v. Sunway Line, Inc.*,
  291 F.3d 145, 158 n. 17 (2d Cir. 2002) ........................................................16

*Sinochem International Co., Ltd., v. Malaysia Int'l Shipping Corp.*,
  127 S.Ct. 1184, 1190; 167 L.Ed.2d 15 (2007)(Not officially reported) .......................23

*Skibs A/S Gylfe v. Hyman-Michaels Co.*,
    304 F. Supp. 1204, 1221 (E.D. Mich. 1969) ........................................................17

*Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd.*,
    2007 U.S. Dist. LEXIS 19531, at *5, n.3 (S.D.N.Y. 2007) ...................................14

*Sussman v. Bank of Israel*,
    801 F. Supp. 1068, 1076 (S.D.N.Y. 1992, aff'd, 990 F.2d 71 (2d Cir. 1993) ......................21

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)..............................................6

*Texport Oil Co. v. M/V/ Amolyntos*,
    11 F.3d 361, 367 (2d Cir. 1993) ..........................................................................15

*Universidad de Las Californias v. Mayfair Advisors, Ltd.*,
    2007 U.S. Dist. LEXIS 66351, *5 (S.D.N.Y., 2007) .............................................5

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) ...................................................................................6

## Statutes

46 U.S.C.§30701(3)(5)) ...............................................................................................14

46 U.S.C.S. § 30701(4)(6) ...........................................................................................16

## Other Authorities

Hague Convention on the Carriage of Goods by Sea Act of 1924, as amended by the Brussels
Protocol of 1968, Article 3(5) ...................................................................................14

Hague Convention on the Carriage of Goods by Sea Act of 1924, as amended by the Brussels
Protocol of 1968, Article 4(6) ...................................................................................16

Treaty of Friendship, Commerce and Navigation, 5 U.S.T. 550, T.I.A.S. No. 2948 ................2, 9

## PRELIMINARY STATEMENT

Plaintiff Zim Integrated Shipping Services, Ltd. ("Zim") respectfully submits this Memorandum of Law in opposition to the joint motion of Defendants Sinochem Jiangsu Corporation ("Sinochem") and Nanjing Huabin Foreign Trade & Economics Co., Ltd. ("Huabin") to dismiss Zim's Second Verified Amended Complaint ("Complaint") and to vacate the Rule B attachment, and a further motion by Defendant, Belco Resources, Inc. ("Belco") to vacate the Rule B attachment.

Sinochem, through its agents, including Huabin, shipped a dangerous product, Calcium Hypochlorite ("Cal-Hypo"), declared as an innocuous substance, aboard plaintiff's vessel. The Cal-Hypo exploded. Plaintiff's vessel was severely damaged, and three seamen were injured. Owners of other cargoes, many going to the U.S., also suffered losses.

Sinochem and Huabin, only, have brought a Motion to Dismiss pursuant to Rule 12(b)(6) and on grounds of *forum non conveniens.* The motion should be denied.

The crux of Defendants' 12(b)(6) motion is based on two alleged "contradictions" in Plaintiff's pleadings, namely: the failure of Plaintiff to plead that the container of Cal-Hypo was transshipped from the M/V ZIM SAVANNAH to the M/V ZIM HAIFA; and the existence of a Certificate provided to Plaintiff at the time of the booking of the cargo which would suggest the chemical was Cal-Hypo. However, these so-called "contradictions" do not exist. Transshipment is customary practice in the maritime industry and is expressly provided for under the terms of the bill of lading. (*See* Curtin Decl. ¶ 14) . The transshipment had no role in the explosion. The name of the chemical on the Certificate is improper for shipping a hazardous product under the applicable international conventions. Most importantly, Defendants' Certificate declared to Zim

1

that the product was non-flammable and non-oxidizing.  In fact, Cal-Hypo is an oxidizing substance and may explode at low temperatures.

Defendants' motion on grounds of *forum non conveniens* should also be dismissed.  The overwhelming amount of evidence concerning causation and damages are located in the United States.  Zim, as an Israeli company, is a beneficiary of the Treaty of Friendship, Commerce and Navigation between the United States and Israel under which it should be afforded "national treatment and most-favored-nation treatment with respect to access to the courts of justice".  Zim's base of operations in respect to the vessel is in the United States. (Jones Decl. ¶¶ 6-39).  The M/V ZIM HAIFA was en route to the ports of Savannah and New York to deliver containers which were damaged by Defendants' Cal-Hypo. (Curtin Decl. ¶¶ 11, 12). Defendants placed a hazardous , chemical product into the stream of international commerce, causing damages to Plaintiff and U.S. cargoes interests.  This Court has a strong public interest in protecting the injured parties, overwhelmingly located in the U.S., especially in light of recent well publicized events involving defective and dangerous goods shipped from China to the U.S.

## STATEMENT OF FACTS

Cal-Hypo is a hazardous product under the International Convention for the Safety of Life at Sea ("SOLAS") and is known to explode or ignite at low temperatures. (Compl. ¶¶ 15, 16).  Cal-Hypo is infamous in the maritime industry for causing extensive damage, including sinking vessels. (Compl. ¶17).  As a result, Plaintiff Zim has refused to carry Cal-Hypo since 2002. (Compl. *id*).

Cal-Hypo is responsible for causing a fire on June 3, 2007 aboard the M/V ZIM HAIFA, a vessel operated by Plaintiff, and for injuring three of its crew members on a voyage from the Far East to the East Coast of the United States. (Compl. ¶¶ 10, 11, 14).  Cal-Hypo was loaded

aboard the M/V SAVANNAH at the port of Ningbo as indicated by the bill of lading. (Compl. Ex. A). The cargo was transshipped aboard the M/V HAIFA at a later port as more fully explained in this brief. Cal-Hypo exploded and caused extensive damages to the M/V ZIM HAIFA. (Compl. ¶ 18 and Ex. E). It also caused significant damages to other cargoes interests. (Compl. ¶ 18). Nine cargo interests, eight of which are located in the United States, are now claiming an amount exceeding $200,000.00 against Zim for losses resulting from the fire. (Willoughby Decl. ¶ 20).

Defendants misdescribed the cargo of Cal-Hypo as a harmless and non flammable substance, Calcium Chloride ("CC"), on the documents received for the booking of the cargo, namely the bill of lading, dock receipt and a document entitled Certification for Safe Transport of Chemical Goods (the "Certificate"). (Compl. ¶¶ 19, 30, 31 and Exs. A, B, C). Belco, a U.S. company, is the named shipper on the bill of lading. (Compl. ¶¶ 4, 22). Belco purchased Cal-Hypo from Sinochem, a company involved in the export of chemicals located in Nanjing, China. (Compl. ¶¶ 24, 5). Sinochem arranged for the transportation of Cal-Hypo by hiring Huabin. (Compl. ¶ 26). Huabin then hired Huabang to book the shipment, who in turn contacted Sinotrans. (Compl. ¶¶ 27, 28). Sinotrans booked the shipment of Cal-Hypo with Plaintiff. (Compl. ¶ 28).

Belco had purchased 19 shipments of Cal-Hypo from Defendant Sinochem since 2004. (Compl. ¶ 34). Sinochem hired Huabin to arrange the transportation of each of these shipments. On 18 occasions, Cal-Hypo was declared on the bill of lading as substances other than Cal-Hypo. (Compl. ¶ 35, 36). Only one bill of lading reflected correctly the nature of the cargo. (Compl. ¶¶ 37, 38). Zim believes that the cargo was intentionally misdeclared as CC by Sinochem,

individually or jointly with the other defendants, to avoid the restrictions by Zim on carrying Cal-Hypo. (Compl. ¶¶ 29, 38, 39).

## ARGUMENT

## POINT I

## PLAINTIFF'S COMPLAINT IS WELL PLED AND SHOULD NOT BE DISMISSED

**A.    The Incorporated Documents Support The Pleadings**

Defendants' first argument is that Zim did not allege in its complaint that container ZMU1037636 had been transferred from the M/V ZIM SAVANNAH to the M/V ZIM HAIFA. (Mot. Dis. page 8).  But transfer of the container from one vessel to another did not contribute in any way to the cause of the explosion and fire.  Even Defendants do not make that suggestion. Hence, it is an irrelevant fact for the pleadings.

Transshipment of containers is not a mere possibility (*See* Mot. Dis. *id.*) but a common practice in the maritime industry. (Curtin Decl. ¶¶ 13, 14). This practice is expressly authorized under section 8 of the terms and conditions of Zim's bill of lading. (Curtin Decl. ¶ 14).  The bill of lading is incorporated by reference in Zim's complaint. *See International Audiotext Network, Inc. v. American Telephone and Telegraph Company*, 62 F.3d 69, 75 (2d Cir. 1995) (documents incorporated by reference in a complaint may be taken into consideration).

The container was loaded aboard the M/V ZIM SAVANNAH on May 4, 2007. (Curtin Decl. ¶¶ 6, 7).  It was unloaded from the M/V ZIM SAVANNAH at the port of Shekou, in Hong-Kong on May 6, 2007 for allocation reasons and loaded aboard the M/V ZIM HAIFA on May 16, 2007. (Curtin Decl. ¶¶ 8, 10).  The complaint alleges that the fire broke out aboard the M/V ZIM HAIFA which is true. (Compl. ¶¶ 10, 12 and Exs.A &C).  There are, therefore, no contradictions in Plaintiff's pleadings.

4

A court "must accept the factual allegations of the complaint as true and must draw all reasonable inference in favor of the plaintiff." *Lora v. Perez*, 2007 U.S. Dist. LEXIS 85887, *4 (S.D.N.Y., 2007); *Universidad de Las Californias v. Mayfair Advisors*, Ltd., 2007 U.S. Dist. LEXIS 66351, *5 (S.D.N.Y., 2007). This Court can infer that the container ZMU1037636 was transferred from the M/V SAVANNAH to the M/V HAIFA as a result of a regular transshipment arrangement. (Mot. Dis. page 8). Cases cited by defendants are inapposite: *Cal. Dist. Inc. v. Cadburry Schweppes Americas Beverages, Inc.,* 2007 WL 54534, at *6 (parole evidence rule bars introduction of new evidence when the contract contains an integration clause). *O'Brien v, Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y 1989) (no statement of accompanying facts was provided in the complaint in a RICO claim).

The Defendants argue that their Certificate indicated on its face the hazardous nature of the cargo, and therefore Plaintiff knew of the contents of the container. (Mot. Dis. pages 8-9). Defendants claim that the name of the product on the Certificate, "CALCIUM (OXY) CHLORIDE," is synonymous with Cal-Hypo. However, only the International Maritime Dangerous Goods Code (the "IMDG Code") applies to the transportation of hazardous materials for shipments in international waters, to the exclusion of any other hazardous regulations. (Duffy Decl. ¶¶ 7, 9). A shipper ***cannot*** declare a dangerous substance by any other name than the 'Proper Shipping Names,' as defined by the IMDG Code. (Duffy Decl. ¶¶ 13, 15). Technical names, trade names, product names, shortcut names, or business names are not permitted as a substitute by IMDG Code. (Duffy Decl. ¶ 15). "Calcium Chloride", "Hypochlorite Salt" and "Calcium(oxy) Chloride" are not Proper Shipping Names of Cal-Hypo under the IMDG Code. (Duffy Decl. ¶ 17 and Qian Decl. ¶13). *See In re M/V DG Harmony*, 394 F. Supp. 2d 649, 660-61, 672 (S.D.N.Y. 2005) (holding that identifying the cargo as "CALCIUM HYPOCHLORITE

HYDRATED CLASS 5.1 UN 2880 PACKING GROUP II IMDG PG" was insufficient to establish that the vessel owner consented to transport Cal-Hypo with full knowledge of the associated risks).

Defendants' Certificate clearly states that the substance analyzed is "not hazardous," that the substance is "not flammable" and does "not" belong to oxidizing substances. However, Cal-Hypo is a Class 5.1 (oxidizing substance) hazardous product which may lead to fire and explosion under the IMDG Code. (Duffy Decl. ¶¶ 11, 12, 18). Therefore, the Defendants must concede that if their Certificate in fact refers to Cal-Hypo, then their Certificate is false and erroneous as to the dangerous nature of the cargo.

**B.    Plaintiff's Allegations Are Sufficient To Withstand a Motion To Dismiss**

Sinochem and Huabin contend that Zim failed to allege any wrongdoing on their part, other than by conclusory allegations. According to Defendants, Zim's allegations of wrongdoing by Huabin and Sinochem, such as "Sinochem Jiangsu, through its agents Huabin, Huabang and Sinotrans," (Compl. ¶¶ 30, 31) are insufficient. However, the pleadings requirement under Fed. R. Civ. P. 8(a) is a very permissive one. *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (Rule 8(a)(2) provides (a) that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," and (b) that such a statement simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). Allegations in pleadings based on conclusions rather than facts are sufficient. *See Macleod v Cohen-Erichs Corp*., 28 F. Supp. 103 (1939, D.C.N.Y.). Here, the complaint alleges that Sinochem committed wrongdoing "through its agents Huabin, Huabang and Sinotrans". This is a short and plain statement of an alleged relationship between the different defendants, sufficient not only under

Rule 8(a), but also under Rule 9(b) as further discussed.  Therefore, Defendants' argument is without basis.

Defendants' citations are inappropriate.  In *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007), the court dismissed under the heightened standard of pleading of Rule 9(b) plaintiff's RICO claim.  In *GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359 (11th Cir. 1998), a claim for constitutional rights was drafted in a way that made it impossible to determine which factual allegations were relevant to which claim.  Such is of course not the case here. Finally, in *Furlong v. The Long Island College Hospital*, the plaintiff had not pled the existence of an agreement which was required under the Sherman Act. 710 F.2d 922 at 927 (2d Cir. 1983).

Lastly, Huabin makes the argument that it "was hired in this case as export agent" and that it "correctly identified the chemical" as "Hypochlorite Salt" pursuant to Chinese law. (*See* Mot. Dism. page 14). (Dagang Decl. ¶5 and Ex. A).  However, under Chinese law, a shipper cannot declare Cal-Hypo as "Hypochlorite Salt". (Qian Decl. ¶¶ 28-31).

## C.    Plaintiff Has Stated a Claim for Fraud

Sinochem and Huabin allege that Chinese law should govern the fraud claim by Zim. However, they fail to properly apply the eight-factor *Lauritzen* federal choice-of-law test to determine the applicable law in maritime torts: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place where the contract was made; (6) the inaccessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *See Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953); *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308-09, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970).  The fourth, fifth and sixth factors are

generally omitted from a *Lauritzen* analysis as irrelevant. *Carbotrade*, 99 F.3d at 91; *Rationis*, 426 F.3d 580, 587 (2d Cir. 2005).

Only the first factor, the place of the wrong, points to the application of Chinese law, but only for purposes of determination of the law with respect to the causes of action for negligent misrepresentation and fraud.

The second factor, "law of the flag," is Liberia.

However, the third, seventh and eighth factors weigh in favor of the application of U.S. law. Case law under the third *Lauritzen* factor has expanded the "domicile factors" to include the domicile of *all* parties involved, including cargo interests. *See Carbotrade*, 99 F.3d at 91; *Rationis*, 426 F.3d at 587-88. The injured parties include not only Zim, but also the cargo interests which have suffered damages as a result of the fire and which are the defendants in the second related matter pending before this Court (07-cv-6500). Eight out of nine cargo interests who have made a claim against Plaintiff are domiciled in the United States. (*See* Willoughby Decl. ¶¶ 5-10). Belco is also domiciled in the United States. Sinochem and Huabin are domiciled in China. (Willoughby Decl. ¶¶ 7-8). Nine parties out of thirteen are domiciled in the United States. Furthermore, unlike in *Rationis*, where the citizenship of the injured parties' factor was complicated by incomplete discovery, there are no such discovery issues in this case and a vast majority of the cargo interests are U.S. citizens. (Willoughby Decl. ¶¶ 5-10); *see Rationis*, 426 F.3d at 587-88.

The seventh *Lauritzen* factor, the law of the forum, also dictates that U.S. law apply. As Defendants have conceded, China does not recognize the causes of action for Strict Products Liability, Strict Liability for Failure to Warn and Negligent Failure to Warn, all of which Plaintiff Zim has pled in its Complaint. (Qian Decl. ¶¶ 37,38). Zim is entitled to obtain "national

treatment" and receive the benefit of access to U.S. Courts and U.S. laws under the Treaty of Friendship, Commerce and Navigation between the United States and Israel of 1954. 5 U.S.T. 550, T.I.A.S. No. 2948.

The eighth *Lauritzen* factor, the base of operations of all parties, is a determinative factor. *See Rationis*, 426 F.3d 586; *Carbotrade*, 99 F.3d at 91. In this case, the "base of operations" factor alone is substantial enough to allow for the application of American law. The term "base of operations" refers to the place where the vessel is actively managed and directed. *See In re. Ta Chi Navigation,* 462 F. Supp. 260 at 264-65[1]; *Moncada,* 491 F.2d at 472-73. *Mattes v. Nat'l Hellenic American Line, S.A.,* 427 F. Supp. 619, 624-28 (S.D.N.Y. 1977) (well-entrenched and successful business presence of the vessel and its corporate superstructure "substantial" to establish base of operations); *Hoidas v. Orion & Global Chartering Co.*, 440 F. Supp. 53, 55 n.2 & n.3 (S.D.N.Y. 1977) (shipowner's agents conferred jurisdiction through agency activities).

Furthermore, Zim is an entity incorporated under the laws of Israel and, as such, is a beneficiary of the Treaty of Friendship, Commerce and Navigation between the United States and Israel which entered into force in 1954. Article V1 of such treaty provides that:

> Nationals and companies of either Party shall be accorded <u>national treatment and most-favored-nation treatment with respect to access to the courts of justice</u> and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, <u>both in pursuit and in defense of their rights</u>. It is understood that companies of either Party not engaged in activities within the territories of the other Party shall enjoy such access therein without any requirement of registration or domestication.

---

[1] The court in *Ta Chi Navigation* held that courts may consider the location of the managing agents, the nationality of the corporate officers, the percentage of the vessel's voyages beginning in American ports, the extent of advertising or other commercial transactions, and the place where the vessel's earnings were collected and its expenses paid. The court also held that agency powers such as scheduling, booking, accounting, rate fixing, cargo solicitation, arranging repairs and overhauls, allocating tonnage, and collecting revenues are all additional factors used to determine a shipowner's "base of operations".

5 U.S. 550, T.I.A.S. No. 2948. (emphasis supplied). This provision expressly confers to Zim "national treatment" in access to U.S. courts, and the Court of Appeals for the Second Circuit has given full effect to similar provisions. *See Pollux Holding*, *Ltd. v. The Chase Mahattan Bank,* 329 F.3d 64 (2d Cir. 2003). The US-Israeli treaty affords Plaintiff a choice of the US forum with the same deference as it would afford to a US citizen.

Furthermore, Zim's subsidiary and regional agent, Zim American Integrated Services Limited ("Zim American"), is domiciled in Norfolk, Virginia. (Jones Decl. ¶¶ 3,5). Zim American issues direct orders and instructions regarding the management, operation, and control of Zim's ships in North America, the Caribbean and Central America waters. (Jones Decl. ¶¶ 9-20, 24-26). Zim American's actions includes booking cargo, negotiating contracts and rates, planning stowage, collecting freight monies, and "all of the operations related to the Americas necessary to import or export cargoes on Zim's vessels." (Jones Decl. ¶¶ 9-20, 25-27). Zim American also took supervision over the M/V ZIM HAIFA immediately after the fire broke out. (Jones Decl. ¶¶ 21-35). Zim American, as Zim's managing agent, exercised sufficient control to establish that Zim's base of operations is in the United States. Therefore, the correct *Lauritzen* choice-of-law for all Plaintiff's causes of action is the United States.

Huabin and Sinochem argue that Plaintiff cannot assert the element of causation under Chinese law necessary for claims of fraud because their cargo was placed aboard the M/V ZIM SAVANNAH, which had "nothing to do with the fire on the ZIM HAIFA." (*See* Mot. Dism. p. 12.) As previously discussed, this argument ignores the fact that Defendant's container was aboard the M/V ZIM HAIFA and determined to be the center of the explosion and fire. *See* discussion *supra* Part 1.A. Even if Chinese law applied, which it does not, the transshipment of the container would not be an issue of causation. (Qian Decl. ¶ 39). The Defendants also

contend that Plaintiff knew of the nature of the cargo.  As discussed above, this argument is baseless. *See infra* at Point 1.A.

Huabin and Sinochem also argue that Plaintiff has failed to plead with sufficient particularity a claim for fraud, except in respect to Sinotrans.  Defendants also argue that Zim does not identify any specific wrongdoer. (*See* Mot. Dism. page 13).  However, Plaintiff only needs to properly plead the elements of fraud as to one agent, in order to impute fraud to the principal. *See Aniero Concrete Co. v. New York City Construction Authority*, 1997 U.S. Dist. LEXIS 22, at *37 (S.D.N.Y. 1997) (the fraudulent statements of an agent, when made within the scope of its agency, are attributable to the principal). Here, Plaintiff pled that Sinotrans was hired as agent of Huabang, who in turn was the agent or subagent of  Huabin and Sinochem. (Compl. ¶¶ 26-29). The complaint alleges that Sinotrans placed the booking of the hazardous cargo with Plaintiff. (Compl. ¶ 28).  The documents attached to the complaint, which include the bill of lading, dock receipt and Certificate, provide the basis for fraudulent statements and omissions by the Defendants. (Compl. ¶ 30 and Exs. A, B and C).

Plaintiff's Complaint further alleges that Belco, Huabin and Sinochem have been involved in 18 prior misdeclared shipments of Cal-Hypo "to save money on the cost of transportation", as Cal-Hypo has "to be transported in refrigerated containers."(Compl.¶¶ 34-38).

Therefore, all the requirements under Rule 9(b) have been adequately pled.  *Eternity Global Master Fund Limited v. Morgan Guaranty Trust Co.*, 375 F. 3d 168, 187 (2d Cir. 2004) (under Rule 9(b), plaintiff is required to plead for a claim for fraud a) detail alleged fraudulent statements or omissions, b) identify the speaker, c) state where and when the statements (or omissions) were made, and d) explain why the statements (or omissions) were fraudulent); *see also International Motor Sports Group, Inc. v. Gordon*, 1999 U.S. Dist. LEXIS 12610 * 9-10

*10-11 and *12-13  (S.D.N.Y. 1999) (in analyzing sufficiency under Rule 9(b), the court must balance the rule with both Fed. R. Civ. P. 8(a) and 8(f), so that "a plaintiff need not plead dates, times, and places with absolute precision, *so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based*.") (emphasis added).

Alternatively, even if Plaintiff's complaint is insufficient under the Rule 9(b) particularity requirement, the complaint falls under the Rule 9(b) exception: plaintiff may "base its allegations on information and belief when 'the facts upon which plaintiff bases its fraud claim are peculiarly within the defendant's knowledge". *Concorde Funds, Inc. v. Value Line, Inc.*, 2006 U.S. Dist. LEXIS 18759, at *16, n.8 (S.D.N.Y. 2006) (citations omitted).  Sinochem and its agents were the only parties aware of the true contents of the sealed container.  Therefore, the Plaintiff has sufficiently pled a claim for fraud.

**D.    Plaintiff Has Stated a Claim for Negligent Misrepresentation**

The Plaintiff has appropriately pled a "regular" cause of action for negligent misrepresentation.[2]  As indicated in the previous section, Plaintiff need only plead the cause of action against the agent in order to impute the wrongful act to the principal. *See Reisman v. Medafrica Lines, USA*, 592 F. Supp. 50 (S.D.N.Y. 1984) (shipper held liable for misrepresentations made by freight forwarder as "agent of the shipper").

---

[2] See *Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20* (2d Cir. 2000) (Under New York law, the elements for a negligent misrepresentation  claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment).

Defendants' reference to a cause of action for negligent misrepresentation by "imparting words" (*see* Mot. Dis. page 14, fns. 6 and 7) should be disregarded, as Plaintiff did not plead such cause of action.

**E.    Plaintiff Has Properly Stated Claims for Strict Product Liability, Strict Liability for Failure to Warn, or Negligent Failure to Warn**

The choice of law analysis requires the application of U.S. law.  However, the "wrongful act" factor in the *Lauritzen* analysis has a different meaning for strict liability than for negligence or fraud.  There is no negligent act to prove in strict liability.  Therefore, the place of the "wrongful act" should be abandoned in favor of the "place of the injury," because there is a greater interest in protecting the injured parties.  The law of the place of the injury is the U.S. where most cargoes interests reside.

If Chinese law were to apply, Plaintiff concurs with Sinochem and Huabin that it would be denied all three causes of action for strict product liability, strict liability for failure to warn and negligent failure to warn. (Qian Decl. ¶¶ 37, 38, 40). (See Mot. Dism. pages 16).  However, the denial of relief as a result of the determination of the foreign law would be "fundamentally unfair" as to violate the Due Process Clause of the U.S. Constitution. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 845 (1985) ("it is nevertheless possible for a State's choice of law to violate the Constitution because it is so 'totally arbitrary or… fundamentally unfair' to a litigant that it violates the Due Process Clause"). It is also within the discretion of the Court to award Plaintiff "such other and further relief as the Court may deem just and equitable".  In these extreme circumstances where the foreign law offers no relief, the law of the forum --one of the

factors in the *Lauritzen* analysis, should be given substantial weight so to avoid injustice and unfairness. U.S. law should therefore apply.[3]

**F.    Zim's Claim For Breach of Warranty of Particulars Is Proper**

Defendants argue that COGSA does not apply because the contract of carriage does not provide for the carriage of goods to or from ports of the United States.  However, Defendants miss the point.  First, Plaintiff pled a cause of action for breach of the warranty of particulars provided under international conventions. (Compl. ¶54).  Second, Plaintiff does not contest that COGSA is not the law applicable to the contract of carriage.  Zim's bill of lading states that the cargo was being shipped from Ningbo, China to Belize City, Belize. (Compl. Ex. D).  As a consequence, the applicable law of the contract of carriage pursuant to paragraph 24(a) of Zim's Bill of Lading is the law of the State of Israel. *See* Zim's Bill of Lading, Section 24(a). (Curtin Decl., Ex. A).

However, Israel is a signatory of the Hague Convention on the Carriage of Goods by Sea Act of 1924, as amended by the Brussels Protocol of 1968 (the "Hague-Visby Rules").  The provision of the Hague-Visby Rules on the warranty of particulars, Article 3(5), is identical to the provision of the warranty of particulars under COGSA, 46 U.S.C. §30701(3)(5). (DuPont Decl. Ex. I).

COGSA "represents that enactment by Congress into domestic law of the principles governing the carriage of goods by sea contained in the Hague Rules, adopted as an international convention." *Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd.*, 2007 U.S. Dist. LEXIS 19531,

---

[3]Sinochem and Huabin argue that the claim for strict liability under U.S. law would be unavailing because Plaintiff must establish that the defect resulted in injury to the plaintiff and that it cannot because of the transshipment issue. *See above* Section I.A. and Plaintiff's response establishing that transshipment is a customary practice and in any event is irrelevant to the issue of causation.  *See also* Qian Decl. ¶ 39.

at *5, n.3 (S.D.N.Y. 2007). Therefore, Zim properly set forth the legal requirements of its cause of action for breach of warranty of particulars under the Hague-Visby Rules, the applicable law, because they are the same requirements as under COGSA.

Moreover, Zim properly pled the breach of warranty of particulars as against all Defendants, not just the named shipper in the bill of lading. The Second Circuit has held that claims brought under COGSA –which in the case of the warranty of particulars is identical to the Hague-Visby Rules – may be a "mixed tort, contract, and bailment cause of action." *Texport Oil Co. v. M/V Amolyntos*, 11 F.3d 361, 367 (2d Cir. 1993). *See also Polo Ralph Lauren L.P. v. Tropical Shipping & Construction Co.*, 215 F.3d 1217 (11th Cir. 2000) (COGSA affords one cause of action for lost or damaged goods which, depending on the underlying circumstances, may sound in either contract or tort).

Although imputing liability to the shipper's agent is not allowed under a contract theory, it is valid under a tort theory. *See Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2d Cir. 1971); *Atlantic Overseas Corp. v. Feder*, 452 F. Supp. 347 (S.D.N.Y. 1978). By examining the interrelationship among the Defendants with respect to shipping the subject cargo, this Court will find that all Defendants in this matter are liable under a negligence theory for misdeclaring the cargo and breaching the warranty of particulars under Article 3(5) of the Hague-Visby Rules.

**G.    Zim's Claim For Strict Liability Under COGSA Does Not Fail**

For the reasons discussed in the previous section, Zim's claim for strict liability is properly alleged. The laws of the State of Israel govern the contract of carriage and Israel is a signatory to the Hague-Visby Rules. Looking to Zim's complaint, while the heading specifically mentions "strict liability under COGSA § 1304(6)," plaintiff has also pled strict liability "under

international conventions, and codified in the United States under 46 U.S.C. § 1304(6)" and "under similar applicable international conventions." (Compl. ¶¶ 59, 61).

The language of the applicable sections under COGSA and the Hague-Visby Rules regarding strict liability is identical. *Compare* 46 U.S.C.S. § 30701 (4) (6) *and* Article (4) (6) of the Hague-Visby Rules. *See also Senator Linie GMBH & Co. v. Sunway Line, Inc.*, 291 F.3d 145, 153 n. 7, 154, 170 n.40 (2d Cir. 2002) (the language of COGSA § 1304(6) "derives" from Article 4(6) of the Hague-Visby Rules, and discussing the "international uniformity" of COGSA interpretation is desirable"). Therefore, there is no reason to believe that a District Court would apply differently the provisions for strict liability under COGSA § 1304(6) than under Article 4(6) of the Hague-Visby Rules.

*Compania Sudamericana de Vapores S.A., v. Sinochem Tianjin Co.*, 2007 U.S. Dist. LEXIS 24737, *7 (S.D.N.Y. Apr. 4, 2007) (quoting *Senator Linie GMBH & Co. v. Sunway Line, Inc.*, 291 F.3d 145, at 166, 169 (2d Cir. 2002)). The shipper is responsible for the consequences of shipping dangerous goods, regardless of whether or not he was aware of the dangerous nature of the goods. His "only defense is that the carrier knew or should have known of their dangerous nature." *Senator Linie GMBH & Co.*, *id.* at 154.

In *Compania Sudamericana de Vapores*, Judge Pauley held that a shipment of Cal-Hypo by Sinochem was a "dangerous and hazardous" substance triggering the application of strict liability analysis under COGSA. 2007 U.S. Dist. LEXIS 24737, *8.  In that case, Siochem also failed to properly describe the cargo of Cal-Hypo in the bill of lading as required under the IMDG code.  *See also In re M/V DG Harmony*, 394 F. Supp. 2d 649, 660-61, 672 (S.D.N.Y. 2005) (granting judgment on strict liability claim where the identification of cargo was deemed insufficient to establish that vessel owner consented to transport Cal-Hypo).

The fairness-based interpretation of strict liability under COGSA expands liability beyond the "shipper." *See In re M/V DG Harmony*, 394 F. Supp. 2d at 670-72 (addressing a strict liability COGSA claim where both the vessel and cargo interests "did not have actual or constructive pre-shipment knowledge of the true nature of the cargo or the full extent of the danger presented."). In interpreting  COGSA § 1304(6), the Court went on to state that:

> Congress did not limit liability under the section to any particular class of entities, nor did Congress impose a requirement of privity. It would make no sense to read § 1304(6) to protect only the issuer of the bill of lading. . .[i]t is the vessel and cargo owners whose property is damaged or destroyed who require protection.

*Id.* at 672. Therefore, strict liability may be imputed to all the named Defendants as well as their agents.

Finally, in their motion, Defendants cite *Skibs A/S Gylfe v. Hyman-Michaels Co.*, 304 F. Supp. 1204, 1221 (E.D. Mich. 1969) for the proposition that there is no strict liability violation of COGSA where the carrier is aware of the hazard presented by the cargo prior to loading.  Our case is clearly distinguishable since the facts show that plaintiff had no knowledge, actual or constructive, that it was shipping Cal-Hypo.   For the same reasons, this case is also distinguishable from *Contship Containerlines, Ltd. v. PPG Industries, Inc.*, 443 F.3d 74 (2d Cir. 2006).

## POINT II

### ZIM IS ENTITLED TO ITS CHOICE
### OF FORUM ABSENT A STRONG SHOWING
### OF INCONVENIENCE BY DEFENDANTS

Any consideration of a motion to dismiss on the basis of *forum non conveniens* must begin from the assumption that the plaintiff is entitled to its chosen forum, unless the moving defendants meet their burden of demonstrating that the forum is inconvenient.  *Iragorri v. United*

*Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Courts should give deference to a plaintiff's choice of forum.

Sinochem and Nanjing Huabin are the only two defendants which have moved to have this action dismissed on the grounds of *forum non conveniens*. None of the other parties appearing in the action or in the related action (07 Civ. 6500) have joined in the *forum non conveniens* motion. Given the fact that there are parties to both actions which have not moved for dismissal on *forum non conveniens* grounds, any concession to the moving parties will result in the splintering of this litigation with no corresponding savings of judicial economy.

**A.      A Case-by-Case Analysis:**

The Supreme Court and the Second Circuit have laid-down a sliding scale test to determine whether a motion to dismiss an action for *forum non conveniens*. *Gulf Oil Corp. v. Gilbert*, 330 US. 501 (1974); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). The test is made up of three parts, first the Court must determine the deference to be given to the plaintiff's choice of forum; second, the defendant seeking dismissal must establish that there is an adequate alternative forum; and third, the Court must balance the private and public interests implicated in the choice of forum. *Norex Petro. v. Access Industries,* 416 F.3d 146, 153 (2d Cir. 2005).

**1.      Zim's choice of forum should be given deference:**

There is initially "a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981). It is generally understood that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508. Courts recognize, however, that "the degree of deference given to a plaintiff's forum choice [can depend upon] the

circumstances." *Iragorri v. United Techs. Corp.,* 274 F.3d at 71. Courts give the greatest deference to a plaintiff's choice of its home forum. *See Id.*; accord *Piper Aircraft Co. v. Reyno,* 454 U.S. at 255-56; *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947), while "less deference" is afforded a foreign plaintiff's choice of a United States forum, *Iragorri v. United Techs. Corp.,* 274 F.3d at 71.

While Zim is an Israeli company, within the context of this case, the Court should give Zim's choice of forum greater deference because there are legitimate reasons for Zim's choice of this forum. *Bigio v. The Coca Cola Co.,* 448 F.3d 176, 179 (2d Cir. 2006):

- The m/v ZIM HAIFA was under the operational control of Zim's U.S. agent, Zim-American Integrated Shipping Services, Inc., which is located in Norfolk, Virginia, which was responsible for Zim's response to the explosion and attempts to save the crew, vessel and cargo. Zim-American also arranged for all experts which responded to the vessel as well as all surveyors who inspected the vessel and damaged cargo. The only sample of the cargo which exploded and which is hazardous to move is located in the U.S. The Southern District of New York is Zim's chosen forum, as provided for in its bill of lading contract, for venue in any litigation in the U.S. (Jones Decl. ¶¶ 26-31, 30, 33-36, 45 and Curtin Decl. Ex. A)

- The m/v ZIM HAIFA was bound for U.S. ports on the voyage during which the explosion occurred. While the Sinochem cargo was not bound for the U.S., all of the cargo that was damaged on board the vessel [with the exception of one] are U.S. entities. Nearly half of the cargo damaged on board the vessel was bound for the U.S. All surveyors hired by those U.S. cargo owners/insurers are located in the U.S. All of the evidence collected by the surveyors documenting the damage to cargo and containers is located in the U.S. Cargo interests have indicated that they will be bringing suit against Zim in the U.S. (Jones Decl. ¶¶ 23 and Willoughby Decl. ¶¶ 5, 12-14, 16, 19).

- The purchaser of the cargo that exploded is located in the U.S. and not amenable to suit in China. With the exception of Sinochem and Huabin, the other Chinese defendants are satisfied with the present forum. To the extent that witnesses are located in Panama, it is much easier and economical to travel to New York than it is to travel to China. The vast majority of the documents involved in this case are in English and will require to be translated into Chinese should this case be dismissed in favor of the Chinese forum. (Jones Decl. ¶¶ 42-44 and Qian Decl. ¶ 11).

As the foregoing list shows, there is no element of "forum shopping" associated with Zim's choice of this Court for the present law suit. The Southern District of New York is Zim's

regular and preferred forum for litigation [as shown by its bill of lading jurisdiction clause] and it is the most convenient forum for all of the parties concerned in this action.  To a great extent, it is even convenient for Sinochem and Huabin, both of which participate in the global economy and should be accustomed to litigation in the U.S.; especially Sinochem which regularly avails itself of the benefits of the U.S. judicial system.

Sinochem's commercial website states that it has  established "close and sound partnerships with customers from … <u>America</u>…". (DuPont Decl. ¶5).  It has three sister or related companies located in Houston, Texas, and New York, one of which is Sinochem (U.S.A.), Inc.  Sinochem (USA), Inc. describes itself as the "backbone trading subsidiary of the Sinochem Corporation in the U.S." and "the seamless supply channel between Chinese producers and US end users". (DuPont Decl. ¶ 7, 11).  Sinochem (U.S.A.), Inc. is an entity incorporated under the laws of New York and its Chairman, Mr. Gu Limnin, is none other than Defendant Sinochem's current president who directed the U.S. entity for four years. (DuPont Decl. ¶ 8-10).  One fails to see how there would be any inconvenience, let alone hardship, for Sinochem's president, Mr. Gu Limnin, or his  employees, to testify in a United States court.  Moreover, Sinochem previously made itself  available to the U.S. Courts in a case involving a similar shipment of hazardous chemicals. *Compania Sudamericana de Vapores, S.A. v. Sinochem Tianjin Co.,* 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. 2007).

**2.    China is not an adequate alternative forum:**

China is not a satisfactory alternate forum for the adjudication of this matter because it would render Zim's claims time barred after one year from the date of the explosion. (Qian Decl. ¶ 7). There can be no extension of that time period. (Qian Decl. ¶ 8)  It would be next to impossible for Zim to abandon the U.S. litigation and scramble to assemble a new legal team and

lawsuit in China.  At the very least, the time needed to translate the thousands of pages of exhibits from English to Chinese, as required by any Chinese court, would extend past the one year time bar. (Qian Decl. ¶ 22).

Moreover, as a plaintiff, Zim may only bring an action against all of the Chinese parties before one court in China, the Ningbo Maritime Court. (Qian Decl. ¶¶ 5, 6).  Chinese Courts might not have jurisdiction over Belco. (Qian Decl. ¶ 11). Plaintiff's action seeking damages based on the false declaration of a cargo by the defendants would be an action in contract against the shipper, and would exclude any additional causes of action in civil law, including tort. (Qian Decl. ¶ 10).

The Chinese forum presents a "fundamental obstacle" to Zim's recovery and is therefore clearly an unsatisfactory alternate forum.  *See Morris Zweig v. National Mortgage Bank of Greece*, 1993 US Dist. LEXIS 8460, *28 (S.D. N.Y. 1993) (alternative forum adequate only if it provides a similar cause of action.); *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1076 (S.D.N.Y. 1992, aff'd, 990 F.2d 71 (2d Cir. 1993).

Through their own moving papers, Sinochem and Huabin have made it abundantly clear that Chinese law does not recognize Zim's cause of action for strict liability for failure to warn and negligent failure to warn. (Chen Decl. ¶9).  In addition, Zim's cause of action for strict product liability could not succeed in China because Chinese law does not recognize the failure to declare the existence of a defect in the product as giving rise to a strict product liability claim. (Qian Decl. ¶ 38).  Furthermore, a party may not claim punitive damages under Chinese law. (Qian Decl. ¶ 40).  The Ningbo Maritime Court would exclude any tort causes of action, such as negligent misrepresentation and fraud. (Qian Decl. ¶ 10).  In short, no remedy would be left for Zim in China against the Defendants.  This would certainly constitute a "fundamental obstacle"

to Zim's recovery and demonstrates the inadequacy of China as an alternate forum.[4] *See PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 74 (2d Cir. 1998) (alternative forum does not need to propose identical causes of action as long as causes of action available in that forum adequately address the underlying controversy); *Joseph P. Lasala v. UBS, AG*, 510 F.Supp.2d 213 (S.D.N.Y. 2007).  By granting the motion the Court would foreclose Zim's ability to assert most of its claims, including all of the tort claims, against Sinochem and Huabin**.**

>    **3.**       **The Gilbert private factors do not support dismissal:**

Should the Court find that there is an adequate alternative foreign forum, the Court must then balance the convenience of the parties and witnesses, based upon certain private and public factors.  The requisite private factors are:

>    (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) issues concerning the enforceability of a judgment; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive -- or the opposite.

*Gulf Oil Corp. v. Gilbert*, 330 US. 501, 508 (1947)

As already set forth in Section 1, *infra.,* Zim's choice of the present forum should be given great deference because there are overwhelming reasons why the Southern District of New York was chosen, and why it provides a convenient forum.  If the Court were to grant this motion, it would bifurcate the litigation, at least double the cost of the litigation, and inconvenience the injured parties, including the American cargo interests whose goods were damaged on board the vessel.

---

[4] Additionally, Chinese Courts do not seem to offer adequate "Procedural Safeguards". See Qian Decl. ¶¶ 13-16, 18-20, 22.

4.    **The Gilbert public interests favor retention of this matter:**

The *Gilbert* court also set-out a series of "public interests" which should be considered in

a motion for dismissal on *forum non conveniens* grounds:

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gilbert,* 330 U.S. at 508-509.

Despite the efforts by Sinochem and Huabin to obscure the issues, there is no basis for

this case to be dismissed in favor of the proposed Chinese forum. Even if this Court were to

dismiss this action, U.S. cargo interests would still maintain their suits in this Court against Zim

and Belco.

All nations have an interest in the safety of goods in transit and the transportation system.

The U.S. has as much of an interest in adjudicating this matter as any other country.

The burden is on the moving parties to establish that "trial in the chosen forum would

establish...oppressiveness and vexation to a defendant...out of proportion to the plaintiff's

convenience." *Sinochem International Co., Ltd., v. Malaysia Int'l Shipping Corp.,* 127 S.Ct.

1184, 1190; 167 L.Ed.2d 15 (2007)(Not officially reported). The moving parties have failed

in this regard and their motion should be denied.

### POINT III

### OPPOSITION TO DEFENDANT BELCO'S MOTION TO VACATE
### THE RULE B ATTACHMENT PURSUANT TO RULE (E)(4)(f)

Zim respectfully submits this Memorandum of Law in opposition to the motion of Defendant Belco to vacate Zim's Rule B attachment.

Defendant Belco cites repeatedly to the Second Circuit's ruling in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434 (2d Cir. 2006) in support of its motion to vacate Plaintiff's Rule B attachment under Supp. R. Certain Adm. & Mar. Claim E(4)(f).

Belco argues that "vacatur *is warranted* when the defendant can show that it would be subject to *in personam* jurisdiction *convenient* to Plaintiff". (Mot. Dism. p. 28). (emph. add.).

In *Aqua Stoli,* however, the Second Court ruled that the concept of "convenience" is a narrowly circumscribed one: "a district court <u>may</u> vacate a maritime attachment only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one which the attachment proceedings were brought". *Id.* at 444. The Court clearly had in mind only the "across the river" situation contemplated in *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.,* 341 F.2d 50, 52-53 (2d Cir. 1965), where the plaintiff attached assets of the defendant in the Eastern District, whereas the defendant was in fact located in the Southern District. The Second Circuit made a point of stating:

> It is less clear to us that a district court could vacate an attachment on *convenience grounds where the adjacent district is more remote* and therefore less obviously "convenient" to the plaintiff.

*Aqua Stoli, id.* at 444. (emphasis added). Here, Plaintiff attached assets of Belco in the Southern District of New York. Belco is located in North Carolina. North Carolina is obviously not an adjacent district. Therefore, Defendant Belco's argument falls short of the narrow definition of "convenience" as set forth by the Court in *Aqua Stoli*.

Defendant Belco also cites to *Aqua Stoli* for the proposition that "a maritime attachment is properly vacated if the plaintiff and defendant are both present in the same district to attach the defendant's assets". (Mot. Dism. pp. 28-29) (emphasis added).   Belco is present in North Carolina.  It alleges that Zim has "an office in North Carolina where it operates a liner service, and is subject to *in personam* jurisdiction in North Carolina." (Mot. Dism. page 29). However, Belco's allegations are merely conclusory and are not supported by any facts or declarations.  On this basis alone, the motion to vacate should be denied.

The Court of Appeals in *Aqua Stoli* made it clear that the only "limited circumstances" under which a district court "may" vacate an attachment under Rule B:

> While, as we have noted, the exact scope of a district's court *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction, 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Aqua Stoli, Id.* at 445. (emphasis supplied). Under the second ground for *vacatur*, Belco must meet the two-prong test of establishing that plaintiff Zim is "found within the district" under Supp. R. Certain Adm. & Mar. Claim B. *See Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers Gmbh &Co. Kg*, 409 F, Supp. 2d 427 (S.D.N.Y., 2006) (citing *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963)).  Belco must first prove that Zim can be found within the district of North Carolina in terms of jurisdiction, and second, if so, that Zim can be found for purposes of service of process in North Carolina.  Belco fails on each part of this test.

First, Belco would have to establish that Zim has "sufficient contacts with the district to meet minimum due process standards". *Aqua Stoli, id*. at 432 (citing *Winter Storm*, 310 F.3d at

268). Defendant Belco may either assert "general jurisdiction" –where the plaintiff's contacts with the state are "continuous and systematic"—or "specific jurisdiction" –that is a jurisdiction over a claim arising out the very contacts at issue. *Erne Shipping, id.* at 433.

Here, there is nothing "continuous and systematic". Zim is located in Haifa, Israel. (Compl. ¶3). It has no presence in North Carolina. (Jones Decl. ¶48). Zim has no offices, no employees, no phone listing, no property in North Carolina. (Jones Decl. ¶¶ 50, 51, 53). It does not advertise in North Carolina. (Jones Decl. ¶52). Zim has not had any vessels calling at the port of Wilmington, North Carolina, for nearly a year. (Jones Decl. ¶49). Zim had only a contractual relationship with an independent contractor, Wilmington Shipping Co., in Wilmington, North Carolina, which ended in April 2007 (Jones Decl. ¶54).

Moreover, Zim's claims against Belco do not arise out of any contact with North Carolina. The cargo under bill of lading no. ZIMUNGB670904 did not originate from, nor was it booked in, or destined to North Carolina.

Lastly, Belco claims, without any support, that it can serve process on Zim in North Carolina. In fact, the independent contractor that was used by Zim in North Carolina does not have any authority to accept service of process for Zim. (Jones Decl. ¶55).

Defendant Belco failed to establish that "plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located." *Aqua Stoli, id*. at 445.

## CONCLUSION

For all the foregoing reasons, Defendants Sinochem and Nanjing Huabin's motion to dismiss with prejudice Counts II through IX of the Second Amended Complaint and vacate the Rule B attachment, as well as Defendant Belco's motion to vacate the Rule B attachment, should all be denied.

26

Dated:  New York, New York
        January 11, 2008

                                       **DEORCHIS & PARTNERS, LLP**
                                       Attorneys for Plaintiff


                                       By:____/s/___Vincent M. DeOrchis_____
                                          Vincent M. DeOrchis (VMD-6515)
                                          61 Broadway, 26th Floor
                                          New York, New York  10006-2802
                                          (212) 344-4700
                                          Our File:  1236-689