UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ZIM INTEGRATED SHIPPING SERVICES, LTD.,

                              Plaintiff,

                              07 CIV 5861 (RMB)
– v. –

                              (Electronically Filed)

BELCO RESOURCES, INC., SINOCHEM JIANGSU
CORPORATION (FORMERLY KNOWN AS SINOCHEM
JIANGSU IMPORT & EXPORT CORPORATION), NANJING
HUABIN FOREIGN TRADE & ECONOMICS CO., LTD.,
DRAGONTRANS SHIPPING LTD., d/b/a HUABANG
INTERNATIONAL, INC., SINOTRANS NINGBO
INTERNATIONAL FORWARDING AGENCY CO., LTD.,
JOHN DOE 1-10,

                              Defendants.

------------------------------------------------------------X

**REPLY DECLARATION OF HILLEL I. PARNESS IN FURTHER
SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS WITH PREJUDICE THE
SECOND AMENDED COMPLAINT AND TO VACATE THE RULE B ATTACHMENT**

I, **HILLEL I. PARNESS**, hereby declare under penalty of perjury as follows:

    1.    I am Of Counsel to Lovells LLP, counsel to Defendant Sinochem Jiangsu Corporation ("Sinochem Jiangsu") in the above-captioned matter, and I submit this Reply Declaration in Further Support of Defendants' Joint Motion to Dismiss with Prejudice the Second Amended Complaint and to Vacate the Rule B Attachment. I am a member in good standing of the Bars of the State of New York and of this Court.

    2.    I make this Reply Declaration based upon my own knowledge and that of my firm by virtue of our work on behalf of Sinochem Jiangsu. Many of the facts described herein and

data underlying the calculations herein are by their nature part of the public record and were obtained via certain public access sites available to all users of the world-wide web.

3. A copy of the Court's decision in *Universidad De Las Californias, S.C. v. Mayfair Advisors, Ltd.*, No. 06-05859 (RMB) (S.D.N.Y. April 11, 2007), is attached hereto as Exhibit A. It is referenced in a later published decision, *Universidad De Las Californias, S.C. v. Mayfair Advisors, Ltd.*, No. 06 Civ. 5859 (RMB), 2007 U.S. Dist. LEXIS 66351 (S.D.N.Y. Sep. 7, 2007), which was cited by Zim in support of its opposition (Pl. Br. 5).

4. Zim states that the non-party cargo interests are "overwhelmingly located in the U.S." (Pl. Br. 2.) In fact, based on my firm's review of publicly-available information and Zim's complaint in a separate matter, only two shippers (or less than 3%) appear to be based in the U.S. (and only one in New York) and only twenty consignees (or about 27%) appear to be based in the U.S. or Puerto Rico (and only two in New York). The majority of shippers (47, or about 64%) are from China (with others located in Hong Kong, Indonesia, and Taiwan) and the bulk of consignees (44, or about 60%) are from the Caribbean and Central and South America. (*See* Compl. in Case No. 07 Civ. 6500, Ex. 1.) These figures take into account Zim's voluntary dismissal, by notice dated November 28, 2007, of 24 former defendant cargo interests.

5. In Paragraph 5 of his declaration in opposition to the present motion, Olivier D.L. DuPont, one of Zim's lawyers, says, "Sinochem advertises on a commercial website that they [sic] have established 'close and sound partnerships with customers from ... America ....'" That is a decidedly incomplete presentation of the original statement. The full text of the statement on Sinochem Jiangsu's website states: "At present, it has established close and sound partnerships with customers from Europe, America, Japan, Australia and some other developed countries, and it has also established contacts with those from Korea, South Africa and the Middle East. Based

on the current situation, South Africa and East Europe market will be explored in an active way." (DuPont Decl., Ex. A.) Furthermore, the word "America" appears to refer to both North and South America.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2008
New York, New York

_____
Hillel I. Parness

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNIVERSIDAD DE LAS CALIFORNIAS, S.C., :
:
                Plaintiff, :
:
-against- :
:    06 Civ. 5859 (RMB)
MAYFAIR ADVISORS, LTD., MARK :
KINGSBURY GUMBEL a/k/a MARK :
GUMBEL KINGSBURY a/k/a MARK :    **ORDER**
GUMBEL, D. ANDREW MARSHALL :
a/k/a DARRELL ANDREW MARSHALL, :
SIMON KING, PETER RUDMAN, and :
JOHN DOES 1-100, :
:
                Defendants. :
---------------------------------------------------------------

### I.   Introduction

On August 2, 2006, Universidad De Las Californias, S.C. ("Plaintiff"), a Mexican university, filed a complaint ("Complaint") against Mayfair Advisors, Ltd. ("Mayfair"), Mark Kingsbury Gumbel a/k/a Mark Gumbel Kingsbury a/k/a Mark Gumbel ("Gumbel"), D. Andrew Marshall a/k/a Darrell Andrew Marshall ("Marshall"), Simon King ("King"), Peter Rudman ("Rudman"), and "John Does 1 through 100" (together, "Defendants"), alleging that Defendants unlawfully failed to arrange a loan of $5 million to Plaintiff and that Defendants have refused to fund the loan or to return the $75,000 escrow amount paid by Plaintiff. (Compl. ¶¶ 1-9.) Plaintiff asserted claims for fraud ("Fraud Claim"), conspiracy to commit fraud ("Conspiracy Claim"), unfair business practices under New York General Business Law ("G.B.L.") § 349 ("Unfair Business Practices Claim"), mail fraud and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO Claim"), unjust enrichment ("Unjust Enrichment Claim"), intentional interference with contractual relations

("Intentional Interference Claim"), negligent misrepresentation ("Negligent Misrepresentation Claim"), and breach of contract ("Breach of Contract Claim").[1] (Compl. ¶¶ 27-66.)

In a letter to the Court, dated September 20, 2006, Defendant Gumbel requested a pre-motion conference relating to a proposed motion to dismiss the complaint under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), arguing in significant detail that, among other things, the Fraud Claim "fails to specify any misrepresentation of existing fact made by defendants, and instead alleges [fraud] only in conclusory fashion . . . ." (Gumbel's Letter to the Court, dated Sept. 20, 2006.) At the ensuing conference with the Court, Plaintiff was given the opportunity to amend its Complaint prior to any motion practice, on the understanding that if Plaintiff did amend and the motion were successful, Plaintiff would not amend again. (See Case Management Plan, dated Nov. 6, 2006 ("Pl[aintiff] may consider amending before the motion process begins: that way motion practice can be 'final.'").) On December 19, 2006, Plaintiff filed an amended complaint ("Amended Complaint"), presumably in response to Defendants' letter of September 20, 2006.[2]

On February 16, 2007, Gumbel filed a motion under Rules 9(b) and 12(b)(6) to dismiss all claims in the Amended Complaint except the Breach of Contract Claim. (Gumbel Memorandum of Law, dated Feb. 16, 2007 ("Def. Mem.").) On February 16, 2007, and February 21, 2007, respectively, Mayfair and Marshall filed papers seeking to join in Gumbel's motion to dismiss (but did not submit supporting memoranda of law). (Mayfair Notice of Motion, dated

---

[1] All claims are alleged against all Defendants, except the Breach of Contract Claim, which is alleged against all Defendants other than Gumbel. (Compl. ¶¶ 59-66.)

[2] Among other things, the Amended Complaint revised the Conspiracy Claim to include a claim for aiding and abetting fraud ("Aiding and Abetting and Conspiracy Claim").

Feb. 16, 2007; Marshall's Letter to the Court, dated Feb. 21, 2007.) King and Rudman filed no motion papers. On March 16, 2007, Plaintiff opposed Defendants' motion to dismiss (Plaintiff's Memorandum of Law, dated March 16, 2007 ("Pl. Mem.")), and on March 30, 2007, Defendants filed a Reply Memorandum of Law ("Def. Reply"). The Court heard oral argument on April 5, 2007.

**For the reasons set forth below, Defendants' motion to dismiss is granted, and all claims other than the Breach of Contract Claim are dismissed with prejudice.**

## II.  Background

The Court treats the following allegations in the Amended Complaint as true for the purposes of this motion. See, e.g., Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

Some time in 2005, Plaintiff "began searching for financing to assist it in purchasing improved campus facilities" in the form of a "high rise building" located in Tijuana, Mexico ("Tijuana Building"). (Am. Compl. ¶¶ 8-9.) A "licensed loan broker" located in Texas named Felix Guerrero ("Guerrero") "began actively searching on behalf of Plaintiff . . . for sources of financing to fund the proposed purchase" in the amount of approximately $5 million. (Am. Compl. ¶ 9.) In April or May of 2005, Guerrero was introduced to Mayfair, whose "exclusive representative," Gumbel, "falsely represented that [Mayfair] was an 'investment banking consultancy and investment procurement commitment firm' in the business of assisting businesses 'in arranging directly through a banking, insurance, corporate firm or private institution of [Defendant Mayfair's] choice' to obtain funding of business projects." (Am. Compl. ¶ 10.) Gumbel also "falsely represented" that he "was the exclusive agent for . . . Goldberg Funding Group ['Goldberg'], an alleged subsidiary of Lloyds TSB (Offshore) Limited, and

-3-

Barclays Capital Markets, LLC ['Barclays'], which he further falsely represented were funding institutions." (Am. Compl. ¶ 10; see also id. ¶ 11 (Defendants King and Rudman also "claimed to be affiliated with" Mayfair, Goldberg, and Barclays).) Mayfair, Gumbel, King, and Rudman all "falsely represented to [Plaintiff through] Felix Guerrero in early to mid 2005 that they were working together to provide Plaintiff . . . [with] the financing . . . to purchase" the Tijuana Building. (Am. Compl. ¶ 11.)

On May 2, 2005, Plaintiff entered into a written agreement ("Agreement") with Mayfair which "falsely provided" that "within 20 days of the execution of the Agreement, [Mayfair] would negotiate with its investment resources a loan arrangement to be expressed in a Letter Of Offer to procure for Plaintiff a bank funding commitment to finance Plaintiff['s] purchase of the" Tijuana Building. (Am. Compl. ¶¶ 12-13.) On June 9, 2005, Mayfair presented to Plaintiff a written "Letter Of Offer" which "falsely provide[d]" (among other things) that the "Funding Group" had "approved [Plaintiff's $5 million] loan request" ("Loan").[3] (Am. Compl. ¶¶ 14-17.) However, before the Loan funds could be disbursed to Plaintiff, the Letter of Offer required Plaintiff to deliver $75,000 into an escrow account located in New York ("Escrow Account") to guarantee the Loan against default. (Am. Compl. ¶ 14.) The Escrow Account was to have been controlled by Defendant Marshall, an attorney, pursuant to a written escrow agreement of unknown date ("Escrow Agreement"). (Am. Compl. ¶ 14.)

On August 5, 2005, Plaintiff wire-transferred $75,000 to the Escrow Account. (Am. Compl. ¶ 19.) On or about August 17, 2005, Mayfair, King and Rudman issued an executed "Funding Commitment" which "falsely and absolutely guarantee[d] the funding of the

---

[3] It is unclear whether the "Funding Group" referenced in Amended Complaint ¶¶ 14-15 is the same entity as the "Goldberg Funding Group" referenced in Amended Complaint ¶ 10.

$5,000,000.00 loan to Plaintiff . . . within 20 banking days thereof." (Am. Compl. ¶ 21.) Since that date, however, Defendants "have failed and refused to fund the loan as promised . . . despite several repeated demands." (Am. Compl. ¶¶ 22-23.) And, Marshall has disbursed the escrowed $75,000 to Mayfair in violation of the Escrow Agreement, "which requires that such disbursement occur only upon receipt by Plaintiff . . . of payment of the loan funds . . . ." (Am. Compl. ¶ 22.)

Also, "[a]s a result of not receiving the loan proceeds as promised by defendants, Plaintiff . . . has not been able to purchase the [Tijuana Building] and stands to lose" a $100,000 "nonrefundable deposit" that it paid to the Tijuana Building's seller under a purchase agreement, dated August 30, 2005 ("Mexican Purchase Agreement"). (Am. Compl. ¶ 24.) "At all times, defendants . . . were aware of the prospect of this contractual relationship which Plaintiff . . . intended to consummate with the seller" of the Tijuana Building. (Am. Compl. ¶ 24; see id. ("As a result of not receiving the loan proceeds . . . Plaintiff . . . stands to lose the $100,000 deposit . . . .").)

"[A]t least two other separate entities/persons, unrelated to Plaintiff . . . have been victims of the exact same fraudulent scheme of defendants" involving "the same form documentation containing the same false representations." (Am. Compl. ¶ 25.) In 2005, "a group described as Grupe Tochipan" lost $75,000 that it wire-transferred to an escrow account controlled by Marshall in connection with a promised loan of $5,500,000. (Am. Compl. ¶ 25.) In 2005, Hiroshi Fujimura Taira "d.b.a. Rancho El Camaron" lost $38,000 that he wire-transferred to an escrow account controlled by Marshall in connection with a promised loan of $1,050,000. (Am. Compl. ¶ 26.)

### III. Legal Standard

"Plaintiffs' claims may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only if 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of his claim which would entitle him to relief.'" Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635, 2003 WL 1961636, at *4 (S.D.N.Y. April 25, 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor." Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 229 (S.D.N.Y. 2000). "A claim for common law fraud brought under New York law must also satisfy the particularity requirements of Rule 9(b)." Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006).

### IV. Analysis

#### A. Fraud Claim

Defendants argue that the Fraud Claim should be dismissed because, among other reasons: the Amended Complaint makes only "vague references" to the dates upon which Defendants are alleged to have made fraudulent statements (Def. Mem. at 3); "plaintiff does not explain why any alleged false statements it attributes to [Defendants] are . . . false or misleading" (id. at 3-4); and "at best the . . . Complaint attempts to allege an intention on the part of the defendants not to perform a contract at the time it was made, and does not state a claim for fraud," as such a (fraud) claim "must allege 'a representation of present fact, not of future intent'" (id. at 4 (citations omitted)).

Plaintiff counters that, among other things: the Amended Complaint does not "merely assert[] that defendants simply had no intention of performing under the terms of the" various

-6-

written contracts. (Pl. Mem. at 6.) Rather, the Amended Complaint "alleges why the statements were false, that is, defendants never had any intention of making any loans; instead they made false promises of approved loans and the fictitious need for fees to guarantee these fictitious loans as part of an elaborate scam to defraud unsuspecting persons and entities, including Plaintiff." (Id.)

"As a general rule, the failure to perform a contractual promise gives rise to a cause of action for breach, not fraud." Carruthers v. Flaum, 450 F. Supp. 2d 288, 315 (S.D.N.Y. 2006). When a fraud claim is grounded in allegations involving breach of contractual duties, a plaintiff must establish one of the following to sustain a claim sounding in fraud:

> (i) . . . a legal duty separate from the duty to perform under the contract . . . ; or (ii) . . . a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) . . . special damages that are caused by the misrepresentation and unrecoverable as contract damages . . . .

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted). "New York courts hold that a misrepresentation regarding present facts, as opposed to one reflecting an intent to perform in the future, is collateral to the contract." Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 342 (S.D.N.Y. 2005). Allegations of fraud must also be pleaded with particularity pursuant to Fed.R.Civ.P. 9(b), which requires Plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). "Additionally, where multiple Defendants are alleged to have committed fraud, the Complaint must 'allege specifically the fraud perpetrated by each defendant.'" Simon v. Castello, 172 F.R.D. 103, 105 (S.D.N.Y. 1997) (citation omitted).

Assuming, arguendo, that Plaintiff has alleged misrepresentations of "present facts" (in addition to failure to perform contractual promises), the Amended Complaint fails to satisfy the particularity requirements of Rule 9(b), for three reasons. First, the Amended Complaint fails to "state where and when the [oral] statements were made." Mills, 12 F.3d at 1175. Second, the Amended Complaint fails to "explain why the statements were fraudulent." Id.; see McStay v. I.C. System, Inc., 174 F. Supp.2d 42, 48 (S.D.N.Y. 2001) (Plaintiff's allegations "do not fulfill the requirements of Rule 9(b) . . . because they fail to allege particularized facts as to how [defendants'] statements were false or misleading."), aff'd on other grounds, 308 F.3d 188 (2d Cir. 2002). Third, the Amended Complaint fails to "allege with particularity that [Plaintiff] reasonably relied on the alleged misrepresentations." Bezuszka v. L.A. Models, Inc., 2006 WL 770526, at *13 (S.D.N.Y. March 24, 2006); accord Bank of America Corp. v. Lemgruber, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) ("As an essential element of a cause of action for fraud, . . . [justifiable] reliance must be pleaded with particularity . . . ."); see Spencer Trask Software and Information Services LLC v. RPost Intern., 383 F. Supp. 2d 428, 455 (S.D.N.Y. 2003) ("plaintiffs must allege . . . 'transaction causation, i.e. that but for the fraudulent statement or omission, the plaintiff would not have entered into the transaction'"); see also AUSA Life Ins. Co. v. Ernst and Young, 206 F.3d 202, 209 (2d Cir. 2000) ("Transaction causation has been analogized to reliance.").

Accordingly, Plaintiff's Fraud Claim is dismissed.[4]

---

[4] The fraud claims are dismissed as to all Defendants. See Quinn v. Shirey, 293 F.3d 315, 325 n.4 (6th Cir. 2002) (although one defendant "failed to join" in motion to dismiss, the "complaint was properly dismissed as to all [d]efendants" because "plaintiff had opportunity to fully address arguments that applied equally to [all] defendants").

### B.   Aiding and Abetting and Conspiracy Claim

Defendants argue that Plaintiff's Aiding and Abetting and Conspiracy Claim is "legally insufficient" because "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." (Def. Mem. at 5.) Plaintiff counters that the Amended Complaint properly alleges that "all the defendants knew of material facts constituting the fraud and provided substantial assistance to advance the commission of the fraud." (Pl. Mem. at 7.)

"To establish liability for aiding and abetting fraud, the plaintiffs must show . . . the existence of a fraud," among other things, and Plaintiff has failed to do so here for the reasons set forth in Section IV.A, supra. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted). And, under New York law, no independent "cause of action lies for civil conspiracy." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 591 (2d Cir. 2005). "A claim of conspiracy 'cannot stand alone' and must be dismissed if the underlying independent tort has not been adequately pleaded." Filler v. Hanvit Bank, 156 Fed. Appx. 413, 418 (2d Cir. 2005) (citations omitted).

### C.   Unfair Business Practices Claim

Defendants argue that the Unfair Business Practices Claim should be dismissed because, among other reasons: G.B.L. § 349 "is inapplicable to 'business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role'"; "the statute is 'inapplicable to commercial loan transactions'"; and "[t]he statute also requires threshold allegations, absent here, that the defendant's practices have a 'broad impact on consumers at large.'" (Def. Mem. at 6 (citations omitted).)

Plaintiff counters that, among other things: the Amended Complaint alleges that "the

loan scam . . . was directed not only to the Plaintiff . . . but also to other members of the public, including individual consumers" such as Hiroshi Fujimura Taira "d.b.a. Rancho El Camaron" (Pl. Mem. at 7-8); Plaintiffs "'need not show the defendant committed the complained-of acts repeatedly, either to the same plaintiff or to other consumers -- but instead must demonstrate that the acts or practices have a broader impact on consumers at large'" (id. at 8 (citation omitted)); and "Mayfair represented that it provided not only commercial financing, but also residential investment financing" (id.).

Section 349(a) of the New York General Business Law forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." N.Y.G.B.L. § 349(a) (McKinney 2006). "A plaintiff must not only allege that the defendants engaged in deceptive acts or practices, but also that the conduct was consumer oriented." Highlands Ins. Co. v. PRG Brokerage, Inc., 2004 WL 35439, at *9 (S.D.N.Y. Jan. 6, 2004). "'[P]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute.'" New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995) (citation omitted). And, the statute "is not applicable to commercial loan transactions," such as those alleged here. Goodhue v. Jock, 888 F. Supp. 358, 364 (N.D.N.Y. 1995) (collecting cases). Accordingly, the Unfair Business Practices Claim is dismissed.

### D.   RICO Claim

Defendants argue that the RICO Claim should be dismissed because, among other reasons: the Amended Complaint "fails to allege competently that . . . any defendant . . . committed the requisite 'predicate acts' to impose liability for racketeering" (Def. Mem. at 7); the Amended Complaint "fails to state the date or dates of the calls . . . allegedly made, the contents

of each misrepresentation therein, or the respects in which the [false] representations were allegedly made" (id. at 8); and the Amended Complaint also fails "to demonstrate a pattern of racketeering activity," i.e., either a "closed-ended pattern" or an "open-ended pattern" (id. at 8-9).

Plaintiff counters that, among other things: the Amended Complaint "alleges the predicate acts of defendants in detail," including that "at least two other separate entities/persons, unrelated to Plaintiff . . . , have been victims of the exact same fraudulent scheme of defendants" (Pl. Mem. at 8-9); the Amended Complaint does not allege "a single scheme against multiple victims but rather . . . several similar schemes against multiple victims" (id. at 10); and the fact that the predicate acts "occurred in . . . 2005 . . . should not be the basis for allowing defendants to avoid liability" (id.).

Because Plaintiff's Fraud Claim is the predicate for the RICO Claim (Am. Compl. ¶ 45), and because the Fraud Claim has been dismissed (see Section IV.A, supra), the RICO Claim must also be dismissed. Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999).

### E.  Unjust Enrichment Claim

Defendants argue that the Unjust Enrichment Claim against Gumbel should be dismissed because "plaintiff does not allege that . . . Gumbel individually received or used any monies, and fails to allege any other facts upon which to predicate individual liability." (Def. Mem. at 10.) Plaintiff counters that the Amended Complaint alleges that "Plaintiff wire transferred $75,000.00 to the escrow account of defendant Marshall" and that "these funds were disbursed to" Gumbel and Mayfair. (Pl. Mem. at 10.)

"[U]nder New York law, the existence of a valid contract governing a particular subject

-11-

matter precludes recovery in quasi-contract [(such as an unjust enrichment claim)] for events arising out of the same subject matter." Warner Theatre Associates Limited Partnership v. Metropolitan Life Ins., 1997 WL 685334, at *5 (S.D.N.Y. Nov. 4, 1997), aff'd, 149 F.3d 134 (2d Cir. 1998); accord International CableTel Inc. v. Le Groupe Videotron Ltee, 978 F. Supp. 483, 491 (S.D.N.Y. 1997) ("a valid contract governing a particular matter precludes a recovery in quasi-contract for events arising out of the same subject matter"); see also Warner Theatre, 1997 WL 685334, at *5 ("The Court's dismissal of the fraudulent inducement claim thus necessitates the dismissal of Plaintiff's claim for unjust enrichment as well.").

### F. Intentional Interference Claim

Defendants argue that the Intentional Interference Claim should be dismissed because, among other reasons: the Amended Complaint alleges only that Plaintiff "'stands to lose'" or "may 'potentially lose'" its $100,000 deposit, so that "there is no sufficient allegation that plaintiff suffered any damages" (Def. Mem. at 10-11 (quoting Am. Compl. ¶¶ 24, 52)); "plaintiff does not and cannot allege that any defendant intentionally procured the breach of that contract by plaintiff's seller" (id.); and "[t]he fact that plaintiff is allegedly unable to perform its contract with its seller does not amount to interference by defendants" (id. at 11).

Plaintiff counters that the Amended Complaint adequately alleges: the existence of the contract for Plaintiff to purchase the Tijuana Building; "that defendants were fully apprised of and intimately aware of the material details of the contract"; and that "defendants knew that [they] would not fund the loan and knew that this inability to obtain financing . . . would cause Plaintiff to be unable to meet its contractual commitments and potentially lose the deposit." (Pl. Mem. at 11.) In Plaintiff's view, it is "spurious" to suggest "that there is no allegation of

interference by defendants with the contract to purchase the project, no allegation of causation and no allegation of damages resulting therefrom . . . ." (Id.)

Given that the Amended Complaint alleges only that "defendants . . . were aware of the <u>prospect</u> of [the] contractual relationship which Plaintiff . . . intended to consummate with the seller of the" Tijuana Building (Am. Compl. ¶ 24 (emphasis added)), Plaintiff's claim should be characterized as tortious interference with prospective contractual relations rather than tortious interference with an existing contract (<u>see also</u> Am. Compl. ¶ 52), and "the culpable conduct necessary to state a cause of action to recover damages for interference with future contractual relations . . . is significantly higher than the conduct necessary for interference with present contracts." <u>Jurlique, Inc. v. Austral Biolab Pty., Ltd.</u>, 187 A.D.2d 637, 638, 590 N.Y.S.2d 235, 236 (2d Dept. 1992) (citation omitted). There must be either the employment of "'dishonest, unfair or otherwise improper'" means or "'the defendant's sole purpose [must be] to damage the plaintiff.'" <u>Bankers Trust Co. v. Arthur Bernstein</u>, 169 A.D.2d 400, 401, 563 N.Y.S.2d 821, 822 (1st Dept.1991) (citation omitted); <u>accord</u> <u>Gruntal & Co., Inc. v. San Diego Bancorp</u>, 1996 WL 343079, at *2 (S.D.N.Y. June 21, 1996) (plaintiff must establish that "defendant acted with the sole purpose of harming the plaintiff or, where defendant acted to advance its own competing interests, the defendant used dishonest, unfair, or improper means, such as criminal or fraudulent conduct"). The Intentional Interference Claim is dismissed because the Amended Complaint: (1) does not allege that Defendants "acted with the sole purpose of harming the plaintiff"; and (2) does not adequately plead that Defendants employed "criminal or fraudulent" means. <u>Gruntal</u>, 1996 WL 343079, at *2.

And, even if Plaintiff's claim were construed as tortious interference with an existing contract, the claim must be dismissed because Plaintiff has alleged only that Defendant's actions

rendered impossible Plaintiff's performance of the Mexican Purchase Agreement, not that Defendants procured the breach of the agreement by the Mexican seller (i.e., the "other party" to the agreement). See Jack L. Inselman & Co. v. FNB Financial Co., 41 N.Y.2d 1078, 1080, 396 N.Y.S.2d 347, 349 (1977); Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 480-81 (S.D.N.Y. 1997); 28 New York Practice, Contract Law § 21:47 (2007); 4A Robert L. Haig, N.Y. Prac., Com. Litig. in New York State Courts § 80:50 (2d ed. 2006).

### G.  Negligent Misrepresentation Claim

Defendants argue that the Negligent Misrepresentation Claim should be dismissed because, among other reasons: a "claim for negligent misrepresentation arises only where there is a special relationship of trust or confidence which creates a duty for one party to impart correct information to another" (Def. Mem. at 11); the relationships of "broker/client" and "borrower/lender" do not amount to "the required confidential or fiduciary relationship giving rise to a duty to speak with care . . ." (id. at 12 (citations omitted)); and the Amended Complaint also "fails to allege any factual misrepresentations, as opposed to promissory statements," by Defendants (id. (citations omitted)).

Plaintiff counters that the Amended Complaint adequately alleges: "that there existed a special relationship of trust and confidence between the parties akin to a lender-borrower relationship and/or a loan broker-borrower relationship" (Pl. Mem. at 12); "that defendant Marshall was specially designated with the special duties of a trustee to hold the $75,000 pursuant to the escrow instructions"; and that "[a]s a trustee, he and his agents, servants and employs, who are alleged . . . to include . . . Gumbel and Mayfair . . . , all owed Plaintiff the highest duties of care and loyalty" (id.).

Negligent misrepresentations claims, like fraud claims, "must be pled in accordance with

the specificity criteria of Rule 9(b)." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 583 (2d Cir. 2005); accord Henneberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 454 n.18 (S.D.N.Y. 2006); see Section IV.A, supra. Accordingly, the Negligent Misrepresentation Claim is dismissed.

**V.     Conclusion and Order**

For the foregoing reasons, Defendants' motion to dismiss [18, 20, 22] is granted, and all claims other than the Breach of Contract Claim are dismissed with prejudice.[5]

The parties and counsel are directed to appear at a status/settlement conference with the Court on June 5, 2007, at 9:30 a.m., in **Courtroom 6A** of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, New York
April 6, 2007

*RMB*
RICHARD M. BERMAN, U.S.D.J.

---

[5] See page 2, supra.