**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ZIM INTEGRATED SHIPPING SERVICES, LTD.,:
:
              Plaintiff,   :
:   07 Civ. 5861 (RMB)
      -against-      :
:   **DECISION & ORDER**
BELCO RESOURCES, INC., SINOCHEM   :
JIANGSU CORPORATION (FORMERLY   :
KNOWN AS SINOCHEM JIANGSU IMPORT & :
EXPORT CORPORATION), NANJING HUABIN :
FOREIGN TRADE & ECONOMICS CO., LTD., :
DRAGONTRANS SHIPPING LTD. d/b/a   :
HUABANG INTERNATIONAL, INC.,   :
SINOTRANS NINGBO INTERNATIONAL   :
FORWARDING AGENCY CO., LTD., JOHN   :
DOE 1-10,   :
:
              Defendants.   :
------------------------------------------------------------X



**I.   Background**

On or about June 20, 2007, Zim Integrated Shipping Services, Ltd. ("Zim" or "Plaintiff") filed a complaint ("Complaint") against Belco Resources, Inc. ("Belco"), Sinochem Jiangsu Corporation ("Sinochem"), Nanjing Huabin Foreign Trade & Economics Co., Ltd. ("Huabin"), Dragontrans Shipping, Ltd. ("Dragontrans"), and Sinotrans Ningbo International Forwarding Agency Co., Ltd. ("Sinotrans"), alleging that Defendants "failed to indicate . . . the hazardous or dangerous nature of the Calcium Hypochlorite ["CHC"] packed . . . in container number ZIMU1037636," which caused "a fire and explosions" aboard a vessel operated by Plaintiff on a trade route between China and Belize.[1] (Compl. ¶¶ 10, 14, 38.) On or about June 21, 2007, the Court issued an order, pursuant to Rule B of the Supplemental Rules of Certain Admiralty and

---

[1]    On or about November 6, 2007, Plaintiff filed a Second Amended Complaint ("Amended Complaint"). On or about March 7, 2008, Plaintiff voluntarily dismissed Defendant Dragontrans from the action. (See Not. of Voluntary Dismissal, dated Mar. 7, 2008, at 1.)

1

Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), requiring attachment of "all tangible and intangible property belonging to . . . Defendants . . . in an amount up to and including $3,096,694." (Order, dated June 21, 2007, at 2.)

On or about November 28, 2007, Defendants Sinochem and Huabin submitted a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), arguing, among other things, that (1) "the Amended Complaint should be dismissed pursuant to the doctrine of forum non conveniens"; (2) "Plaintiff fails to state a claim . . . under the Carriage of Goods at Sea Act ("COGSA")"; (3) "Chinese law applies to Plaintiff's [non-COGSA] claims"; (4) "Plaintiff fails to state a cause of action for [fraud and] negligent misrepresentation"; and (5) "Plaintiff fails to state claims for strict product liability, strict liability for failure to warn, or negligent failure to warn." (Defs. Mem. of Law, dated Nov. 28, 2007 ("Defs. Mem."), at 12-17.)[2]

On or about January 11, 2008, Plaintiff opposed Sincohem and Huabin's motion to dismiss ("Opposition") arguing, among other things, that (1) Plaintiff "is entitled to its choice of forum"; (2) Plaintiff's "claim[s] . . . under COGSA do[] not fail" and, in any case, "the provision[s] of the Hague-Visby Rules . . . [are] identical" to those of COGSA; (3) the "choice-of-law for all Plaintiff's [non-COGSA] causes of actions is the United States" law; (4) "Plaintiff has stated a claim for [fraud and] negligent misrepresentation" because "all the requirements have been adequately pled"; and (5) "Plaintiff has properly stated claims for strict product

---

[2] Defendant Belco did not join Sinochem and Huabin in the motion to dismiss but "submit[ted] its separate memorandum of law in support of [its] motion to vacate the attachment" pursuant to Rule (E)(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule E"), arguing, among other things, that "the traditional policy behind the Rule B attachment is not present here and the attachment is not warranted" because "Belco can establish that it would be subject to in personam jurisdiction" by Plaintiff in North Carolina. (Defs. Mem. at 1, 26, 28.)

liability, strict liability for failure to warn, [and] negligent failure to warn" because "the law of the forum also dictates that U.S. law appl[ies]." (Opp. at 10–17.) Plaintiff also opposed Belco's motion to vacate, arguing that "Belco fail[s] to establish that Plaintiff could obtain in personam jurisdiction" over it. (Opp. at 26.)

On or about February 22 2008, all Defendants filed a joint reply brief ("Reply"). On or about March 7, 2008, Plaintiff filed a sur-reply ("Sur-Reply"). The parties waived oral argument.

**For the reasons stated below, Sincohem and Huabin's motion to dismiss is granted in part and denied in part and Belco's motion to vacate the attachment is denied.**

## II.     Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (citation omitted). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (citation and internal quotation omitted). "Dismissal for failure to state a claim is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (citation and internal quotation omitted).

Rule B is "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained," and a maritime attachment "may be vacated only in certain limited

circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 443-45 (2d Cir. 2006).

### III. Analysis

#### (1) Choice of Forum

Defendants Sincohem and Huabin argue, among other things, that Plaintiff's "choice of this district [the Southern District of New York] should be afforded little deference" because "Plaintiff is an Israeli corporation"; "Chinese courts offer sufficient remedies for the alleged torts and contractual breaches"; "all of the alleged wrongs purportedly [took] place in China and [not] in New York"; "defendants are Chinese"; "relevant witnesses and other evidence" are located in China; and "China has a significant national interest in resolving Plaintiff's claims." (Defs. Mem. at 18–23.)

Plaintiff counters, among other things, that "Plaintiff's base of operations is in the United States"; one of the principal Defendants, Belco, "is domiciled in the United States"; the damaged vessel "was under the operational control of Zim's U.S. agent," Zim-American Integrated Shipping Services, Inc., located in Norfolk, Virginia; "Zim-American also arranged for . . . inspect[ion] [of] the vessel and damaged cargo"; "the only sample of the cargo which exploded and which is hazardous to move is located in the U.S."; "it is much easier and economical [for the Panamanian witnesses, among others] to travel to New York than it is to travel to China"; "the vast majority of the documents involved in this case are in English"; and, apart from Sinochem and Huabin, none of the other parties appearing in the action (or in the several related actions against Zim and Belco pending since July 2007 in the Southern District of New York) have joined in the forum non conveniens motion. (Opp. at 18–23.)

"[D]efendant[s] must . . . show that the balance of convenience sufficiently favors trial in [China] to overcome the presumption in favor of [P]laintiff's choice" of a New York forum. See Maganlal & Co. v. M.G. Chemical Co., Inc., 942 F.2d 164, 168 (2d Cir. 1991). Sinochem and Huabin fail not only to overcome the presumption, but, in fact, the balance of factors supports maintaining the action in this Court.

Preliminarily, China may not (entirely) be an adequate alternative forum because, Plaintiff alleges, "Belco [the Defendant who purchased the cargo that exploded] is located in the United States and is not amenable to suit in China." Plaintiff argues that "a choice of forum clause in [Plaintiff's] bill of lading with Belco . . . does not give jurisdiction to Chinese courts" and "Chinese courts would [thus] not accept jurisdiction over Belco." (Opp. at 19; See Reply Declaration of Yulin Qian, dated Mar. 7, 2008, ¶ 10.)  See Cortec Corp. v. Erste Bank, 535 F. Supp. 2d 403, 409 (S.D.N.Y. 2008).

Assuming, arguendo, that an adequate alternative forum does exist, the public interests (e.g., court congestion, settling local disputes locally, unfairness of imposing the burden of jury service on citizens in a forum unrelated to the dispute, appropriateness of trying a case in a forum that is familiar with the laws to be applied) and the private interests (e.g., ease of access to evidence, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining willing witnesses, other factors that might shorten trial or make it less expensive) point to New York as a forum which will be most convenient and will "best serve the ends of justice." Alfadda v. Fenn, 159 F.3d 41, 45–46 (2d Cir. 1998) (internal citations and quotations omitted); Madanes v. Madanes, 981 F. Supp. 241, 265 (S.D.N.Y. 1997).

**Public Factors**

The public factors weigh against dismissal in favor of another forum. First, there are two related matters pending in the Southern District of New York that will be litigated here even if the Court were to dismiss this action.[3] See Madanes, 981 F. Supp. at 266-67. Second, Belco is "a corporation organized and existing under and by virtue of the laws of North Carolina" and is accused of acting "individually, or in concert," in furtherance of the alleged fraud which is central to this case. (Am. Compl. ¶¶ 5, 109); see Bravo Co. v. Chum, Ltd., 60 F. Supp. 2d 52, 56 (E.D.N.Y. 1999). Third, "[b]ecause both jurisdictions have some interest in this dispute, the concern with burdening jurors is not present." Capital Currency Exch., N.V. v. National Westminster Bank PLC, 155 F.3d 603, 611 (2d Cir. 1998). Fourth, "[w]hile reluctance to [potentially] apply foreign law is a valid factor," "standing alone it does not justify dismissal." See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998).

**Private Factors**

Likewise, the private factors support continuing the action in this Court. First, "[w]hile there does not appear to be any dispute that many, if not most, of [Sinochem and Huabin's] witnesses [are] in [China], conversely, most of [Plaintiff's] witnesses are located in [the United States]" (i.e. Zim-American employees, including those who responded to the explosion and "arranged for all experts . . . and surveyors" to inspect the vessel and damaged cargo). (Opp. at 19); see also Bravo, 60 F. Supp. 2d at 57. Second, "any difficulties . . . regarding witnesses

---

[3] In Caribbean Retail Ventures, Inc. v. Zim Integrated Shipping Services, Ltd. (07 Civ. 6873), cargo interested parties sued all the parties to this action (among others), including Zim, Sinochem, Huabin, and Belco for damages. And, in Zim Integrated Shipping Services, Ltd. v. Prodiumport Empresa Importadora y Comercialzadora (07 Civ. 6500), Zim sued for declaratory relief regarding its liability to cargo interested parties aboard the damaged vessel.

6

whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory." See DiRienzo v. Philip Services Corp., 294 F.3d 21, 30 (2d Cir. 2002) (internal citation omitted). And, "[w]herever the trial takes place, witnesses will be forced to travel to provide testimony." See Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46–47 (2d Cir. 1996) (internal citation omitted). Third, because the parties in this matter—and in the Prodiumport Empresa and Caribbean Retail matters—are actively engaged in discovery, "[a] trial here promises to begin and end sooner than elsewhere." See Boosey & Hawkes,145 F.3d at 492. Overall, "it seems . . . likely that [Sinochem and Huabin's] motion seeks [potentially] to split the suit into [two] parts in [two] nations, complicate the suit, delay it, and render it more expensive." See id. Sinochem and Huabin's arguments against trial in the United States do not rise to the level of being "so oppressive and vexatious . . . as to be out of all proportion to [Plaintiff's] convenience." See DiRienzo, 294 F.3d at 30.

**(2)    Claims under COGSA**

Defendants Sinochem and Huabin argue, among other things, that "COGSA does not apply where the cargo was not destined for a U.S. port"; "the Bill of Lading states that the cargo was being shipped between two foreign ports: it was loaded at Ningbo, China and destined for Belize City, Belize"; "Plaintiff tries to reform the Complaint in its Opposition by asserting that it meant to plead these claims under Israeli law (in a manifest attempt to skirt the fact that the Hague-Visby Rules are not self-executing)"; and its "eleventh-hour resort to Israeli law is baffling." (Defs. Mem. at 16–17; Reply at 6.)

Plaintiff argues, among other things, that "[t]he laws of the State of Israel govern the contract of carriage"; "Israel is a signatory to the Hague-Visby Rules"; and "[t]he language of

the applicable sections under COGSA and the Hague-Visby Rules . . . [is] identical." (Opp. at 14–16.)

"COGSA applies 'to contracts for carriage of goods by sea to or from ports of the United States in foreign trade,'" not, as here, to contracts between two foreign ports. Ansell Healthcare, Inc. v. Maersk Line, No. 07 Civ. 7715, 2008 WL 1700191, at *3 (S.D.N.Y. Apr. 4, 2008). Indeed, Plaintiff concedes that "COGSA is not the law applicable to the contract of carriage," but also alleges—for the first time in its Opposition—that it has "set forth the legal requirements of its cause of action . . . under the Hague-Visby Rules." (Opp. at 14–15.) Plaintiff's argument is not persuasive. In the Amended Complaint, Plaintiff does not "give notice of the intent to raise foreign [Israeli] law," nor does it "inform the Court and litigants that [Israeli law and the Hague-Visby rules are] relevant to the lawsuit." Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd., 426 F.3d 580, 585 (2d Cir. 2005); see also Acciai Speciali Terni USA, Inc. v. M/V Berane, 182 F. Supp. 2d 503, 505 (D. Md. 2002). And, because Plaintiff elected not to amend the Complaint to plead (breach of warranty and strict liability) claims under the Hague-Visby rules or Israeli law, and because a "[c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss," Defendants' motion to dismiss Plaintiff's claims under COGSA is granted.[4] See O'Brien v. National Property Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

---

[4] At a conference held on October 18, 2007, the Court offered Plaintiff the opportunity to amend the Complaint to meet the deficiencies set forth in Defendants' pre-motion letter, dated September 19, 2007, prior to motion practice. Plaintiff did not amend. (See Defs.' Ltr. from Edward T. Schorr to Hon. Richard M. Berman, dated Sept. 19, 2007, at 1) ("Zim's factual allegations do not support its invocation of the Carriage of Goods at Sea Act").

(3)   **Choice of Law**

Defendants argue that Chinese law should apply to Plaintiff's claims because, among other reasons, "China [is] the place of the allegedly wrongful acts"; "four out of the five defendants are based in China and the fifth likewise has no connection to New York"; "Zim [] misstates the facts when it argues that the non-party cargo interests are overwhelmingly located in the U.S."; "only two shippers (or less than 3%) appear to be based in the U.S."; "Zim [is] heavily represented in China"; and Zim "directed the export and transit of the goods in question from one or more of its twenty-one China offices." (Reply at 4–6.)

Plaintiff argues that "United States law applies" because, among other reasons, "[e]ight out of nine cargo interests who have made a claim against Plaintiff are domiciled in the United States"; "[Defendant] Belco is domiciled in the United States"; "Plaintiff's base of operations is in the United States"; and Plaintiff's "regional agent [Zim-American] . . . is domiciled in Norfolk, Virginia." (Opp. at 8–10.)

"[G]eneral federal maritime law, including federal choice-of-law rules," applies to a maritime action. Advani Enterprises, Inc. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998). The Court must consider several factors in conducting a choice of law analysis, including "(1) the place of the alleged wrongful act; (2) the law of the ship's flag; (3) the domicile and base of operations of the plaintiff; (4) the domicile and base of operations of the defendant; and (5) the domicile and base of operations of the shipowner." Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 91 (2d Cir. 1996). "The weight to be given each factor varies from case to case and the list is not an exhaustive one." Id. at 90.

These choice of law factors favor the application of Chinese law. The first factor favors the application of Chinese law because Defendants are alleged to have issued fraudulent shipping

9

documents in China. See id. at 91. The second factor favors neither Chinese nor United States law because the damaged vessel sailed under the flag of Israel. Id. at 92. The third factor favors the application of Chinese law. See id. That is, Zim maintains offices in China and the conduct giving rise to this claim took place in China where Plaintif "had chosen to establish itself and thereby become subject to that country's laws." (Reply at 5); id. The fourth factor also points to the application of Chinese law, see id. at 91, because most Defendants are based in China, id. at 93. The fifth factor points to the application of Chinese law because Zim is also the shipowner and the conduct giving rise to this claim took place, in part, at least in its offices in China. See id. at 92.

Finally, "[e]ven from the sparse record as to the cargo interests' countries of citizenship, this factor steers toward 'much of the globe.'" See Rationis, 426 F.3d at 587–88. Ultimately, "it is the place of the alleged wrongful act that tips the scale in favor of [Chinese] law" because the "act that gave rise to the [potential] liability" occurred in China. See id. ("a New York court is fully capable of applying foreign law"); see also Barkanic v. General Admin. of Civil Aviation of the People's Republic, 923 F.2d 957 (2d Cir. 1991) (applying Chinese law to wrongful death action); Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals, 179 F. Supp. 2d 118 (S.D.N.Y. 2000) (applying Chinese law to contract dispute); Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd., 499 F. Supp. 2d 245 (E.D.N.Y. 2007) (applying Chinese law to contract interpretation question).

(4)     **Fraud and Negligent Misrepresentation**

Rule 44.1 of the Federal Rules of Civil Procedure provides that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." See

Fed. R. Civ. P. 44.1; AIM Intern. Trading, L.L.C. v. Valcucine S.p.A., No. 02 Civ. 1363, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003). Defendants Sinochem and Huabin have submitted a declaration regarding Chinese law, dated November 27, 2007, from Chen Huanzhong ("Chen Decl."), "a partner in the Beijing, China office of the firm Global Law Firm." (Chen Decl. ¶ 1.) Plaintiffs also submitted a declaration regarding Chinese law, dated January 11, 2008, from Yulin Qian ("Qian Decl."), "an attorney-at-law at the Rolmax Law Office in Shanghai, China." (Qian Decl. ¶ 1.)

Defendants argue, among other things, that "Plaintiff [] fails adequately to plead the elements of causation" for fraud and negligent misrepresentation because "Plaintiff does not (and cannot) assert that the alleged misrepresentations in the Bill of Lading and Dock Receipt, which describe cargo placed aboard the Zim Savannah, had anything to do with the fire." (Defs. Mem. at 12.) Plaintiff argues, among other things, that although the Bill of Lading lists the cargo as being loaded on the Zim Savannah, "the transfer of the container from [the Zim Savannah] to [the Zim Haifa]" is "expressly authorized under section 8 of the terms and conditions of Zim's Bill of Lading"; and "Defendant's [sic] container was aboard the Zim Haifa and determined to be the center of the explosions and fire." (Opp. at 10.)

On this record (and at this time) it would appear that under Chinese law, "[t]he absence in a complaint of any allegation of transshipment of . . . cargo from one vessel to another would not defeat any issue of causation for claims of negligent misrepresentation [or] fraud . . . if proof of transshipment is later established at the time of trial."[5] (Qian Decl. ¶ 39); see also Software AG, Inc. v. Consist Software Solutions, Inc., No. 08 Civ. 389, 2008 WL 563449, at *15 (S.D.N.Y.

---

[5] The parties may revisit the issue of causation at trial or upon any application for summary judgment following discovery.

11

(S.D.N.Y. Feb. 21, 2008); <u>Base Metal Trading SA v. Russian Aluminum</u>, 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003) ("the Court may use the declarations to answer questions of law").

### (5)   Strict Product Liability, Strict Liability for Failure to Warn, and Negligent Failure to Warn

Defendants Sinochem and Huabin argue, among other things, that "Plaintiff's claims for strict liability for failure to warn and negligent failure to warn [] fail under Chinese law, which does not support claims for either cause of action"; and "Plaintiff has not pled [a strict product liability] claim." (Defs. Mem. at 15–16.)

Plaintiff argues, among other things, that "[i]f Chinese law were to apply, Plaintiff concurs with Sinochem and Huabin that it would be denied all three causes of action for strict product liability, strict liability for failure to warn, and negligent failure to warn." (Opp. at 13.)

Because Chinese law appears to apply (see III.4 above) and Plaintiff concedes that, under Chinese law, "it would be denied all three causes of action for strict product liability, strict liability for failure to warn, and negligent failure to warn," Defendants' motion to dismiss these claims is granted. (<u>See</u> Opp. at 13.)

**Defendant Belco's Motion to Vacate the Attachment**

Defendant Belco argues, among other things, that its "office is located in North Carolina"; "Zim has offices and affiliates in 120 locations throughout the world, including an office in North Carolina where it operates a liner service"; "both Zim and Belco . . . are subject to in personam jurisdiction in North Carolina"; and "Plaintiff's attachment should be vacated on the grounds that Belco can establish that it would be subject to in personam jurisdiction in another jurisdiction convenient to Plaintiff"—North Carolina.[6] (Defs. Mem. at 28–29.)

---

[6]   Belco does not appear to argue for a transfer of venue to North Carolina or for dismissal based upon forum non conveniens. (Defs. Mem. at 24–29.)

Plaintiff argues, among other things, that "Belco's allegations [that both Zim and Belco are subject to in personam jurisdiction in North Carolina] are merely conclusory and are not supported by any facts"; Zim "has no presence in North Carolina"; its "contacts with the state are [not] 'continuous or systematic'"; it "has no offices, no employees, no phone listing, [and] no property in North Carolina"; and it "does not advertise in North Carolina." (Opp. at 24–26.)

"[V]acatur may be warranted when the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff." Aqua Stoli, 460 F.3d at 444. "The concept of 'convenience,' however, is a narrowly circumscribed one: [a] district court may vacate a maritime attachment only if the defendant would be subject to an in personam lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought." Id. The federal judicial districts of North Carolina and the Southern District of New York are not "adjacent," and, in any event, Belco does not submit any evidence in support of its claim that Plaintiff would be "subject to in personam jurisdiction" in North Carolina. See id. The attachment of Belco's funds in New York is not vacated because Plaintiff has demonstrated, among other things, that "it has a valid prima facie admiralty claim against [Belco]; [Belco] cannot be found within the [Southern District of New York]; [Belco's] property [is] found within the [Southern District of New York]; and there is no statutory or maritime law bar to the attachment." Id. at 445. Belco has not met its burden of "establish[ing] any of the limited grounds that could justify vacatur." Id.

IV. **Conclusion and Order**

For the reasons stated herein, Sinochem and Huabin's motion to dismiss [#26] is granted in part and denied in part and Belco's motion to vacate the attachment [#26] is denied.

Dated: New York, New York
May 2, 2008

_____
RICHARD M. BERMAN, U.S.D.J.